UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOM BASCETTA, AR-RAHMAN BUSKEY, SANDRA CUENCA, DEBORAH DONAHUE, XIROYMA DISLA, BRIAN FAHEY, SHAWN FROMENT, CARLYN HASTREITER, LYNDSEY HENDERSON, DENNIS LUPIEN, STEPHANIE LUPIEN, MATTHEW MCLELLAND, NICOLA NORALUS, DARLENE PAGANO, EVELYN PEREZ, JORGE PEREZ, KAREN QUANTZ, GREG RORRIS, DANIELLE STEVENS, JANICE SCHMIDT, JOE SCHMIDT, and CHRIS UNDERWOOD, individually and on behalf of all other similarly situated individuals, | Case No. 1:23-CV-2010  COMPLAINT  DEMAND FOR JURY TRIAL |
| *Plaintiffs*, | |
| v. | |
| VISION SOLAR, LLC, | |
| *Defendant.* | |

Plaintiffs Tom Bascetta, Ar-Rahman Buskey, Sandra Cuenca, Xiroyma Disla, Deborah Donahue, Brian Fahey, Shawn Froment, Carlyn Hastraiter, Lyndsey Henderson, Stephanie Lupien, Dennis Lupien, Matthew McClelland, Nicola Noralus, Darlene Pagano, Evelyn Perez, Jorge Perez, Karen Quantz, Gregg Rorris, Janice Schmidt, Joe Schmidt, Danielle Stevens, and Chris Underwood, on behalf of themselves and all others similarly situated, assert the following against Defendant Vision Solar LLC ("Vision Solar" or "Vision"), based upon personal knowledge, information and belief, and the investigation of counsel.

## INTRODUCTION

1.      This action arises out of Defendant Vision Solar's fraudulent, deceptive, and unfair inducement of homeowners in Arizona, Connecticut, Florida, Massachusetts, New Jersey, and Pennsylvania to enter into agreements to purchase residential solar photovoltaic systems ("Solar Panel Systems").

2.      Vision Solar deliberately targeted vulnerable populations—including low-income, disabled, and elderly individuals—and induced them into the purchase or lease of Solar Panel Systems by systematically misrepresenting the benefits of Solar Panel Systems, including homeowners' eligibility for tax credits, the performance of the Solar Panel Systems, and the financial terms of the loans and leasing transactions.

3.      Vision Solar's tactics have been described by the Connecticut Attorney General as "the worst [the office] has seen." And Vision Solar's complete failure to perform as promised, a failure which was their intent all along, has left thousands of defrauded customers paying for Solar Panel Systems that are either not working at all because they are not hooked up to the power grid, or performing so far below the levels promised by Vision Solar, that these customers are losing money on a net basis.

4.      Hundreds of complaints have been filed with the attorneys general of the states in which Vision Solar and its financing partners, including Sunlight Financial LLC ("Sunlight"), KeyBank, N.A. ("KeyBank") Dividend Finance ("Dividend"), IGS Solar LLC ("IGS Solar" or "IGS"), Additional Financial LLC ("Additional Financial"), GoodLeap, LLC ("GoodLeap"), and Technology Credit Union ("TechCU" and, collectively with Sunlight, TechCU, IGS Solar, Additional Financial, Dividend, GoodLeap, and KeyBank, the "Financing Companies"), operate.

5.     Multiple media outlets have run stories exposing Vision Solar's practices, yet it persists with its misconduct (and even recently obtained $20 million in financing) because its tactics are profitable.

6.     Vision Solar's lies and deception regarding material and foundational aspects of the sales and financing agreements for the Solar Panel Systems render each and every agreement void *ab initio.* Plaintiffs and class members would never have entered into agreements with Vision Solar absent Vision Solar's lies, which is why Vision Solar and its partners engaged in the activity in the first place. They are selling a shoddy product via fraudulent, deceptive, and unfair means.

7.     In recognition of the egregiousness of Vision Solar's conduct, on March 15, 2023, Connecticut Attorney General William Tong (the "CT AG") initiated a *parens patriae* enforcement action against Vision Solar for predatory practices and deceptive sales tactics violating the Connecticut Home Improvement Act and the Connecticut Unfair Trade Practices Act. The CT AG's description echoes the experience of Plaintiffs and members of the Class herein – that Vision Solar took advantage of low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that were never activated or were installed without proper permits via unfair, high-pressure sales tactics, including instances of altering the scope of work without consent, overstating tax benefits, and using unlicensed contractors to install Solar Panel Systems.

8.     As a result of the conduct described above, Plaintiffs and members of the Class seek relief from Defendant Vision Solar in the form of restitution, disgorgement of profits, recission of the sales and financing agreements, and damages.

## PARTIES

I.     **PLAINTIFF ALLEGATIONS**

    A.     **PLAINTIFF BASCETTA**

    9.     Plaintiff Thomas Bascetta ("Plaintiff Bascetta") is a citizen and resident of the State of Connecticut.

    10.     Vision Solar induced Plaintiff Bascetta into purchasing a Solar Panel System from Vision Solar, financed by Financing Company Sunlight Financial, in February 2022.

    11.     Like other Plaintiffs and members of the Classes (as defined below), Vision Solar induced Plaintiff Bascetta to purchase and finance a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to, representing that:

    a.     Vision Solar would obtain all required permits prior to installation;

    b.     Plaintiff Bascetta would receive a $24,000 tax credit equal to 26% of the cost of the Solar Panel System; and

    c.     the Solar Panel System would "pay for itself" by reducing the amount of power used from Plaintiff Bascetta's current power company.

    12.     In addition to the misrepresentations made by Vision Solar to Plaintiff Bascetta, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Bascetta into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

    a.     Soliciting Plaintiff Bascetta at home, unannounced;

    b.     Staying longer than requested in Plaintiff Bascetta's home;

    c.     Pressuring Plaintiff Bascetta to sign up for installation of the Solar Panel System the same day as the in-home inspection;

4

d.      Pressuring Plaintiff Bascetta not to consult an attorney before agreeing to purchase and finance the Solar Panel System; and

e.      Presenting the purchase and financing agreements on a small mobile device on which Plaintiff Bascetta could not adequately read or evaluate the documents.

13.     Vision Solar installed a Solar Panel System at Plaintiff Bascetta's home days after Vision Solar's unannounced sales visit despite the fact that Vision Solar knew it had not obtained permits for the Solar Panel System to be connected to the power grid (*i.e.,* "Permission to Operate"). Despite this, Vision Solar turned on the system, which has used electricity and thus *increased* Plaintiff Bascetta's electricity bill.

14.     More than 14 months later, Vision Solar still has not obtained the required permits for the Solar Panel System to receive Permission to Operate. Yet, Financing Company Sunlight Financial has required Plaintiff Bascetta to make payments for financing the purchase of Plaintiff Bascetta's Solar Panel System.

15.     Plaintiff Bascetta has paid $190/month for electricity, an approximate $12/month increase over the $178/month he was paying prior to installation of the Solar Panel System. This is attributable to the fact that the Solar Panel System is turned on but not generating any energy.

16.     Plaintiff Bascetta made payments each month in the amount of $89 for his Solar Panel System despite the fact that his Solar Panel System is not functioning.

17.     Additionally, Plaintiff Bascetta did not receive the 26% tax credit amounting to $24,000 that Vision Solar promised him.

18.     Vision Solar deflected Plaintiff Bascetta's complaints using its Concierge and Customer Retention departments. Vision Solar has promised Plaintiff Bascetta reimbursements for the payments he has made, but no reimbursement has occurred.

19.     Despite Financing Company Sunlight Financial's knowledge of Vision Solar's conduct, Plaintiff Bascetta continues to be charged for the financing of his non-functioning Solar Panel System and makes payments because he fears the legal and/or credit repercussions of nonpayment.

20.     As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Bascetta and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, lost time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

21.     Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Bascetta by causing Bascetta to reasonably rely upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System, and Plaintiff Bascetta would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Bascetta.

**B.     PLAINTIFF BUSKEY**

22.     Plaintiff Ar-Rahman Buskey ("Plaintiff Buskey") is a citizen and resident of the State of New Jersey.

23.     Vision Solar induced Plaintiff Buskey into assuming a lease agreement with Financing Company IGS Solar for a Solar Panel System on August 9, 2022 prior to Plaintiff Buskey moving in to his residence.

24.     Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Buskey into assuming the lease agreement by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to:

    a.     That Plaintiff Buskey was required to assume the lease in order to purchase the house;

    b.     That the Solar Panel System would be permitted and functioning by the time Plaintiff Buskey moved in; and

    c.     That Vision Solar would make payments for Plaintiff Buskey until the Solar Panel System was activated.

25.     Plaintiff Buskey assumed the lease on August 9, 2022, but the Solar Panel System did not receive the required permits or Permission to Operate until March 14, 2023. During the period of over seven months between assumption of the lease and activation, Plaintiff Buskey paid $430 each month for his electric bill and made additional payments pursuant to the lease he assumed. Vision Solar has not reimbursed Plaintiff Buskey for these payments as promised.

26.     In addition to the misrepresentations made by Vision Solar to Plaintiff Buskey, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Buskey into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

    a.     Telling Plaintiff Buskey he needed to agree to assume the lease of the Solar Panel System that day or lose the opportunity; and

    b.     Telling Plaintiff Buskey it was necessary to assume the lease of the Solar Panel System in order to purchase the house.

27.     Vision Solar deflected and ignored Plaintiff Buskey's complaints using its Concierge and Customer Retention departments, including engaging in the following conduct:

    a.    Falsely telling Plaintiff Buskey he had provided incorrect information to Vision Solar which prevented Vision Solar from obtaining permits or Permission to Operate;

    b.    Promising Plaintiff Buskey that Vision Solar would pay his electricity bill to prevent him from insisting on cancelling the contract; and

    c.    Threatening Plaintiff Buskey with lawsuits for breach of contract when Plaintiff Buskey asked that the non-functioning Solar Panel System be removed from his residence.

28.    As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Buskey and other similarly situated homeowners have suffered actual damages, including, without limitation, an increase in their monthly expenses, lost time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

29.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Buskey by causing Plaintiff Buskey to reasonably rely upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System, and he would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Buskey.

**C.    PLAINTIFF CUENCA**

30.    Plaintiff Sandra Cuenca ("Plaintiff Cuenca") is a citizen and resident of the State of Florida.

31.     Plaintiff Cuenca was induced by Vision Solar's salesperson into purchasing a Solar Panel System and financing it through Financing Company Sunlight Financial during an at home, unannounced solicitation by a Vision Solar salesperson on April 6, 2022.

32.     Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Cuenca to purchase and finance a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to:

      a.    That Vision Solar would acquire the required permits and Permission to Operate before installing the Solar Panel System at Plaintiff Cuenca's home;

      b.    That Plaintiff Cuenca would receive a tax credit equal to approximately $10,000-$12,000;

      c.    That Plaintiff Cuenca's electricity bill would be reduced from $340-$390 per month down to $160 per month; and

      d.    That Vision Solar would remove the Solar Panel System at no cost to Plaintiff Cuenca for any reason, such as roof repair;

33.     Vision Solar knew these representations were false when made. Vision Solar never intended to obtain, and did not obtain, the proper permits or Permission to Operate before installing the Solar Panel System at Plaintiff Cuenca's home. Plaintiff Cuenca did not receive a tax credit of approximately $10,000-$12,000. And Plaintiff Cuenca's electric bill has not gone down.

34.     In addition to the misrepresentations made by Vision Solar to Plaintiff Cuenca, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Cuenca into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

      a.    Soliciting Plaintiff Cuenca at home, unannounced;

      b.    Staying longer than requested in Plaintiff Cuenca's home, remaining for five-to-six hours and only leaving when Plaintiff Cuenca insisted that she needed to pick up her kids from school;

      c.    Falsely claiming to call Vision Solar's offices to get "approval"; and

      d.    Presenting the purchase and financing agreements on a "very small" mobile device on which Plaintiff Cuenca could not adequately read or evaluate the documents.

35.     Vision Solar installed Plaintiff Cuenca's Solar Panel System on April 12, 2022, without obtaining permits or "Permission to Operate."  Financing Company Sunlight Financial began requiring Plaintiff Cuenca to make payments immediately thereafter, despite the fact that Plaintiff Cuenca's Solar Panel System was not hooked up to the power grid because of a lack of permitting and Permission to Operate.

36.     Financing Company Sunlight Financial continued forcing Plaintiff Cuenca to make payments for a non-functioning Solar Panel System for eleven (11) months, resulting in Plaintiff Cuenca making hundreds of dollars of payments each month for a non-functioning Solar Panel System.

37.     Vision Solar deflected Plaintiff Cuenca's complaints using their Concierge and Customer Retention departments by, for example:

   a.   Falsely promising to reimburse Plaintiff Cuenca for the payments made
        while the Solar Panel System was not functional;

   b.   Refusing to escalate Plaintiff Cuenca's complaints to a manager or
        supervisor; and

   c.   Falsely promising to call her back.

38.   Plaintiff Cuenca never received reimbursements, and Vision Solar never obtained the required permits or Permission to Operate for the Solar Panel System to be connected to the power grid. Instead, after 11 months of making payments for a non-functioning Solar Panel System, Plaintiff Cuenca, out of necessity, obtained the permits herself to prevent herself from losing more money. The Solar Panel System does not perform as promised.

39.   Vision Solar's misrepresentations and unfair business practices have caused Plaintiff Cuenca and other similarly situated homeowners to suffer actual damages, including, without limitation, an increase in their monthly expenses, lost time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

40.   Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Cuenca by causing Plaintiff Cuenca to reasonably rely upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System, and Plaintiff Cuenca would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Cuenca.

   **D.   PLAINTIFF DISLA**

41.   Plaintiff Xiroyma Disla ("Plaintiff Disla") is a citizen and resident of the State of Florida.

42.     Vision Solar induced Plaintiff Disla into purchasing a Solar Panel System from Vision Solar and financing the purchase with Financing Company GoodLeap during an unannounced at home solicitation in October 2021.

43.     Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Disla to purchase and finance a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to, representing that:

      a.  Plaintiff Disla would receive a large tax credit for installing the Solar Panel System despite knowing it was unlikely that Plaintiff Disla would be eligible for a tax credit for that amount;

      b.  Plaintiff Disla's electric bill would go down dramatically despite knowing the Solar Panel Systems were not capable of delivering that amount of savings

      c.  The local electric company would pay Plaintiff Disla for contributing more electricity to the grid than she was using despite knowing this was false;

      d.  The Solar Panel System would produce enough power for Plaintiff Disla's home and hot tub to function solely using solar-generated power; and

      e.  Vision Solar would remove the Solar Panel System for free if Plaintiff Disla ever had to make roof repairs.

44.     Plaintiff Disla only discovered she was ineligible for the federal tax credit when GoodLeap called her to offer *another* predatory financing arrangement to her: a home equity loan.

45.     In addition to the misrepresentations made by Vision Solar to Plaintiff Disla, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Disla into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

a.      Standing over Plaintiff Disla and waiting for her to sign on the sales representative's iPad rather than letting her review the documents;

b.      Instructing Plaintiff Disla after she signed the documents that Vison Solar needed to finalize the contract and would send her the contract at a later date – which was over a year later, and only at Plaintiff Disla's request; and

c.      Insisting the Solar Panel System would cover the energy usage of both her home and hot tub after Plaintiff Disla explained that the hot tub was to help calm her autistic son and that the solar panels were a way to save money on electricity so they could better afford this type of therapy.

46.     While Vision Solar installed the Solar Panel System at the end of January 2022, the solar panels have yet to be activated – a time span of 17 months, which far exceeds Vision Solar's estimated completion time of 90 days after signing.

47.     During that time, Plaintiff Disla paid between $250 and $350 each month for her electric bills and monthly solar panel payments of $171, which are due to increase to $240 in August, even though she did not obtain the contracted benefit of functioning solar panels to date.

48.     Vision Solar deflected Plaintiff Disla's complaints using their Concierge and Customer Service departments, including by:

a.      Providing various excuses as to why the solar panels have yet to be connected;

b. Falsely promising Plaintiff Disla reimbursement for her solar panel payments but never paying the reimbursements (despite Plaintiff Disla submitting paperwork and calling to get updates);

c. Failing to provide Plaintiff Disla with the signed contract for months despite several requests from her; and

d. Denying Plaintiff Disla's request for Vision Solar to remove the panels and release her form her loan and contract, thereby thwarting her ability to take any actions to mitigate their damages.

49. Vision Solar, however, informed Plaintiff Disla that one of the reasons (excuses) that the panels were still not operational is because her electric company required more insurance coverage on her home; Vision Solar allegedly got Plaintiff Disla the additional insurance coverage at no cost to Plaintiff Disla.

50. As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Disla and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

51. Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Disla because Plaintiff Disla reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Disla.

### E.    PLAINTIFF DONAHUE

52.    Plaintiff Deborah Donahue ("Plaintiff Donahue") is a citizen and resident of the State of Florida.

53.    Vision Solar induced Plaintiff Donahue into purchasing a Solar Panel System from Vision Solar, financed by Financing Company Sunlight Financial and serviced by Financing Company TechCU, in December 29, 2021 through an at-home solicitation.

54.    Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Donahue to purchase and finance a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to, representing that:

  a. Plaintiff Donahue would receive a large federal tax credit to help pay for the Solar Panel System despite knowing Plaintiff Donahue was likely ineligible for such a tax credit;

  b. Plaintiff Donahue would receive money back from her electric company;

  c. Plaintiff Donahue's electricity bill with the Solar Panel System installed, combined with the Solar Panel System payments, would be a lesser amount than her current electricity bills;

  d. Vision Solar would inspect Plaintiff Donahue's roof to ensure it was structurally sound for installation of the Solar Panel System;

  e. Vision Solar would remove and reinstall the Solar Panel System at no cost, if Plaintiff Donahue's roof needed replacement or repair;

  f. Vision Solar would repair Plaintiff Donahue's roof at no cost if there were any leaks; and

g. Vision Solar would reimburse Plaintiff Donahue for solar panel payments until activation.

55. In addition to the misrepresentations made by Vision Solar to Plaintiff Donahue, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Donahue into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

a. Making multiple unsolicited calls for the purpose of setting up an in-home sales pitch;

b. Staying in Plaintiff Donahue's home for an extended time;

c. Dissuading Plaintiff Donahue from discussing the contract with her husband, who she was in the process of divorcing; and

d. Providing a copy of the contract only after the cancelation period had expired.

56. Vision Solar installed a Solar Panel System at Plaintiff Donahue's home on February 23, 2022, despite not obtaining a permit or Permission to Operate for Solar Panel System to be connected to the power grid.

57. Vision Solar still has not obtained the required permits or Permission to Operate from local authorities, meaning that after fifteen (15) months of payments Plaintiff Donahue's Solar Panel System still does not function.

58. Plaintiff Donahue has paid approximately $350 each month between electric bills and solar panel payments, even though the Solar Panel System is not functioning.

59. Additionally, Plaintiff Donahue did not receive the promised reimbursements and tax credit.

60.     Vision Solar deflected Plaintiff Donahue's complaints using their Concierge and Customer Service departments, including by:

        a.     Ignoring Plaintiff Donahue's inquiries about lack of permitting;

        b.     Ignoring Plaintiff Donahue's inquiries about failed inspections;

        c.     Promising reimbursements to Plaintiff Donahue which Vision Solar never intended to provide; and

        d.     Telling Plaintiff Donahue that the reason for the delay was that the "drawings are being updated" and everything will be submitted "soon" when in fact the reason for the delay was simply Vision Solar's unwillingness to obtain the permits or Permission to Operate.

61.     Despite Financing Companies' knowledge of Vision Solar's conduct, Plaintiff Donahue continues to be charged for the financing of her non-functioning Solar Panel System and makes payments because she fears the legal and credit repercussions of nonpayment.

62.     As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Donahue and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

63.     Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Donahue because Plaintiff Donahue reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Donahue.

### F.      PLAINTIFF FAHEY

64.     Plaintiff Brian Fahey ("Plaintiff Fahey") is a citizen and resident of the Commonwealth of Pennsylvania. Plaintiff Fahey is 72 years old.

65.     Vision Solar induced Plaintiff Fahey into purchasing a Solar Panel System and financing it via Sunlight Financial in January 25, 2022 during an unexpected at-home solicitation.

66.     Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Fahey to purchase and finance a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to:

   a.      Representing that Plaintiff Fahey would receive a $10,000 tax credit despite knowing Plaintiff Fahey was unlikely to be eligible for such a tax credit;

   b.      Representing that the Solar Panel System would generate 125% of Plaintiff Fahey's electric usage despite knowing that the Solar Panel Systems were incapable of such output;

   c.      Representing that Vision Solar would handle all permitting prior to installation despite knowing that Vision Solar would not obtain permits or Permission to Operate before installing the Solar Panel System;

   d.      Representing that Plaintiff Fahey's financing payments would be $123 per month for the Solar Panel System despite knowing that, as a result of Plaintiff Fahey's ineligibility for a tax credit, Plaintiff Fahey's payments would increase substantially after 18 months;

  e.  Representing that Plaintiff Fahey would only pay $8 per month for electricity as a result of the Solar Panel System;

  f.  Representing that Vision Solar would reimburse Plaintiff Fahey for any double payments for electric and solar panels despite having no intention of doing so;

  g.  Falsely promising a $500 sign-on bonus and another $500 for each referral who signed up;

  h.  Falsely promising to install a ground array system in Plaintiff Fahey's field and install solar on the roof of his barn; and

  i.  Representing that all maintenance, repairs, and tree trimming would be done at no additional cost.

67. In addition to the misrepresentations made by Vision Solar to Plaintiff Fahey, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Fahey into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

  a.  Staying in Plaintiff Fahey's home extremely late and for over 4 hours;

  b.  Insisting to Plaintiff Fahey that he drove all the way from New Jersey and intended to get the deal signed that day;

  c.  Speaking quickly, despite being informed that Plaintiff Fahey's wife has degenerative brain disease and uses hearing aids;

  d.  Using a small tablet to show Plaintiff Fahey agreements for review and signatures, preventing Plaintiff Fahey from adequately reviewing them; and

   e. Providing a copy of the contract only months later, after the cancelation period had passed, preventing Plaintiff Fahey from canceling the contract.

68. Vision Solar installed a Solar Panel System at Plaintiff Fahey's home in early February 2022, despite knowing that the Solar Panel System was not permitted and did not have Permission to Operate. The system remained unpermitted and inactive without Permission to Operate for approximately eight months.

69. During those eight months, Plaintiff Fahey paid between $233 and $280 each month between electric bills and solar panel payments, even though the Solar Panel System was not functioning.

70. Additionally, Plaintiff Fahey did not receive the promised reimbursements, tax credit, and other benefits.

71. Vision Solar deflected Plaintiff Fahey's complaints using their Concierge and Customer Retention departments, ignoring inquiries about final inspections and unreturned reimbursements and failing to provide a copy of the signed contract for months.

72. Despite Financing Company Sunlight Financials' knowledge of Vision Solar's conduct, Sunlight Financial continued charging Plaintiff Fahey for the financing of his non-functioning Solar Panel System. Plaintiff Fahey made payments because he feared the legal and credit repercussions of nonpayment.

73. As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Fahey and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

74.     Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Fahey because Plaintiff Fahey reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Fahey.

### G.     PLAINTIFF FROMENT

75.     Plaintiff Shawn Froment ("Plaintiff Froment") is a citizen and resident of the Commonwealth of Massachusetts.

76.     Vision Solar induced Plaintiff Froment into purchasing a Solar Panel System on October 14, 2021, financed by KeyBank, during an at-home solicitation.

77.     Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Froment to purchase a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to, representing that:

      a.     Vision Solar had the proper permits prior to installing the Solar Panel System despite knowing Vision Solar had not obtained the required permits or Permission to Operate;

      b.     The Solar Panel System "would pay itself" by reducing the amount of power Plaintiff Froment would need to use from the power company despite knowing the Solar Panel System was incapable of such output; and

      c.     Vision Solar would repair Plaintiff Froment's roof and perform tree maintenance at no cost with no intention of providing those services.

78.     Contrary to the representations Vision Solar made to Plaintiff Froment:

      a.      Vision Solar did not obtain permits or Permission to Operate prior to installing Plaintiff Froment's Solar Panel System; and

      b.      The Solar Panel System has not reduced Plaintiff Froment's electricity bill.

79.    In addition to the misrepresentations made by Vision Solar to Plaintiff Froment, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Froment into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

      a.      Making multiple cold calls to schedule an in-home sales pitch;

      b.      Staying much longer than Plaintiff Froment wanted; and

      c.      Pressuring Plaintiff Froment into signing the contract on the same day without having adequate time to review it.

80.    Vision Solar installed the Solar Panel System on June 22, 2022, removed the panels one week later for roof repairs, and reinstalled the panels in the second week of January 2023; the panels have yet to be activated, despite a time span of nearly seventeen (17) months.

81.    During this time, Plaintiff Froment has paid an average of $600 each month for electric bills and has been required to pay additionally for the Solar Panel System even though the solar panels are not functioning as promised.

82.    Instead of acknowledging Vision Solar's practices and cancelling the financing agreement as Plaintiff Froment wished, KeyBank permitted Vision Solar to make Plaintiff Froment's payments for him in order to conceal Vision Solar's conduct and to prevent Plaintiff Froment from cancelling the agreement as he is entitled to do.

83.    Vision Solar prioritized its own benefit over the customer's, including by:

    a.      Pestering Plaintiff Froment to install panels before his roof replacement, despite being informed of the scheduled roof work;

    b.      Using wrong brackets during initial installation, causing multiple holes in the roof and $1,200 in repair costs;

    c.      Sending a tree service to his house without providing advance notice; and

    d.      Leaving panels in the ground for months after initial installation and removal.

84.     Vision Solar ignored Plaintiff Froment's complaints, failed to provide updates or answers, and delayed reinstalling the panels and obtaining proper permits and inspections.

85.     As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Froment and other similarly situated homeowners have suffered actual damages, including, without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

86.     Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Froment because Plaintiff Froment reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Froment.

### H.    PLAINTIFF HASTREITER

87.     Plaintiff Carlyn Hastreiter ("Plaintiff Hastreiter") is a citizen and resident of the State of Florida. Plaintiff Hastreiter is 83 years old.

88.     Vision Solar induced Plaintiff Hastreiter into purchasing a Solar Panel System from Vision Solar, financed by Dividend Finance, on August 13, 2022 after an in-home appointment.

89.     Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Hastreiter into purchasing a Solar Panel System by systematically misrepresenting material and foundational aspects of the sales and financing agreements, including but not limited to representing:

    a.     That Vision Solar would take care of all required permits and would not install the Solar Panel System until obtaining the required permits and Permission to Operate; and

    b.     That Plaintiff Hastreiter would have a significantly lower electric bill – specifically saying it would be "not quite half, but substantially lower."

90.     Contrary to these representations:

    a.     Vision Solar installed the Solar Panel System prior to obtaining permits and Permission to Operate. Because Financing Company Dividend Finance then started charging Plaintiff Hastreiter for the Solar Panel System, Plaintiff Hastreiter has been forced to pay for a non-functioning Solar Panel System; and

    b.     Plaintiff Hastreiter's Solar Panel System has not resulted in any savings, let alone substantial savings.

91.     Vision Solar installed the solar panels in September 2022, but they were only functionally activated on March 3, 2023 – a time span of nearly 7 months from the time of installation, which far exceeds Vision Solar's estimated completion time of 90 days after signing.

92.     During this period, Plaintiff Hastreiter paid $280 each month for electric bills and financing of a Solar Panel System despite the fact that the Solar Panel System was not permitted, did not have Permission to Operate, and therefore was not functioning.

93.     Vision Solar deflected Plaintiff Hastreiter's complaints via their Concierge and Customer Retention departments by redirecting her calls, hanging up on her, and failing to return promised callbacks. Eventually, after she threatened to contact an attorney, her panels were finally activated.

94.     At one point, Vision Solar falsely told Plaintiff Hastreiter that "someone" had turned her panels off but the Vision Solar representative could not say why because it "wasn't in his department." Only after Plaintiff Hastreiter told Vision Solar that she would contact an attorney if Vision Solar did not turn her panels on soon were her panels finally activated.

95.     As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Hastreiter and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

96.     Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Hastreiter because Plaintiff Hastreiter reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Hastreiter.

## I.     PLAINTIFF HENDERSON

97.     Plaintiff Lyndsey Henderson ("Plaintiff Henderson") is a citizen and resident of the State of New Jersey.

98.     Vision Solar induced Plaintiff Henderson into purchasing a Solar Panel System from Vision Solar, financed through Financing Companies KeyBank and Dividend Finance, in May 2022 when she assumed the contract from the previous homeowner.

99.     Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Henderson into the contract by misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to telling Plaintiff Henderson that her monthly electric bill would be significantly lower due to the panels.

100.    Contrary to these promises, Plaintiff Henderson's electric bill has remained extremely high.

101.    Vision Solar pressured Plaintiff Henderson into entering the financing agreement as a "take-it-or-leave-it deal," stating that without this agreement, she would not be able to purchase the house.

102.    Vision Solar installed the solar panels in May 2022, but they have yet to be activated – a time span of 11 months from when Plaintiff Henderson entered into the contract and nearly 3 years from when the prior homeowner contracted with Vision Solar for the same panels, far exceeding the estimated completion time of 90 days after signing.

103.    During this period, Plaintiff Henderson paid an average of $649 each month for electric bills and solar panels, without obtaining the contracted for benefits of a functioning Solar Panel System.

104.    Vision Solar's Concierge and Customer Retention departments deflected Plaintiff Henderson's complaints by not returning her calls or providing answers for over 7 months,

requesting her electric bills without taking further action, failing to send someone to inspect the panels when requested, and denying her access to a manager or supervisor for assistance. Plaintiff Henderson unsuccessfully tried to cancel her loan, eventually managing only to defer her panel payments.

105.    As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Henderson and other similarly situated homeowners have suffered actual damages, including increased monthly expenses, time and aggravation in seeking responses or solutions from Vision Solar, and other economic and non-economic harm.

106.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Henderson because Plaintiff Henderson reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Henderson.

**J.      THE LUPIEN PLAINTIFFS**

107.    Plaintiffs Stephanie and Dennis Lupien ("the Lupien Plaintiffs") are citizens and residents of the Commonwealth of Massachusetts.

108.    Vision Solar induced the Lupien Plaintiffs to purchase solar panels from Vision Solar, financed by Financing Company Dividend Finance, on July 11, 2022, the same day that a Vision Solar salesperson visited their home.

109.    Like other Plaintiffs and members of the Classes, Vision Solar induced the Lupien Plaintiffs into purchasing a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to, representing that:

a.    The Solar Panel System would cover 100% of the Lupien Plaintiffs' electric needs despite knowing the Solar Panel System would not;

b.    The Lupien Plaintiffs would receive a large federal tax credit despite Vision Solar knowing they were likely ineligible for the credit; and

c.    Vision Solar would repair any damage to the solar panels, roof, or gutters for the 25-year period they were contracted to own the panels despite Vision Solar knowing that it would not do so.

110.    Vision Solar later backtracked on its claims regarding Solar Panel System performance, claiming that 100% coverage was impossible, and requiring the Lupien Plaintiffs to sign a new contract for less than half coverage. Additionally, Vision Solar has yet to fix the gutters damaged by snow accumulation under the panels despite the Lupien Plaintiffs' frequent inquiries.

111.    While Vision Solar claimed to have the necessary permits, the master electrician had not signed off on them, leaving the Lupien Plaintiffs waiting for a resolution.

112.    In addition to the misrepresentations made by Vision Solar to the Lupien Plaintiffs, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce the Lupien Plaintiffs into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

a.    Repeatedly making unsolicited telephone calls to the Lupien Plaintiffs;

b.    Waiting in the Lupien Plaintiffs' driveway until the Lupien Plaintiffs agreed to purchase a Solar Panel System;

c.    Pressuring the Lupien Plaintiffs to sign agreements the same day as the in-person visit; and

28

d.      Using a small mobile device to obtain the Lupien Plaintiffs' signatures and to prevent the Lupien Plaintiffs from reading or reviewing the terms of agreements.

113.    Vision Solar completed the installation of the Solar Panel System on November 8, 2022, but the Lupien Plaintiffs' Solar Panel System is still not connected to the power grid due to a lack of Permission to Operate.

114.    During the eight (8) month period from installation to the present, the Lupien Plaintiffs have been forced to make payments for their non-functioning Solar Panel System despite Financing Company Dividend's knowledge of Vision Solar's conduct.

115.    The payments for the Solar Panel System and the non-reduced electric bill total over $600 per month.

116.    The Lupien Plaintiffs have also been harmed by the shoddy construction and workmanship caused by Vision Solar's unlicensed contractors. For example:

a.      Vision Solar caused structural damage to gutters of the Lupien Plaintiffs' home;

b.      Vision Solar's improper installation of the Solar Panel System caused snow to accumulate under panels, damaging the Lupien Plaintiffs' roof; and

c.      Vision Solar switched electricians mid-project resulting in delays and mistakes.

117.    Vision Solar's Concierge and Customer Retention departments ignored the Lupien Plaintiffs' complaints, not returning their calls or acting to repair damages despite

promising they would, thereby thwarting the Lupien Plaintiffs' ability to mitigate the damages Vision Solar caused.

118.    As a result of Vision Solar's misrepresentations and unfair business practices, the Lupien Plaintiffs and other similarly situated homeowners have suffered actual damages, including increased monthly expenses, time spent seeking responses or solutions from Vision Solar, and other economic and non-economic harm.

119.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed the Lupien Plaintiffs by causing the Lupien Plaintiffs to reasonably rely upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System, and the Lupien Plaintiffs would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to the Lupien Plaintiffs.

### K.    PLAINTIFF MCCLELLAND

120.    Plaintiff Matthew McClelland ("Plaintiff McClelland") is a citizen and resident of the State of New Jersey.

121.    Vision Solar induced Plaintiff McClelland to purchase a Solar Panel System with Vision Solar, financed through Financing Company Sunlight Financial, when a Vision Solar sales representative visited Plaintiff McClelland's home on September 8, 2022.

122.    Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff McClelland into agreeing to purchase a Solar Panel System by systemically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to promising:

    a.       That Plaintiff McClelland would receive an $8,600 tax credit and monthly payments of $54 from the state of New Jersey for purchasing a Solar Panel System;

    b.       That the Solar Panel System would cover all electric bills and "pay for itself"; and

    c.       That prior to panel installation Vision Solar would upgrade Plaintiff McClelland's electrical system, including the main panel, circuit breaker, and generator, from 100 amps to 200 amps.

123.    Contrary to what Plaintiff McClelland was promised, Plaintiff McClelland has not received a solar tax credit, will be required to pay $85 to $123 per month in solar panel payments despite being promised a $37 per month rate, and has yet to receive the upgrades to his system necessary for a functioning Solar Panel System.

124.    In addition to the misrepresentations made by Vision Solar to Plaintiff McClelland, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff McClelland into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

    a.       Remaining in Plaintiff McClelland's home for over 5 hours and not leaving until close to midnight (despite Plaintiff McClelland asking on several occasions "how much longer" this would take);

    b.       Insisting that Plaintiff McClelland sign on the sales representative's iPad;

    c.       Insisting that this signature be done in one location of the document such that Plaintiff McClelland was unable to read the full set of documents he

was signing and then proceeding to fill in Plaintiff McClelland's signature
throughout the rest of the document; and

d.     Only providing Plaintiff McClelland with a partial copy of his contract
despite requirements to provide a full copy immediately.

125.    Vision Solar installed the Solar Panel System without the required permits or
Permission to Operate on October 26, 2022, and six (6) months later Plaintiff McClelland's Solar
Panel System is still not connected to the power grid.

126.    During that time, Plaintiff McClelland has continued to pay $65-$70 each month
for his electric bills, an amount which should have been reduced by the Solar Panel System.

127.    Financing Company Sunlight Financial has concealed Vision Solar's conduct by
allowing Vision Solar to make payments for Plaintiff McClelland rather than cancelling the
agreement as desired by Plaintiff McClelland.

128.    Vision Solar has used its Concierge and Customer Retention departments to
deflect and ignore Plaintiff McClelland's complaints by, for example:

a.     Claiming upgrades were necessary to get Permission to Operate, but never
performing them;

b.     Ignoring his phone calls; and

c.     Telling Plaintiff McClelland in response to his inquiries that Vision Solar
will "look into it" but never doing so.

129.    As a result of Vision Solar's misrepresentations and unfair business practices,
Plaintiff McClelland and other similarly situated homeowners have suffered actual damages,
including without limitation, an increase in their monthly expenses, time and aggravation related

to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

130.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff McClelland by causing Plaintiff McClelland to reasonably rely upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System, and Plaintiff McClelland would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff McClelland.

## L.    PLAINTIFF NORALUS

131.    Plaintiff Nicola Noralus ("Plaintiff Noralus") is a citizen and resident of the State of Florida.

132.    Vision Solar induced Plaintiff Noralus to purchase a Solar Panel System with Vision Solar, financed through Financing Company Sunlight Financial, when a Vision Solar sales representative visited Plaintiff Noralus' home.

133.    Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Noralus into agreeing to purchase a Solar Panel System by systemically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to, representing that:

   a.    Vision Solar would take care of all required permitting prior to installation despite Vision Solar knowing that it would not obtain permits or Permission to Operate as required;

   b.    The Solar Panel System would "pay for [itself]" despite knowing the Solar Panel System would not;

33

    c.      Plaintiff Noralus would receive a large federal tax credit despite knowing that Plaintiff Noralus was unlikely to be eligible for such a tax credit;

    d.      Vision Solar would repair Plaintiff Noralus' roof if any damage occurred during installation despite knowing this to be false; and

    e.      Plaintiff Noralus would have lower electric bills as a result of the Solar Panel System and even receive money back from the electric company at the end of the year despite knowing both to be false.

134.    Contrary to Vision Solar's representations:

    a.      Vision Solar installed the Solar Panel System at Plaintiff Noralus' residence without obtaining permits or Permission to Operate;

    b.      Plaintiff Noralus is ineligible for the large tax credit Vision Solar promised her;

    c.      Vision Solar refuses to repair the damage Vision Solar's contractors caused to Plaintiff Noralus' roof; and

    d.      Plaintiff Noralus' electricity bills have not been lowered by the Solar Panel System.

135.    In addition to the misrepresentations made by Vision Solar to Plaintiff Noralus, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Noralus into agreeing to purchase and finance a Solar Panel System, including, but not limited to, by:

    a.      Making multiple unsolicited calls to set up an in-home sales pitch;

    b.      Staying in her home for longer than 2 hours;

    c.      Falsely telling Plaintiff Noralus that her signature only would go to approval of the offer rather than binding her into a contract; and

d.     Pressuring Plaintiff Noralus to sign the contract that night – without the chance to adequately review the documents – because it was a "one-time deal."

136.    Financing Company Sunlight Financial required Plaintiff Noralus to make payments for the financing of the Solar Panel System installed at Plaintiff Noralus' home despite the fact that Vision Solar had not obtained permitting or Permission to Operate, which means Plaintiff Noralus' Solar Panel System was not functioning.

137.    Financing Company Sunlight Financial required payments despite Plaintiff Noralus informing them that Vision Solar had not obtained the required permits or Permission to Operate, and despite the fact that Financing Company Sunlight Financial has received hundreds of complaints regarding Vision Solar's tactics.

138.    Plaintiff Noralus made payments under duress, fearing the legal and credit consequences of nonpayment.

139.    Vision Solar's Concierge and Customer Retention departments deflected and ignored Plaintiff Noralus' complaints, making further misrepresentations designed to prevent Plaintiff Noralus from taking activity to mitigate damages or rectify the situation.

140.    As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Noralus and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

141.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Noralus because Plaintiff Noralus reasonably relied upon the veracity of Vision

Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Noralus.

### M.    PLAINTIFF PAGANO

142.    Plaintiff Darlene Pagano ("Plaintiff Pagano") is a citizen and resident of the Commonwealth of Pennsylvania.

143.    Vision Solar induced Plaintiff Pagano into leasing a Solar Panel System from Vision Solar, financed by Financing Company Additional Financial, when a Vision Solar salesperson visited Plaintiff Pagano's home on June 16, 2021.

144.    Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Pagano to lease a Solar Panel System by systematically misrepresenting several material and foundational aspects of the leasing agreements, including, but not limited to, representing that:

   a.    The Solar Panel System would only be installed once Vision Solar had obtained the required permits and Permission to Operate;

   b.    Plaintiff Pagano would receive a large federal tax credit for installing the Solar Panel System;

   c.    If Plaintiff Pagano applied the tax credit she received to her Solar Panel System, her payments would drop from $180 a month to $135 a month; and

   d.    Plaintiff Pagano's electricity bill would be no more than $10-$15 per month for a service line fee.

145.    Contrary to Vision Solar's representations, Vision Solar:

a.    Did not obtain permits or Permission to Operate prior to installing the Solar Panel System at Plaintiff Pagano's home; and

b.    The terms of the financing agreement called for Plaintiff Pagano's payments to increase to $250 if she did not make a large payment equal to 26% of the purchase price of the Solar Panel System to the principal.

146.    In addition to the misrepresentations made by Vision Solar to Plaintiff Pagano, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Pagano into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

a.    Staying in Plaintiff Pagano's home for multiple hours and until nearly 10:00 pm, despite being asked to leave numerous times;

b.    Stating that if the agreement was not signed that night, the prices would go up;

c.    Refusing to provide Plaintiff Pagano with a copy of the agreement to review until it was signed;

d.    Discouraging Plaintiff Pagano from reviewing and discussing the agreement before signing while saying Plaintiff Pagano should want to enter into an agreement with "this great company tonight";

e.    Stating that Plaintiff Pagano's signature was only for preapproval; and

f.    Requiring that Plaintiff Pagano sign the document on the salesperson's laptop without providing Plaintiff Pagano an opportunity to review the contract.

147.    Despite being informed that Vision Solar had installed Plaintiff Pagano's Solar Panel System without obtaining the permits or Permission to Operate as required, Financing

Company Additional Financial has required Plaintiff Pagano to make payments for her Solar Panel System for sixteen (16) months while her Solar Panel System was not functional, resulting in thousands of dollars in losses.

148.    During that time, Plaintiff Pagano paid between $180 and $250 each month for solar panels and a higher-than-expected electric bill, even though her Solar Panel System was not functioning.

149.    Plaintiff Pagano was also harmed due to Vision Solar's shoddy construction and workmanship. For example:

   a.    Plaintiff Pagano's ridge vent on her roof blew off;

   b.    Collar ties in the attic were not put in place;

   c.    Plaintiff Pagano needed to redirect the conduit along the side of the house and to lift shingles from where Vision Solar removed five panels, though this could not be fixed because they did not "have the right glue"; and

   d.    Vision Solar did not immediately activate the panels and later only activated a portion of them.

150.    Vision Solar used its Concierge and Customer Retention departments to deflect and ignore Plaintiff Pagano's complaints. For example, Vision Solar gave various excuses as to why the panels were not activated for over 6 months and took several months, despite regular calls, to provide her with her "reimbursements" (after telling her that the reimbursements were in accounting but that accounting "doesn't have a phone number"). Even after Vision Solar finally provided the promised reimbursements, these reimbursements were only partial.  These actions were designed to prevent Plaintiff Pagano from taking action to mitigate the situation or cancelling the agreement.

151.    As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Pagano and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

152.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Pagano because Plaintiff Pagano reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Pagano.

### N.    THE PEREZ PLAINTIFFS

153.    Plaintiffs Evelyn and Jorge Perez ("the Perez Plaintiffs") are citizens and residents of the State of Florida. Evelyn Perez is 63 years old, and Jorge Perez is 68 years old.

154.    Vision Solar induced the Perez Plaintiffs to purchase a Solar Panel System with Vision Solar, financed through Financing Company Dividend Financial, in December 2022 when a Vision Solar sales representative visited their home.

155.    Like other Plaintiffs and members of the Classes, Vision Solar induced the Perez Plaintiffs into agreeing to purchase a Solar Panel System by systemically misrepresenting several material and foundational aspects of the sales and financing agreements, including but not limited to representing:

   a.    That Vision Solar would obtain the necessary permits and Permission to Operate prior to installation;

39

    b.    That the Perez Plaintiffs would save thousands of dollars on their electric bill and the Solar Panel System would "pay for itself";

    c.    That Vision Solar would repair their roof at no cost if needed; and

    d.    That the Perez Plaintiffs would receive a large federal tax credit to help offset the cost of the Solar Panel System.

156.    Contrary to what the Perez Plaintiffs were promised, Vision Solar:

    a.    Did not obtain the permits required to install and connect the Solar Panel System to the power grid. As a result, the Perez Plaintiffs have received notices from the city that they would either have to pay a potential fine of $1,000 per week or there would have to be demolition of the structure lacking a permit.[1]

    b.    The Perez Plaintiffs have not seen any savings on their monthly utility bills; and

    c.    The Perez Plaintiffs have yet to receive any tax credit and were told by their accountant that they will not receive any tax credit until the panels are turned on.

157.    In addition to the misrepresentations made by Vision Solar to the Perez Plaintiffs, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce the Perez Plaintiffs, seniors aged 63 and 68, into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

    a.    Staying in their home for well beyond three hours;

---

[1] For now, the city of Sunrise has decided not to enforce $1,000 per week fine because "more than 27 families" in Sunrise face the same issues with Vision Solar.

    b.      Eliciting sympathy to further the sales pitch by informing the Perez Plaintiffs about the salesperson's personal challenges, such as being a drug addict who just lost a friend to a fentanyl overdose and needing to make a sale because he was broke; and

    c.      Pressuring the Perez Plaintiffs to sign the agreement the same day as the visit, without allowing for their review.

158.    While Vision Solar installed the Solar Panel System in the first week of January 2023, the panels are still not activated, and Vision Solar's conduct to date, and the resultant issues with the City of Sunrise Magistrate, suggests the project length will far exceed Vision Solar's estimated completion time of 90 days after signing.

159.    During that time, the Perez Plaintiffs have paid $270 each month in electric bills even though they have not been able to experience the benefits of a functioning Solar Panel System.

160.    The Perez Plaintiffs have also been damaged by Vision Solar's shoddy construction and workmanship, such as the Solar Panel System failing an inspection due to missing DC converters and also failing local fire inspections.

161.    Vision Solar's Concierge and Customer Retention departments have deflected and ignored the Perez Plaintiffs' complaints, including by:

    a.      Denying their request to cancel their loan;

    b.      Misrepresenting to Channel 6 News their communication with the Perez Plaintiffs; and

    c.      Not responding to their calls or other inquiries.

162.    The Perez Plaintiffs have met with the City of Sunrise Magistrate on three separate occasions to resolve these issues, with a hearing date now set for May 10, 2023.

163.    Despite being well aware of Vision Solar's conduct, Dividend Financial continues charging the Perez Plaintiffs on a monthly basis. Dividend Financial refuses to cancel the contract and instead permits Vision Solar to make payments on behalf of the Perez Plaintiffs, conduct meant to conceal Vision Solar's misconduct.

164.    As a result of Vision Solar's misrepresentations and unfair business practices, the Perez Plaintiffs and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

165.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed the Perez Plaintiffs because the Perez Plaintiffs reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to the Perez Plaintiffs.

### O.    PLAINTIFF QUANTZ

166.    Plaintiff Karen Quantz ("Plaintiff Quantz") is a citizen and resident of the State of Florida.

167.    Plaintiff Quantz agreed to lease a Solar Panel System through IGS Solar on February 24, 2022, after a Vision Solar salesperson visited her home.

168.    Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Quantz into leasing the Solar Panel System by systemically misrepresenting several material and

foundational aspects of the sales and financing agreements, including but not limited to, representing that:

    a.    Vision Solar would obtain all necessary permits and Permission to Operate before installing the Solar Panel System;

    b.    The Solar Panel System would generate enough power to fully offset Plaintiff Quantz's normal electricity usage; and

    c.    Because Plaintiff Quantz was electing to lease rather than purchase, Vision Solar and IGS Solar would allow her to move the panels from her current home to another home if she chose to move.

169.    However, contrary to what Plaintiff Quantz was promised by Vision Solar:

    a.    The Solar Panel System has never generated enough electricity to cover her electric bill;

    b.    Plaintiff Quantz has been charged an extra fee each month from the electric company just for having solar panels in place; and

    c.    Vision Solar and IGS Solar have told Plaintiff Quantz that she may not remove the panels from her current residence and take them to a new residence with her.

170.    In addition to the misrepresentations made by Vision Solar to Plaintiff Quantz, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Quantaz into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

    a.    Pressuring her into signing up right away or risk losing the offered price;

b.  Approving her for financing options to lease by paying a fee for a "credit wipe" program, due to her not getting approval for financing to purchase because of her credit score; and

c.  Emailing her the agreement but requiring and pressuring her to sign it then and there, before she could read through it.

171.  While Vision Solar installed the Solar Panel System in late April or early May of 2022, the panels were only activated around December 19, 2022, a time span of 10 months, which far exceeds Vision Solar's estimated completion time of 90 days after signing.

172.  Despite knowing of Vision Solar's behavior, IGS Solar required Plaintiff Quantz to make payments notwithstanding the nonperformance of her Solar Panel System. Plaintiff Quantz made payments fearing legal action or credit consequences for nonpayment.

173.  Between May of 2022 and December 19, 2022, Plaintiff Quantz paid her power company a monthly $10 fee as a result of her Solar Panel System being installed (even though it was not functioning due to a lack of permitting) and paid $59/month to Financing Company IGS Solar for the Solar Panel System which was not functioning.

174.  Plaintiff Quantz asked Vision Solar to exit her contract due to Vision Solar's nonperformance. Vision Solar deflected Plaintiff Quantz's complaints via the Concierge and Customer Retention departments by, amongst other things:

a.  Ignoring her for months before finally hooking up her panels (despite the title company reaching out to Vision Solar multiple times); and

b.  Not signing an affidavit to close the permit on the panels, which would allow her to sell her house.

175.    Plaintiff Quantz has been unable to sell her house because of Vision Solar's failure to sign the requested affidavit.

176.     As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Quantz and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

177.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Quantz because Plaintiff Quantz reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Quantz.

**P.    PLAINTIFF RORRIS**

178.    Plaintiff Greg Rorris ("Plaintiff Rorris") is a citizen and resident of the State of Florida.

179.    Vision Solar induced Plaintiff Rorris into purchasing a Solar Panel System from Vision Solar, financed through Financing Company Sunlight Financial, on June 10, 2021 when a Vision Solar salesperson visited his home.

180.    Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Rorris into agreeing to purchase a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including, but not limited to:

a.   Representing that Vision Solar would obtain all necessary permits and Permission to Operate required to connect the Solar Panel System to the power grid prior to installing the Solar Panel System at Plaintiff Rorris' residence;

b.   Representing that the Solar Panel System would produce enough electricity for Plaintiff Rorris that it would cover the entirety of Plaintiff Rorris' electricity needs, eliminate the need to draw electricity from the power grid, such that Plaintiff Rorris would only be responsible for paying the electric company a $20-$25 service fee each month;

c.   Representing that Plaintiff Rorris would receive a $500 bonus for each successful referral; and

d.   Failing to disclose that to prevent his payments from significantly increasing Plaintiff Rorris would be required to make a large payment equal to 26% of the price of the Solar Panel System to the Financing Company financing his purchase, regardless of whether Plaintiff Rorris received a federal tax credit.

181.   Contrary to the representations made to Plaintiff Rorris, Vision Solar:

a.   Did not request the permits until August 16, nearly two months after installation, and the application was not completed until September;

b.   Failed to provide panels that covered Plaintiff Rorris' usage or electric bill;

c.   Charged monthly utility bills averaging $126 instead of $25-$30; and

      d.     Has not provided the two $500 bonuses for his two (also dissatisfied) referrals.

182.    In addition to the misrepresentations made by Vision Solar to Plaintiff Rorris, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Rorris into agreeing to purchase and finance a Solar Panel System, including, but not limited to, overstaying their welcome and falsely claiming to have secured special terms for Plaintiff Rorris.

183.    Vision Solar began installing the Solar Panel System at Plaintiff Rorris' residence on June 17, 2021 but did not complete the installation until October 2021.

184.    Plaintiff Rorris was forced to *himself* obtain permitting and Permission to Operate in mid-October after his utility company informed him that his Solar Panel System was unpermitted and that if he did not obtain permits and Permission to Operate, he would face financial consequences.

185.    During that time, Plaintiff Rorris made monthly payments in excess of $126 for electric bills, even though he did not experience the benefits of a functioning Solar Panel System until mid-October 2021.

186.    Because Vision Solar prioritized its own benefit over that of the customer's, Plaintiff Rorris was damaged by Vision Solar's shoddy construction, resulting in missing placards, a melted fuse, and a system that grossly underperformed the promised levels of production.

187.    Vision Solar's Concierge and Customer Retention departments deflected Plaintiff Rorris' complaints by:

a.      Promising Plaintiff Rorris that Vision Solar would immediately fix issues caused by Vision Solar's shoddy workmanship when in fact it had no intention to do so;

b.      Falsely telling Plaintiff Rorris that Vision Solar was working on getting payments to him but that "the requests are in accounting"; and

c.      Falsely claiming that other parties were responsible for the failure of Vision Solar to obtain the necessary permits and Permission to Operate.

188.    As a result of Vision Solar's failures, Plaintiff Rorris was forced to undertake the following actions himself:

a.      Plaintiff Rorris had placards made and mounted;

b.      Plaintiff Rorris manually activated the panels at the instruction of the utility company; and

c.      Plaintiff Rorris contracted with another solar panel company to fix Vision Solar's shortcomings (which required the installation of 12 additional panels), at an additional cost of approximately $14,500.

189.    As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Rorris and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

190.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Rorris because Plaintiff Rorris reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not

have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Rorris.

### Q.   THE SCHMIDT PLAINTIFFS

191.   Plaintiffs Janice and Joe Schmidt (the "Schmidt Plaintiffs") are citizens and residents of the State of Arizona. Janice Schmidt is 77 years old; Joe Schmidt is 79 years old.

192.   Vision Solar induced the Schmidt Plaintiffs into purchasing a Solar Panel System from Vision Solar, with financing from Financing Company KeyBank, after a Vision Solar salesperson visited their home on March 19, 2021.

193.   Like other Plaintiffs and members of the Classes, Vision Solar induced the Schmidt Plaintiffs to purchase a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including, but not limited to, representing:

a.   That Solar Panel System would produce enough electricity to cover all their electricity needs, eliminating the need for pay for electricity from the power company;

b.   That the Schmidt Plaintiffs would receive a $9,000 "rebate" as a result of purchasing the Solar Panel System;

c.   That Vision Solar would replace the electric box so the panels could be properly set up; and

194.   Contrary to Vision Solar's representations:

a.   The Schmidt Plaintiffs did not receive a $9,000 incentive rebate or tax credit;

b. The Schmidt Plaintiffs were notified that if they did not make a large principal payment within 18 months, their payments would increase substantially, from $112 to $153 a month;

c. The Schmidt Plaintiffs' financing payments for the Solar Panel System have increased from $112 to $153 a month as a result of the Schmidt Plaintiffs not making a payment equal to 26% of the price of the Solar Panel System within 18 months; and

d. The Solar Panel System installed at the Schmidt Plaintiffs' residence does not cover all of their electricity needs.

195. In addition to the misrepresentations made by Vision Solar to the Schmidt Plaintiffs, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce the Schmidt Plaintiffs, both of whom are in their 70's, into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

a. Requiring the Schmidt Plaintiffs to review and sign agreements on a small tablet device and not affording the Schmidt Plaintiffs an opportunity to review the agreements before signing;

b. Falsely stating that the Schmidt Plaintiffs were required to sign the agreement the same day; and

c. Only returning a copy of the contract on a weekend day, the day before the 3-day cancellation policy was due to expire, thereby leading the Schmidt Plaintiffs to believe they missed their opportunity to cancel.

196. Vision Solar installed the Solar Panel System at the Schmidt Plaintiffs' residence without first obtaining permits or Permission to Operate in April 2021. The required permits and

Permission to Operate for the Schmidt's Solar Panel System was not obtained until eight (8) months later, on November 23, 2021.

197.   Despite the fact that Vision Solar installed the Solar Panel System without Permission to Operate, and that as a result the Solar Panel System was not functioning, Financing Company KeyBank required the Schmidt Plaintiffs to make financing payments for their Solar Panel System during the eight months of non-functionality.

198.   During that time, the Schmidt Plaintiffs paid over $200 each month between electric bills and solar panel fees, even though they did not obtain the contracted for benefit of functioning solar panels until November 23, 2021.

199.   The Schmidt Plaintiffs have also suffered damages from the shoddy construction and workmanship of Vision Solar's unlicensed contractors. For example:

a.   Vision Solar's contractors obtained the wrong placards; and

b.   Vision Solar's contractors failed to provide the county inspectors with necessary information required to pass inspection.

200.   Vision Solar also deflected and ignored the Schmidt Plaintiffs' multiple complaints by conjuring various excuses and redirecting culpability, including by sending someone to the Schmidt Plaintiffs' home to blame them in person for supposedly ordering the wrong part when Vision Solar had ordered the part. Vision Solar thereby thwarted the Schmidt Plaintiffs' ability to take any actions to mitigate their damages.

201.   As a result of Vision Solar's misrepresentations and unfair business practices, the Schmidt Plaintiffs and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related

to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

202.    Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed the Schmidt Plaintiffs because the Schmidt Plaintiffs reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to the Schmidt Plaintiffs.

**R.    PLAINTIFF STEVENS**

203.    Plaintiff Danielle Stevens ("Plaintiff Stevens") is a citizen and resident of the State of Florida.

204.    Vision Solar induced Plaintiff Stevens to purchase a Solar Panel System from Vision Solar, with financing from Financing Company Dividend Finance, after a Vision Solar salesperson visited her home.

205.    Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Stevens to purchase a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including, but not limited to, representing that:

a.    Vision Solar had already acquired the necessary permits or Permission to Operate as required by local authorities prior to installing the Solar Panel System;

b.    Vision Solar's Solar Panel System would "pay for itself" through the reduction of Plaintiff Stevens' electric bill;

c.      Vision Solar would repair or replace the roof and remove trees, as required

for the Solar Panel System to be installed, at no cost to Plaintiff Stevens;

and

d.      Vision Solar would pay Plaintiff Stevens a $1,000 sign-on bonus.

206.    Contrary to Vision Solar's representations:

a.      Vision Solar installed the Solar Panel System without obtaining the

required permits or Permission to Operate from local authorities;

b.      Vision Solar turned on the Solar Panel System prior to obtaining the

required permits or Permission to Operate from local authorities, resulting

in Plaintiff Stevens being charged additional amounts by Plaintiff Stevens'

power company;

c.      Plaintiff Stevens did not receive a $1,000 sign-on bonus; and

d.      Vision Solar's Solar Panel System has substantially underperformed, not

delivering anywhere near the adequate amount of power to "pay for

itself."

207.    In addition to the misrepresentations made by Vision Solar to Plaintiff Stevens,

Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Stevens

into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

a.      Presenting the contract to Plaintiff Stevens on the Vision Solar

salesperson's mobile device, preventing Plaintiff Stevens from adequately

reading or reviewing the terms of the agreements;

b.      Failing to provide a copy of the signed contract to Plaintiff Stevens until

days or weeks later, after the cancellation period had passed; and

      c.     Making multiple unsolicited cold calls for the purpose of setting up an in-home sales visit.

208.    Vision Solar installed the Solar Panel System without permits or Permission to Operate from local authorities, meaning that the Solar Panel System was not hooked up to the power grid and thus was not providing any benefit to Plaintiff Stevens.

209.    Despite this, Financing Company Dividend Financial nevertheless began requiring that Plaintiff Stevens make payments towards the principal of the loan she had been induced into taking out.

210.    Plaintiff Stevens was also forced to make additional payments to her power company because of Vision Solar's unpermitted installation of the Solar Panel System.

211.    Plaintiff Stevens also suffered damages due to Vision Solar's shoddy construction and workmanship, which included Vision Solar not heeding to, or providing to the utility company, the one-line drawing to match the system that was installed on Plaintiff Stevens' roof.

212.    Vision Solar used the Concierge and Customer Retention departments to ignore and deflect Plaintiff Stevens' complaints, despite Plaintiff Stevens calling weekly for nearly five months. For example:

      a.     Vision Solar promised to, but did not, schedule inspections by local authorities to connect the Solar Panel System to the power grid;

      b.     Vision Solar promised to, but did not, start or file permit applications with local authorities; and

      c.     Vision Solar promised to, but did not, pay Plaintiff Stevens a $1,000 sign-on bonus.

213.     As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Stevens and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

214.     Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Stevens because Plaintiff Stevens reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Stevens.

### S.     PLAINTIFF UNDERWOOD

215.     Plaintiff Chris Underwood ("Plaintiff Underwood") is a citizen and resident of the State of Florida.

216.     Vision Solar induced Plaintiff Underwood to purchase a Solar Panel System from Vision Solar, with financing from Financing Company Sunlight Financial and servicing from Financing Company Tech CU, after a Vision Solar salesperson visited his home unsolicited.

217.     Like other Plaintiffs and members of the Classes, Vision Solar induced Plaintiff Underwood to purchase a Solar Panel System by systematically misrepresenting several material and foundational aspects of the sales and financing agreements, including, but not limited to, representing:

a.     That Vision Solar would obtain all necessary permits and Permission to Operate from local authorities prior to installing the Solar Panel System;

b.      That Plaintiff Underwood would receive a federal tax credit equal to 26% of the price of the Solar Panel System, or $18,000, by purchasing a Solar Panel System from Vision Solar;

c.      That Plaintiff Underwood could use a federal tax credit to keep his payments low without disclosing that Plaintiff Underwood would be required to make a payment equal to 26% of the purchase price of the Solar Panel System regardless of whether he received a tax credit;

d.      That the Solar Panel System's performance would cause Plaintiff Underwood to pay only $20-$30 each month in electricity bills despite knowing that the Solar Panel System was incapable of such performance;

e.      That Vision Solar used licensed contractors to install Solar Panel Systems and perform other work required for installation; and

f.      That, upon request, Vision Solar would remove panels for roof replacement and cut down trees to maximize energy production, at no cost to Plaintiff Underwood, despite knowing that Vision Solar would not perform those tasks.

218.   Contrary to Vision Solar's representations:

a.      The Solar Panel System was installed by Vision Solar at Plaintiff Underwood's residence without Vision Solar obtaining permits or Permission to Operate, resulting in the Solar Panel System not functioning at all;

b.    The Solar Panel System failed to deliver enough power to result in any savings for Plaintiff Underwood, let alone for him to pay just $20-$30 a month in electricity bills;

c.    Plaintiff Underwood is ineligible for a federal tax credit of 26% or $18,000;

d.    Unlicensed or inadequately licensed contractors were used to install the Solar Panel System at Plaintiff Underwood's residence; and

e.    Plaintiff Underwood is still required to make a large payment equal to 26% of the price of the Solar Panel System in order to maintain payments at the current levels.

219.    In addition to the misrepresentations made by Vision Solar to Plaintiff Underwood, Vision Solar's salesperson employed unfair, "high-pressure" tactics to coerce Plaintiff Underwood into agreeing to purchase and finance a Solar Panel System, including, but not limited to:

a.    Targeting Plaintiff Underwood and other residents in his area due to the belief they would be vulnerable to influence;

b.    Visiting Plaintiff Underwood's home unannounced;

c.    Staying at Plaintiff Underwood's home beyond the two-hours Plaintiff Underwood said he had available;

d.    Telling Plaintiff Underwood that the offer from Vision Solar and Financing Company Sunlight Financial was only good if signed the same day (because the one representative, supposedly a regional manager, would be away the following day);

57

e.      Discouraging Plaintiff Underwood from discussing the contract with his family or lawyer prior to signing;

f.      Presenting the contract on the salesperson's small mobile device, preventing Plaintiff Underwood from adequately reading or reviewing the terms of the agreements; and

g.      Refusing to leave Plaintiff Underwood's home unless and until he signed the agreements.

220.    Plaintiff Underwood has also suffered damages due to Vision Solar's shoddy construction and workmanship, which is the result of Vision Solar using unlicensed or inadequately licensed contractors to perform work at Plaintiff Underwood's residence. For example, Vision Solar's contractors made holes on Plaintiff Underwood's roof which have caused leaks in his roof and damage to his ceiling, assessed as costing approximately $1,800 to repair.

221.    Vision Solar installed the Solar Panel System at Plaintiff Underwood's residence without obtaining permits or Permission to Operate, meaning that Vision Solar did not hook up Plaintiff Underwood's Solar Panel System to the power grid.

222.    Despite the fact that Plaintiff Underwood's Solar Panel System was not connected to the power grid, and despite Financing Company Sunlight Financial's knowledge of Vision Solar's misconduct, Financing Company Sunlight Financial required Plaintiff Underwood to make payments towards the financing loan.

223.    Vision Solar used the Concierge and Customer Retention departments to ignore and/or deflect Plaintiff Underwood's complaints, which induced him to not take further action, including by:

a.  Promising reimbursements for payments made to Sunlight Financial despite having no intention of paying such reimbursements;

b.  Blaming Plaintiff Underwood for Vision Solar's failure to obtain permitting;

c.  Telling Plaintiff Underwood that Vision Solar and the Financing Company would allow him to cancel the contract despite this being false; and

d.  Stating in an interview with a reporter that Vision Solar would allow Plaintiff Underwood to cancel his contract, only to later say they would not.

224.   As a result of Vision Solar's misrepresentations and unfair business practices, Plaintiff Underwood and other similarly situated homeowners have suffered actual damages, including without limitation, an increase in their monthly expenses, time and aggravation related to making any attempt to get a response or solution from Vision Solar, and other economic and non-economic harm.

225.   Like the harm caused to other Plaintiffs and members of the Classes, Vision Solar harmed Plaintiff Underwood because Plaintiff Underwood reasonably relied upon the veracity of Vision Solar's representations in making the decision to purchase a Solar Panel System and would not have purchased a Solar Panel System from Vision Solar absent the material and foundational misrepresentations made by Vision Solar to Plaintiff Underwood.

## II.    DEFENDANT VISION SOLAR

226.   Defendant Vision Solar, LLC is a solar energy company that installs solar panels for residential homes.

227.    Vision Solar's principal place of business is located at 511 Route 168, Blackwood, NJ 08012, and it is registered under the laws of Delaware.

## JURISDICTION AND VENUE

228.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Class exceed $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a State different from Defendant Vision Solar's.

229.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant Vision Solar transacts business in, is found in, and/or has agents in this District and because some of the actions giving rise to this complaint took place within this District.

230.    The Court has personal jurisdiction over Defendant Vision Solar. Defendant Vision Solar's principal place of business is located within this District. Additionally, Defendant Vision Solar has transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the conduct alleged in the Complaint throughout the United States, including in this District. The conduct was directed at, and has had the effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## SUBSTANTIVE ALLEGATIONS

231.    Vision Solar and its partner Financing Companies operate a fraudulent, deceptive, and unfair scheme designed to induce homeowners into purchasing and/or leasing residential solar photovoltaic systems (previously defined as "Solar Panel Systems") and to lock them into predatory financing agreements.

232. Vision Solar's and the Financing Companies' motivations are simple: they all profit from each Solar Panel System sold or leased by Vision Solar. Vision Solar receives 100% of the contract price from its partner Financing Companies even without proof the Solar Panel Systems are functioning, permitted, or hooked up to the power grid. And Financing Companies profit via fees charged to consumers to whom they make loans and to third-party investors who buy packaged and securitized solar asset-backed securities from Financing Companies.

233. Financing Companies enable Vision Solar's conduct by providing financing for Vision Solar's sales. Most homeowners require Financing Companies' financing because the typical price of a Solar Panel System is anywhere from $10,000 to $60,000, a cost the vast majority of them cannot afford to pay out-of-pocket.

234. Financing Companies' agreements typically carry 20-to-25-year terms and add substantial interest to the overall purchase price of Vision Solar's Solar Panel Systems.

235. Financing Companies thus profit by adding thousands of dollars in fees and interest to the purchase price or lease payment amounts.

236. Unlike traditional banks that finance their loans with deposits and therefore have an incentive to ensure that borrowers are able to make the payments on their loans, Financing Companies are backed largely by investors, including private equity funds, who buy packages of loans called solar asset-backed securities.

237. Because Financing Companies make money both by charging borrowers fees and by bundling and selling loans to investors, any incentive to ensure that the origination of the loans is free of fraud or deception, factors which might hinder repayment, is outweighed by the incentive to simply finalize as many solar asset-backed loans as possible for third parties.

238.     Financing Companies are well aware that Vision Solar installs nonperforming Solar Panel Systems without obtaining permits or Permission to Operate because they have received hundreds if not thousands of complaints from individuals—including complaints from each of the 18 representative Plaintiffs bringing this action—who are being forced to pay for Solar Panel Systems that are not hooked up to the power grid or are otherwise substantially not functioning.

239.     The ethical and lawful response to these complaints would be to rescind the financing transactions and sever the business relationship with Vision Solar. Instead, Financing Companies typically respond to these complaints by threatening Vision Solar's victims with legal action or negative credit consequences, which typically coerces Vision Solar's victims to pay for an often-non-functioning product.

240.     If that fails, Financing Companies engage in tactics designed to conceal Vision Solar's conduct. For example (and as detailed below), Financing Companies Sunlight Financial and Dividend Finance have both permitted Vision Solar to make payments on behalf of victims who have complained that the Financing Companies are requiring payment for Solar Panel Systems that Vision Solar has not hooked up to the power grid. These acts are designed to actively conceal Vision Solar's conduct from the third-party investors who have purchased loans from Financing Companies, lest these investors discover that they bought loans originated through fraud, deception, and unfair tactics.

241.     Alternatively, Financing Companies instruct victims to make the payments but "require" Vision Solar to promise to reimburse the victims for these payments. In reality, the promised reimbursements are rarely, if ever, paid.

242.    In select instances, if the victims persist with their complaints or threaten to involve law enforcement, Financing Companies have allowed temporary deferments of payments for non-performance – an acknowledgement that Vision Solar does not perform as promised.

243.    Financing Companies conceal Vision Solar's conduct for multiple reasons, including:

> (1) to keep consumers on the hook going forward if Vision Solar ever does obtain Permission to Operate;

> (2) to conceal Vision Solar's conduct from the general public (lest Vision Solar be shut down by law enforcement) in order to continue the supply of loan originations; and

> (3) to conceal from third-party investors who bought solar asset-backed securities from Financing Companies the fact that the loans they purchased were originated via fraud and are in danger of underperforming.

244.    This scheme leaves homeowners financially responsible for non-functional or un-permitted Solar Panel Systems and leaves third parties with solar asset-backed securities full of fraudulently and deceptively originated loans.

## I.    VISION SOLAR ENGAGED IN FALSE, DECEPTIVE, AND UNFAIR MARKETING AND/OR SALES TACTICS THAT INDUCED CONSUMERS TO SIGN CONTRACTS THEY OTHERWISE WOULD NOT HAVE AGREED TO.

245.    To sell as many Solar Panel Systems as possible, Vision Solar developed a script and trained its salespeople to utilize a core set of falsehoods, misrepresentations, and pressure tactics designed to induce homeowners into signing sales and financing agreements for Solar Panel Systems.

246.    As an initial matter, Vision Solar salespeople often purposefully targeted groups of homeowners they believed would be particularly susceptible to these tactics, including individuals with low incomes as well as elderly and disabled individuals.

247.    Vision Solar often showed up at homes unannounced to make sales pitches and then refused to leave when asked.

248.    Once in a home, Vision Solar salespeople engaged in a pattern of core misrepresentations, including:

   a.    Misrepresenting the implications of a consumer's signature, such as claiming it was only for "preapproval" or, alternatively, falsely stating that a contract had already been established prior to signature;

   b.    Running a hard credit check without consent and then using the negative credit consequences of the hard credit check to induce a consumer to purchase a Solar Panel System;

   c.    Misrepresenting that Vision Solar had obtained necessary permits and authorization, or would do so prior to installation, when in fact, the Solar Panel Systems were not authorized and would not be authorized prior to installation;

   d.    Misrepresenting homeowner's eligibility for a federal tax credit for as much as 26% of the cost of the Solar Panel System to offset the cost of the Solar Panel Systems;

   e.    Misrepresenting the terms of the financing agreements, including purposefully concealing that if homeowners did not make a payment equal

to 26% of the contract price to pay down the loan principal within 18 months, their payments would increase substantially;

f.   Misrepresenting the performance of Vision Solar's Solar Panel Systems, such as claiming the Solar Panel Systems would "pay for themselves" by producing enough energy to more than offset loan or lease payments; and

g.   Misrepresenting that Vision Solar's contractors were adequately licensed to perform the work necessary to install Solar Panel Systems.

249.   In addition to relying on the above core misrepresentations, Vision Solar's salespeople employed unfair tactics designed to overcome consumers' resistance, such as:

a.   Deliberately targeting populations Vision Solar believed would be vulnerable to undue influence, such as low-income areas and retirement communities;

b.   Staying in consumers' homes beyond the period they were welcome, only agreeing to leave if a consumer signed a sales and financing agreement;

c.   Discouraging consumers from seeking legal advice before signing agreements;

d.   Presenting contracts or documents for electronic signature on a salesperson's mobile phone or tablet, depriving consumers of the opportunity to adequately review the terms of the agreements; and

e.   Delaying the provision of a copy of the signed agreements to consumers until after the recission period passed, depriving homeowners of the ability to exercise their rights of cancellation.

250.   The Connecticut Attorney General described Vision Solar's conduct as follows:

We're investigating numerous complaints regarding high-pressure solar industry sales tactics, **but Vision Solar's predatory practices are far and away the worst we have seen.** Vision Solar preyed on low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that in some cases were never activated. Their egregious misconduct appears to have violated multiple laws, and we're going to hold them accountable. Our lawsuit seeks to get money back for Vision customers, as well as fines and court orders to stop Vision from engaging in these unfair and deceptive practices.

251.    Several Florida news stations have conducted investigations or run stories on the tactics employed by Vision Solar. For example, an investigation by Tampa-based ABC News affiliate WFTS uncovered that there have been over 70 complaints filed with the Florida Attorney General's Office and recounted that:

Tampa retiree Eula Gutierrez and her husband signed up for a $53,000 investment that came with a 25-year payment plan. Gutierrez told the I-Team that the saleswoman convinced her the savings on her power bill would help offset the monthly loan payment of $169.

"She said, but look, you're going to be saving from here to no telling when. You're going to be saving every month because your electric bill will be so small," Gutierrez recalled.

Gutierrez said the installers damaged her roof, which caused a leak in her bathroom while putting on the panels last summer, and they never connected her system to the grid. For the last seven months, the panels have sat on her roof without generating a single watt of electricity.[2]

252.    Attempting to downplay its conduct, Vision Solar admitted it had "made mistakes" and had rapidly installed Solar Panel Systems without obtaining permits:

As far as permits and installing jobs without them. We own our past. As we were growing rapidly in your area, we had a problem with our CRM system and for a period of time were installing without permits without knowledge as the system suggested complete and approved. We have since fixed that problem, have worked with local municipalities and paid associated fines. I am incredibly confident in our current team and systems/processes where these types of errors will not occur again.[3]

---

[2] https://www.abcactionnews.com/news/local-news/i-team-investigates/more-than-70-complaints-against-vision-solar-prompt-consumer-investigation

[3] Id.

253.    Similarly, an investigative team from a South Florida CBS News affiliate recounted the story of Estela Padilla, a Boca Raton homeowner who "took out a $40,000 loan to finance the panels, and is paying $122 toward the loan each month" but found that "[a] year and a half later, she is still paying for the panels but hasn't seen any savings on her energy bill. That's because her panels were never activated or connected to the power grid."[4]

254.    Another Florida news station, Local News 10 of Broward County, Florida, recounted the story of Tracy Walters, who paid Vision Solar a $21,000 deposit only to have Vision Solar disappear for over a year, causing her to have "tears on phone calls" due to frustration.[5]

255.    Similarly, WFTV 9, an Orlando TV station told the story of a man who was promised that the Solar Panel System installed by Vision Solar would save him $200 a month. Instead, the system delivers on just 6% of the power his family needs, and he has been saddled with over $50,000 in debt to the Financing Companies.[6]

### A.    VISION SOLAR MISREPRESENTED SOLAR PANEL SYSTEM PERFORMANCE

256.    As detailed by Plaintiffs, the Connecticut Attorney General, and the investigative teams of multiple television stations, Vision Solar consistently made misrepresentations regarding the performance of the Solar Panel Systems that Vision Solar sold.

257.    Vision Solar developed a training regime and script for its salespeople, whereby they are instructed to engage in fraudulent, unfair, and deceptive tactics, including misrepresenting the performance of the Solar Panel Systems.

---

[4] https://cbs12.com/news/local/i-team-vision-solar-panels-permits-south-florida-deerfield-beach-scam-1-31-2023
[5] https://www.local10.com/news/local/2022/12/09/woman-pays-21k-deposit-for-roof-solar-panels-but-12-months-later-has-nothing/
[6] https://www.wftv.com/news/action9/thats-not-good-homeowners-feel-burned-by-solar-power-promises/OWPN5EJBP5CDBHJH3YP32JYSLM/

258.    Specifically, Vision Solar's salespeople systematically misrepresent the output the Solar Panel Systems are capable of, which induces consumers into believing the systems "pay for themselves."

259.    Rather than "pay for themselves", as Vision Solar salespeople consistently represent, the Solar Panel Systems consistently fail to provide enough electricity to offset their costs, leaving consumers on the hook for more money than they otherwise would have had to pay had they never installed Solar Panel Systems.

260.    Financing Companies are and have been aware of Vision Solar's misrepresentations regarding the Solar Panel Systems' performance because they have received hundreds, if not thousands, of complaints from customers whose Solar Panel Systems are not functioning as promised.

261.    Despite knowing that Vision Solar is fraudulently, deceptively, and unfairly mispresenting the Solar Panel Systems they are selling, Financing Companies continue to enable Vision Solar's behavior by providing financing for Vision Solar.

262.    Plaintiffs and members of the Classes would not have purchased Solar Panel Systems from Vision Solar had they known the truth regarding the Solar Panel Systems' performance.

**B.      VISION SOLAR MISREPRESENTED HOMEOWNERS' ELIGIBILITY FOR TAX CREDITS**

263.    Vision Solar knowingly misrepresented homeowners' eligibility for federal and state tax credits to induce them into Solar Panel System financing agreements.

264.    Most Vision Solar customers, including Plaintiffs, do not qualify for the tax credit or do not have the requisite taxable income to receive a tax credit equal to 26% of the price of a Solar Panel System.

265.    Vision Solar knows this yet instructs all of its salespeople to target, and they do target, populations with low incomes and thus little to ability to claim a tax credit.

266.    Vision Solar further preys upon homeowners' lack of tax knowledge and sophistication by misrepresenting homeowners' eligibility for such credits, which fraudulently, deceptively, and unfairly induce them into purchasing Solar Panel Systems from Vision Solar.

267.    Had Plaintiffs known Vision Solar's representations were false, Plaintiffs and members of the Class would not have agreed to purchase Solar Panel Systems from Vision Solar. Some examples of Vision Solar's misrepresentations include:

a.      Vision Solar told Plaintiff Cuenca she would receive a check for $10,000 as a federal tax credit for purchasing a Solar Panel System;

b.      Vision Solar told Plaintiff Donahue she would automatically be eligible for a large federal tax credit for purchasing a Solar Panel System;

c.      Vision Solar told Plaintiff McClelland he would receive a federal tax credit of $8,600 and a payment from the State of New Jersey of $54 per month for purchasing a Solar Panel System;

d.      Vision Solar told Plaintiff Noralus she would receive a federal tax credit equal to thousands of dollars;

e.      Vision Solar told Plaintiff Schmidt he would receive a federal tax credit for that year of $9,000;

f.      Vision Solar told Plaintiff Underwood he would receive 26% of his loan, or $18,000, in tax credits; and

g.      Vision Solar told Plaintiff Fahey that he would receive a federal tax credit of over $10,000 for purchasing a Solar Panel System.

268.    Financing Companies reinforced Vision Solar's fraudulent, deceptive, and unfair misrepresentations regarding tax credit eligibility in the way they structured loans and leases.

269.    Financing Companies' loans and leases began with an introductory monthly payment amount that remained stable for 18 months. After 18 months, however, Plaintiffs and members of the Classes were expected to make a large payment to the principal of the loan equal to 26% of the purchase price, the same percentage of the purchase price Vision Solar had told homeowners they would receive in the form of a federal tax credit.

270.    If Plaintiffs and members of the Classes did not make this payment, their monthly payments to Financing Companies would go up substantially.

271.    Despite Vision Solar's representations, Plaintiffs have not received a federal tax credit equal to 26% for the purchase of a Solar Panel System from Vision Solar.

272.    Had Plaintiffs and members of the Classes known the truth regarding their ineligibility for a federal tax credit, they would not have agreed to purchase Solar Panel Systems from Vision Solar and would not have entered into Solar Panel System financing agreements with Financing Companies.

### C.    VISION SOLAR MISREPRESENTED THE STATUS OF PERMITS AND PERMISSION TO OPERATE.

273.    Vision Solar misrepresented to Plaintiffs and members of the Classes that Solar Panel Systems would not be installed until after Vision Solar obtained the required federal, state, and local permits required, including UCC filings and (for New Jersey) NJ Clean Energy Program filings, and that homeowners would not be responsible for payments until after the Solar Panel System had passed inspection and had obtained "Permission to Operate" or "PTO".

274.    For example, Plaintiff Donahue asked Vision Solar representatives if prior to the installation they had obtained the permits to install a Solar Panel System at her residence and was

70

told that they had. In reality, the panels were installed but never activated for over a year due to, among other things, lack of permitting and failed inspections.

275.    Vision Solar made similar, misrepresentations regarding obtaining Permission to Operate to Plaintiff Bascetta, Plaintiff Cuenca, Plaintiff Fahey, Plaintiff Froment, Plaintiff Noralus, Plaintiff Pagano, the Perez Plaintiffs, Plaintiff Rorris, Plaintiff Stevens, and Plaintiff Underwood.

276.    Vision Solar installed Solar Panel Systems at the residences of Plaintiff Bascetta, Plaintiff Cuenca, Plaintiff Donahue, Plaintiff Fahey, Plaintiff Froment, Plaintiff Noralus, Plaintiff Pagano, the Perez Plaintiffs, Plaintiff Rorris, Plaintiff Stevens, and Plaintiff Underwood without obtaining Permission to Operate, and sent photos of the non-functioning installation to Financing Companies.

277.    Financing Companies paid Vision Solar the outstanding balance of the purchase price after receiving photos of the Solar Panel System installation at the residences of Plaintiff Bascetta, Plaintiff Buskey, Plaintiff Cuenca, Plaintiff Donahue, Plaintiff Fahey, Plaintiff Froment, Plaintiff Henderson, the Lupien Plaintiffs, Plaintiff McClelland, Plaintiff Noralus, Plaintiff Pagano, the Perez Plaintiffs, Plaintiff Quantz, Plaintiff Rorris, the Schmidt Plaintiffs, Plaintiff Stevens, and Plaintiff Underwood despite knowing that it was likely that Vision Solar had not obtained PTO.

278.    Financing Companies took insufficient steps to verify that the Solar Panel Systems installed at the residences of Plaintiff Bascetta, Plaintiff Buskey, Plaintiff Cuenca, Plaintiff Donahue, Plaintiff Fahey, Plaintiff Froment, Plaintiff Hastreiter, Plaintiff Henderson, the Lupien Plaintiffs, Plaintiff McClelland, Plaintiff Noralus, Plaintiff Pagano, the Perez Plaintiffs, Plaintiff Quantz, Plaintiff Rorris, Plaintiff Schmidt, and Plaintiff Underwood were

functioning, yet began requiring the repayment of the loans and leases from these Plaintiffs or from Vision Solar itself before the panels were activated.

279.   Afraid of legal action threatened by Financing Companies and/or the negative impact to their credit that could result from nonpayment, many Plaintiffs and members of the Classes paid thousands of dollars to Financing Companies while their Solar Panel Systems were not functioning due to a lack of Permission to Operate.

## II.   FINANCING COMPANIES KNOW OF, ENABLE, SUPPORT, AND CONCEAL VISION SOLAR'S CONDUCT

280.   Financing Companies know Vision Solar is coercively, fraudulently, deceptively, and unfairly inducing customers into Solar Panel System financing agreements yet continue to provide financing to Vision Solar because Financing Companies (1) need the loan inventory to package and sell to third-party investors; and (2) know they can coerce payment with threats of legal action and negative credit consequences.

281.   Hundreds, if not thousands, of customers have contacted Financing Companies expressing their grievances about being forced to pay for Solar Panel System that were either (1) not functioning as promised, or (2) not even connected to the power grid because Vision Solar never obtained Permission to Operate.

282.   Despite being informed of these concerns and the fraudulent nature of Vision Solar's sales tactics, Financing Companies, for their own financial advancement, have continued to provide financing for Vision Solar.

283.   Further, Financing Companies have taken steps to actively conceal Vision Solar's conduct from the public, and most importantly, from the third-party investors to which Financing Companies sell solar asset backed securities, lest they know they are buying bundles of fraudulently induced loans.

284.     For example, to prevent outside knowledge about the non-functioning of Solar Panel Systems, Financing Companies have occasionally granted deferments to customers who complained about having non-functioning Solar Panel Systems that were installed without Permission to Operate on the basis that the homeowners' Solar Panel Systems have not been hooked up to the power grid.

285.     As detailed below, Financing Companies also allowed Vision Solar to make payments to Financing Companies on behalf of customers whose Solar Panel Systems have not actually been connected to the power grid.

286.     In other instances, Financing Companies have taken position that Vision Solar would be responsible for reimbursing customers who had made payments prior to Vision Solar obtaining Permission to Operate, though Vision Solar rarely, if ever, reimbursed such customers.

287.     Financing Companies engage in these actions, and others, to avoid at any cost recognition of the non-performance of loans that they had packaged and sold to third-party investors attributable to deceit and/or fraud on the part of one of Financing Companies' most prolific Solar Panel System financing originators: Vision Solar.

288.     Recognition of the non-performance would not just have objectively reduced the value of the solar asset-backed securities sold by Financing Companies but also would have subjected them to liability for making misrepresentations regarding the likelihood of performance of the loans they were packaging and selling.

### III.   PLAINTIFFS AND MEMBERS OF THE CLASS WOULD NOT HAVE BOUGHT SOLAR PANEL SYSTEMS ABSENT DEFENDANT VISION SOLAR'S MISREPRESENATIONS

289.   Each and every contract signed by Plaintiffs and members of the Classes was void

*ab initio* because of the conduct described above: there was no meeting of the minds, a

fundamental principle of contract formation.

290.   Vision Solar's misrepresentations and omissions were material to the Plaintiffs'

and members of the Classes' decisions to purchase Solar Panels Systems and obtain financing

because they directly influenced the Plaintiffs' and members of the Classes' understanding of the

costs, benefits, and financing terms associated with the Solar Panel Systems.

291.   Indeed, Plaintiffs and members of the Classes would not have agreed to purchase

Solar Panel Systems from Vision Solar or enter into financing transactions with the Financing

Companies had Plaintiffs and members of the Classes known the truth regarding the

representations and omissions made by Vision Solar.

292.   Vision Solar's misrepresentations regarding the federal tax credits associated with

the purchase or lease of Solar Panel Systems caused Plaintiffs to believe that they would receive

a significant financial benefit from Solar Panel System and that it was a sound investment for the

future. The promise of tax credits was a crucial factor in Plaintiffs' decision-making process,

creating an expectation of substantial savings that would offset the initial costs of the solar panel

installation.

293.   Vision Solar's sales representatives made false claims that the Solar Panel

Systems would result in significant savings by reducing the amount of power used from the

homeowner's current power company. This promise portrayed the purchase of a Solar Panel

System as an investment which would "pay for itself" over time and was material to Plaintiffs' and members of the Classes' decisions to purchase Solar Panel Systems.

294.    Vision Solar's misrepresentations regarding the permitting process, including assuring homeowners that Vision Solar would only install panels after obtaining the proper permits to connect them to the power grid, were crucial for Plaintiffs' and members of the Classes' confidence in the legality and functionality of the Solar Panel System installations. Plaintiffs would not have agreed to purchase Solar Panel Systems had they known they would be required to pay for a non-functioning and/or unpermitted system for months or years.

295.    These material misrepresentations were significant for Plaintiffs' decisions to purchase or lease Solar Panel Systems from Vision Solar. Had Plaintiffs and members of the Classes been aware of the truth regarding the Solar Panel Systems, Vision Solar's practices, and the terms of the financing agreements, Plaintiffs would not have purchased Solar Panel Systems. The fraudulent, deceitful, and unfair practices employed by Vision Solar induced Plaintiffs into purchasing Solar Panel Systems via financing agreements, yet the Solar Panel Systems did not function at all, or as promised, causing Plaintiffs and members of the Classes suffer significant financial losses and damages.

## CLASS ALLEGATIONS

296.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated. The proposed Class is defined as follows:

> All homeowners in Arizona, Connecticut, Florida, Massachusetts, New Jersey, and Pennsylvania who purchased Solar Panel Systems from Vision Solar and entered into agreements with Financing Companies to finance the purchase or lease of the Solar Panel Systems from Vision Solar, or purchased directly from Vision Solar, during the applicable statute of limitations period.

## ARIZONA SUBCLASS

297.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following "Arizona Subclass," defined as:

> All homeowners in Arizona who purchased Solar Panel Systems from Vision
> Solar and entered into agreements with Financing Companies to finance the
> purchase or lease of the Solar Panel Systems from Vision Solar, or purchased
> directly from Vision Solar, during the applicable statute of limitations period.

## CONNECTICUT SUBCLASS

298.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following "Connecticut Subclass," defined as:

> All homeowners in Connecticut who purchased Solar Panel Systems from Vision
> Solar and entered into agreements with Financing Companies to finance the
> purchase or lease of the Solar Panel Systems from Vision Solar, or purchased
> directly from Vision Solar, during the applicable statute of limitations period.

## FLORIDA SUBCLASS

299.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following "Florida Subclass," defined as:

> All homeowners in Florida who purchased Solar Panel Systems from Vision Solar
> and entered into agreements with Financing Companies to finance the purchase or
> lease of the Solar Panel Systems from Vision Solar, or purchased directly from
> Vision Solar, during the applicable statute of limitations period.

## MASSACHUSETTS SUBCLASS

300.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following "Massachusetts Subclass," defined as:

> All homeowners in Massachusetts who purchased Solar Panel Systems from
> Vision Solar and entered into agreements with Financing Companies to finance
> the purchase or lease of the Solar Panel Systems from Vision Solar, or purchased
> directly from Vision Solar, during the applicable statute of limitations period.

## NEW JERSEY SUBCLASS

301.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following "New Jersey Subclass," defined as:

All homeowners in New Jersey who purchased Solar Panel Systems from Vision Solar and entered into agreements with Financing Companies to finance the purchase or lease of the Solar Panel Systems from Vision Solar, or purchased directly from Vision Solar, during the applicable statute of limitations period.

## PENNSYLVANIA SUBCLASS

302.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following "Pennsylvania Subclass," defined as:

All homeowners in Pennsylvania who purchased solar photovoltaic systems Solar Panel Systems from Vision Solar and entered into agreements with Financing Companies to finance the purchase or lease of the Solar Panel Systems from Vision Solar, or purchased directly from Vision Solar, during the applicable statute of limitations period.

303.     Collectively, the Class, the Arizona Subclass, the Connecticut Subclass, the

Florida Subclass, the Massachusetts Subclass, the New Jersey Subclass, and the Pennsylvania

Subclass are referred to as "the Classes."

304.     Plaintiffs reserve the right to modify or refine the definitions of the Classes based

upon discovery of new information and to accommodate any of the Court's manageability

concerns.

305.     Excluded from the Classes are: (a) any Judge or Magistrate Judge presiding over

this action and members of their staff, as well as members of their families; (b) Defendant and

Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in

which any Defendant or its parents have a controlling interest, as well as Defendant's current or

former employees, agents, officers, and directors; (c) persons who properly execute and file a

timely request for exclusion from the Classes; (d) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendant;

and (f) the legal representatives, successors, and assigns of any such excluded persons.

306.    **Ascertainability.** The proposed Classes are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of the Classes. Further, the Classes can be readily identified through records maintained by Defendant Vision Solar.

307.    **Numerosity (Rule 23(a)(1)).** The Classes are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Classes, as herein identified and described, is not known, but upon information and belief there are thousands of individuals and entities that purchased Solar Panel Systems from Defendant Vision Solar.

308.    **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individuals, including:

a.    Whether Vision Solar engaged in a fraudulent and deceptive scheme to induce homeowners to enter into Solar Panel System financing agreements;

b.    Whether Vision Solar systematically misrepresented the benefits, eligibility for tax credits, and financial terms of the loans and leasing transactions;

c.    Whether Vision Solar's conduct constitutes fraud, deceit, or unfairness;

d.    Whether Vision Solar salespeople were trained to use fraudulent, deceptive, unfair, and misleading tactics;

e.    Whether Vision Solar failed to ensure proper permitting and installation of Solar Panel Systems;

f.    Whether Vision Solar's Concierge Service and Customer Retention departments used unfair and deceptive tactics to prevent customers from canceling their contracts;

g.   Whether Vision Solar violated federal and state law;

h.   Whether Vision Solar targeted vulnerable individuals and engaged in unauthorized practices, such as running unauthorized credit checks and forging signatures on contracts;

i.   Whether Plaintiffs and Class members suffered damages as a result of the misconduct alleged herein;

j.   Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

309.   **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Classes. Plaintiffs and members of the Classes suffered injuries as a result of Defendant's wrongful conduct that is uniform across the Classes.

310.   **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Classes.

311.   **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The prosecution of separate actions by individual members of the Classes would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the

questions of law and fact common to members of the Classes, and would be dispositive of the interests of the other members not party to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

312.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

313.    Classes certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

314.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### COUNT I
### FRAUDULENT INDUCEMENT
### (On behalf of all Plaintiffs and Members of the Classes)

315.   Plaintiffs and the Class Members re-allege and incorporate here the allegations set forth above.

316.   As set forth above, Defendant Vision Solar made numerous false representations of material and foundational aspects of the sales and financing agreements, including about the costs, benefits, and financing terms associated with the Solar Panel Systems, that Vision Solar knew were false at the time and were likely to induce Plaintiffs and members of the Classes into signing agreements to purchase and finance Solar Panel Systems.

317.   Vision Solar made misrepresentations that include, but are not limited to: (1) falsely promising tax credits which Vision Solar knew homeowners were ineligible for; (2) falsely claiming that the Solar Panel Systems will provide so much savings that they will "pay for themselves"; (3) falsely assuring homeowners that proper permitting will be obtained for installation; and (4) falsely suggesting to homeowners that they will have functioning and legally-permitted solar systems.

318.   Vision Solar made these representations to induce Plaintiffs into taking actions to their detriment, including but not limited to:

      a.   entering into onerous and one-sided agreements to finance the purchase or lease of residential solar systems;

      b.   incurring obligations and/or making payments on contracts for Solar Panel Systems that were not functioning and/or for which Vision Solar did not obtain proper permits;

c.    incurring obligations and/or making payments on contracts that were above the amounts which Vision Solar represented Plaintiffs would need to pay; and

d.    allowing Vision Solar to make alterations and construction on Plaintiffs' homes which would not result in functioning solar systems and inducing Plaintiffs to rely on such alterations and construction, including by making it financially onerous to turn back and not utilize solar panels and/or to use another solar panel company.

319.    As part of Vision Solar's efforts to fraudulently induce Plaintiffs, Vision Solar employed fraudulent, deceptive, and unfair sales tactics as well as targeted vulnerable homeowners such as individuals with low incomes, the elderly, and those with cognitive impairments, including by:

a.    initiating multiple unsolicited "cold" calls to set up in-home presentations for solar contracts;

b.    conducting in-home visits and in some cases remaining for several hours or despite being asked to leave;

c.    misrepresenting the implications of a consumer's signature, such as claiming it was only for "preapproval", falsely stating that a contract had already been established, or running a hard credit check without authorization;

d.    misrepresenting the performance of Vision Solar's Solar Panel Systems, such as claiming the Solar Panel Systems would "pay for themselves" by producing enough energy to more than offset loan or lease payments;

e.     misrepresenting that Vision Solar was authorized to install Solar Panel Systems and connect them to the power grid when they were not;

f.     urging consumers to agree to solar installations on the same day as the initial in-home solicitation;

g.     discouraging consumers from seeking legal advice before signing agreements;

h.     conducting in-home sales pitches to individuals who, due to cognitive or language barriers, were unable to make informed decisions;

i.     presenting contracts or documents for electronic signature on a salesperson's mobile device, making it difficult for consumers to sufficiently read and assess the documents beforehand; and

j.     delaying the furnishing of signed contract copies to consumers until several days or weeks later to deprive homeowners the ability to cancel or rescind the contract.

320.    Plaintiffs and members of the Classes took actions to their detriment in reliance on Vision Solar's representations, including, inter alia, by entering into contracts with Vision Solar and the Financing Companies, making payments to Vision Solar and the Financing Companies, forgoing opportunities with other solar companies, and allowing Vision Solar to initiate construction and alterations on their homes.

<u>**COUNT II**</u>
**UNJUST ENRICHMENT**
**(On behalf of all Plaintiffs and Members of the Classes)**

321.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

322.     Plaintiffs and members of the Classes conferred substantial benefits on Defendant Vision Solar and the Financing Companies via their purchases of Solar Panel Systems from Vision Solar and financing agreements with the Financing Companies, and Vision Solar knowingly and willingly accepted and enjoyed these benefits.

323.     Vision Solar either knew or should have known that the payments rendered by Plaintiff and members of the Classes were made with the expectation that the Solar Panel Systems would have the qualities, characteristics, and suitability for use represented and warranted by Vision Solar, and that Vision Solar would act in accordance with the representations made to Plaintiffs and members of the Classes.

324.     Vision Solar's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Vision Solar to retain the benefits without payment of the value to Plaintiffs and members of the Classes.

325.     Plaintiffs and members of the Classes are entitled to recover from Vision Solar all amounts wrongfully collected and improperly retained by Vision Solar, plus interest thereon.

326.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other just and proper relief available under the laws.

<u>**COUNT III**</u>
**VIOLATIONS OF ARIZONA CONSUMER FRAUD ACT**
**A.R.S. § 44-1521, *et seq.***
**(On behalf of the Schmidt Plaintiffs and other similarly situated Arizona Subclass Members)**

327.     The Schmidt Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

328.     The Schmidt Plaintiffs and Defendant Vision Solar are each a "person" as defined by A.R.S. § 44-1521(6).

329.     The Arizona Consumer Fraud Act (ACFA), A.R.S. § 44-1521 *et seq.*, declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

330.     Pursuant to A.R.S. § 44-1524, any person who has suffered a loss as a result of a violation of the ACFA may bring an action to obtain a declaratory judgment that an act or practice violates the ACFA and to enjoin such person who has violated, is violating, or is otherwise likely to violate the ACFA.

331.     Pursuant to A.R.S. § 44-1524, any person who has suffered a loss as a result of a violation of the ACFA may bring an action for actual damages, attorney's fees, and court costs.

332.     Vision Solar engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material and foundational aspects of the sales and financing agreements affecting the Schmidt Plaintiffs and Arizona Class members in connection with the sale and advertisement of "merchandise" (as defined by A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

333.    Vision Solar, through its conduct as described above, engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce, including, but not limited to:

       a.    Systematically misrepresenting the benefits of Solar Panel Systems, eligibility for tax credits, and the financial terms of the loans and leasing transactions;

       b.    Training and permitting salespeople to use fraudulent, deceptive, unfair, and misleading tactics to induce homeowners to enter into financing agreements;

       c.    Targeting vulnerable individuals and employing tactics such as unauthorized credit checks;

       d.    Failing to ensure proper installation, permits, and functionality of the Solar Panel Systems;

       e.    Providing false promises and using deceptive tactics to retain customers and prevent cancellations;

       f.    Collecting financing payments from homeowners before their Solar Panel Systems were connected to the power grid; and

       g.    Ignoring homeowner complaints and continuing to undertake, finance, and support Vision Solar's fraudulent practices.

334.    Vision Solar's unfair and deceptive acts and practices as described above have caused the Schmidt Plaintiffs and other similarly situated Arizona homeowners to suffer losses of money and property, including, but not limited to, payments made and obligations incurred for

non-functioning Solar Panel Systems, loss of eligibility for tax credits, and diminished property value due to improperly installed Solar Panel Systems.

335.    As a direct and proximate result of Vision Solar's unfair and deceptive acts and practices, the Schmidt Plaintiffs and other similarly situated Arizona homeowners have suffered damages and are entitled to relief under ACFA, including, but not limited to, actual damages, attorney's fees, and costs.

336.    The Schmidt Plaintiffs, individually and on behalf of all others similarly situated, thus seek (a) a declaration that Vision Solar's acts and practices as described above violate the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.*; (b) an award of actual damages; (c) an award of attorney's fees and costs pursuant to A.R.S. § 44-1534; (d) an order enjoining Vision Solar from continuing to engage in the unfair and deceptive acts and practices described above; (e) restitution and disgorgement of profits; (f) an order for the recission of the sales and financing agreements as well as compensatory damages; and (g) any further relief the Court deems just and proper.

### COUNT IV
**VIOLATIONS OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**Conn. Gen. Stat. §§ 42-110b, *et seq.***
**(On behalf of Plaintiff Bascetta and all similarly situated Connecticut Subclass Members)**

337.    Plaintiff Bascetta incorporates by reference all preceding paragraphs as though fully set forth herein.

338.    The Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a, *et seq.*, declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

339.    Pursuant to Conn. Gen. Stat. § 42-110g(a), any person who has suffered a loss as a result of a violation of CUTPA may bring an action to obtain a declaratory judgment that an act

or practice violates CUTPA and to enjoin such person who has violated, is violating, or is otherwise likely to violate CUTPA.

340.     Pursuant to Conn. Gen. Stat. § 42-110g(a), any person who has suffered a loss as a result of a violation of CUTPA may bring an action for actual damages, attorney's fees, and court costs.

341.     Defendant Vision Solar, through its conduct as described above, engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of their trade and commerce, including, but not limited to:

a.     Systematically misrepresenting the benefits of Solar Panel Systems, eligibility for tax credits, and the financial terms of the loans and leasing transactions;

b.     Training and allowing salespeople to use fraudulent, deceptive, unfair, and misleading tactics to induce homeowners to enter into financing agreements;

c.     Targeting vulnerable individuals and employing tactics such as unauthorized credit checks and forging signatures on contracts;

d.     Failing to ensure proper installation, permits, and functionality of the Solar Panel Systems;

e.     Providing false promises and using deceptive tactics to retain customers and prevent cancellations;

f.     Causing collection of financing payments from homeowners before their Solar Panel Systems were connected to the power grid; and

g.     Ignoring homeowner complaints and continuing to undertake, finance, and support Vision Solar's fraudulent practices.

342.     Vision Solar also violated Conn. Gen. State § 42-110b by violating the Connecticut Home Improvement Act, Conn. Gen. Stat. Ch. 400. Specifically, Vision Solar:

a.     Commenced work without obtaining the applicable building or construction permits as required, in violation of Conn. Gen. Stat. § 20-427(i); and

b.     Failed to provide and deliver to homeowners a completed copy of home improvement contracts at the time such contracts were executed, in violation of Conn. Gen. Stat. § 20-429.

343.     Vision Solar's conduct as described above violated Conn. Gen. Stat. § 42-110b by violating Conn. Gen. Stat. §§ 20-334 and 20-341(d) including by Vision Solar applying for local electrical permits without having an appropriately licensed electrical contractor sign, or authorize the signing of, such applications.

344.     Vision Solar violated Conn. Gen. Stat. §§ 20-338b and 20-341(d) by engaging in, practicing, and offering to perform work requiring an electrical license pursuant to Conn. Gen. Stat. Ch. 393 without having an appropriately licensed electrical contractor.

345.     Vision Solar's unfair and deceptive acts and practices as described above have caused Plaintiff Bascetta and other similarly situated Connecticut homeowners to suffer losses of money and property, including, but not limited to, payments made and obligations incurred for non-functioning Solar Panel Systems, loss of eligibility for tax credits, and diminished property value due to improperly installed Solar Panel Systems.

346.    As a direct and proximate result of Vision Solar's unfair and deceptive acts and practices, Plaintiff Bascetta and other similarly situated Connecticut homeowners have suffered damages and are entitled to relief under CUTPA, including, but not limited to, actual damages, attorney's fees, and costs.

347.    Vision Solar knew, or should have known, that its conduct was unfair or deceptive in violation of Conn. Gen. Stat. § 42-110b, and as a consequence, Vision Solar is subject to civil penalties of not more than $5,000 per violation pursuant to Conn. Gen. Stat. § 42-110o(b).

348.    Plaintiff Bascetta, individually and on behalf of all others similarly situated, thus seeks (a) a declaration that Vision Solar's acts and practices as described above violate the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*; (b) an award of actual damages; (c) an award of attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g(d); (d) an order enjoining Vision Solar from continuing to engage in the unfair and deceptive acts and practices described above; (e) an order for the recission of the sales and financing agreements as well as compensatory damages; and (f) any further relief the Court deems just and proper.

## COUNT V
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
#### Fla. Stat. § 501.201, *et seq.*
**(On behalf of Plaintiff Cuenca, Plaintiff Disla, Plaintiff Donahue, Plaintiff Hastreiter, Plaintiff Noralus, Plaintiff Quantz, Plaintiff Rorris, Plaintiff Stevens, Plaintiff Underwood, the Perez Plaintiffs, and all similarly situated Florida Subclass Members)**

349.    Plaintiff Cuenca, Plaintiff Disla, Plaintiff Donahue, Plaintiff Hastreiter, Plaintiff Noralus, Plaintiff Quantz, Plaintiff Rorris, Plaintiff Stevens, Plaintiff Underwood, and the Perez Plaintiffs (collectively, the "Florida Plaintiffs"), incorporate by reference all preceding paragraphs as though fully set forth herein.

350.     The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §

501.201, *et seq.*, provides that "unfair methods of competition, unconscionable acts or practices,

and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

351.     Pursuant to Fla. Stat. § 501.211(1), anyone aggrieved by a violation of FDUTPA

may bring an action to obtain a declaratory judgment that an act or practice violates FDUTPA

and to enjoin such person who has violated, is violating, or is otherwise likely to violate

FDUTPA.

352.     Pursuant to Fla. Stat. § 501.211(2), any person who has suffered a loss as a result

of a violation of FDUTPA may bring an action for actual damages, attorney's fees, and court

costs.

353.     Defendant Vision Solar through its conduct as described above, engaged in unfair

methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

practices in the conduct of their trade and commerce, including, but not limited to:

   a.     Systematically misrepresenting the benefits of Solar Panel Systems,
          eligibility for tax credits, and the financial terms of the loans and leasing
          transactions;

   b.     Training and allowing salespeople to use fraudulent, deceptive, unfair, and
          misleading tactics to induce homeowners to enter into financing
          agreements;

   c.     Targeting vulnerable individuals and employing tactics such as
          unauthorized credit checks and forging signatures on contracts;

   d.     Failing to ensure proper installation, permits, and functionality of the Solar
          Panel Systems;

e.      Providing false promises and using deceptive tactics to retain customers and prevent cancellations;

f.      Causing collection of financing payments from homeowners before their Solar Panel Systems are connected to the power grid; and

g.      Ignoring homeowner complaints and continuing to undertake, finance, and support Vision Solar's fraudulent practices.

354.    Vision Solar's unfair and deceptive acts and practices as described above have caused Florida Plaintiffs and other similarly situated Florida homeowners to suffer losses of money and property, including, but not limited to, payments made for non-functioning Solar Panel Systems, loss of eligibility for tax credits, and diminished property value due to improperly installed Solar Panel Systems.

355.    As a direct and proximate result of Vision Solar's unfair and deceptive acts and practices, Florida Plaintiffs and other similarly situated Florida homeowners have been aggrieved by Vision Solar's conduct, have suffered damages, and are entitled to relief under FDUTPA, including, but not limited to, actual damages, attorney's fees, and costs.

356.    Plaintiff Cuenca, Plaintiff Disla, Plaintiff Donahue, Plaintiff Hastreiter, Plaintiff Noralus, Plaintiff Quantz, Plaintiff Rorris, Plaintiff Stevens, Plaintiff Underwood, and the Perez Plaintiffs, individually and on behalf of all others similarly situated, thus seek (a) a declaration that Vision Solar's acts and practices as described above violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; (b) an award of actual damages; (c) an award of attorney's fees and costs pursuant to Fla. Stat. § 501.2105; (d) an order enjoining Vision Solar from continuing to engage in the unfair and deceptive acts and practices described

above; (e) an order for the recission of the sales and financing agreements as well as compensatory damages; and (f) any further relief the Court deems just and proper.

### COUNT VI
**VIOLATION OF MASSACHUSETTS GENERAL LAW CH. 93A**
**Mass. Gen. Laws Ann. Ch. 93A, §§ 1, *et seq.***
**(On behalf of Plaintiff Froment, the Lupien Plaintiffs, and all other similarly situated Massachusetts Subclass Members)**

357.   Plaintiff Froment and the Lupien Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

358.   Plaintiff Froment and the Lupien Plaintiffs intend to assert and prosecute claims under M.G.L. ch. 93A § 1 *et seq*. ("MCPL") against Defendant Vision Solar. Plaintiff Froment and the Lupien Plaintiffs have provided Vision Solar notice in accordance with M.G.L. ch. 93A § 9(3). Once the statutory period has passed, subject to any response by Vision Solar, Plaintiffs intend to amend this Complaint to demand all appropriate relief.

359.   M.G.L. ch. 93A, § 2(a) declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

360.   Pursuant to M.G.L. ch. 93A, § 9(1), any person who suffers any loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice may bring an action in the superior court.

361.   Vision Solar, through its conduct as described above, engaged in unfair and deceptive acts and practices in the conduct of its trade and commerce, including, but not limited to:

      a.   Systematically misrepresenting the benefits of Solar Panel Systems, eligibility for tax credits, and the financial terms of the loans and leasing transactions;

b.      Training and allowing salespeople to use fraudulent, deceptive, unfair, and misleading tactics to induce homeowners to enter into financing agreements;

c.      Targeting vulnerable individuals and employing tactics such as unauthorized credit checks and forging signatures on contracts;

d.      Failing to ensure proper installation, permits, and functionality of the Solar Panel Systems;

e.      Providing false promises and using deceptive tactics to retain customers and prevent cancellations;

f.      Causing collection of financing payments from homeowners before their Solar Panel Systems are connected to the power grid; and

g.      Ignoring homeowner complaints and continuing to undertake, finance, and support Vision Solar's fraudulent practices.

362.     Vision Solar's unfair and deceptive acts and practices as described above have caused Plaintiff Froment and the Lupien Plaintiffs and other similarly situated Massachusetts homeowners to suffer losses of money and property, including, but not limited to, payments made and obligations incurred for non-functioning Solar Panel Systems, loss of eligibility for tax credits, and diminished property value due to improperly installed and non-functioning Solar Panel Systems.

363.     As a direct and proximate result of Vision Solar's unfair and deceptive acts and practices, Plaintiff Froment and the Lupien Plaintiffs and other similarly situated Massachusetts homeowners have suffered damages and are entitled to relief under M.G.L. ch. 93A, §§ 9(3) and 9(4), including, but not limited to, actual damages, treble damages, attorney's fees, and costs.

364.     Plaintiff Froment and the Lupien Plaintiffs, individually and on behalf of all others similarly situated, thus seek (a) a declaration that Vision Solar's acts and practices as described above violate Massachusetts General Laws Chapter 93A, §§ 2 and 9; (b) an award of actual damages; (c) an award of treble damages pursuant to M.G.L. ch. 93A, § 9(3); (d) an award of attorney's fees and costs pursuant to M.G.L. ch. 93A, § 9(4); (e) an order enjoining Vision Solar from continuing to engage in the unfair and deceptive acts and practices described above; (f) an order for the recission of the sales and financing agreements as well as compensatory damages; and (g) any further relief the Court deems just and proper.

### COUNT VII
### VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT
### N.J.S.A. 56:8-1, *et seq.*
### (On behalf of Plaintiff Buskey, Plaintiff Henderson, Plaintiff McClelland, and all similarly situated New Jersey Subclass Members)

365.     Plaintiff Buskey, Plaintiff Henderson, and Plaintiff McClelland incorporate by reference all preceding paragraphs as though fully set forth herein.

366.     The New Jersey Consumer Fraud Act (NJ CFA), N.J.S.A. 56:8-1, *et seq.*, declares that "unlawful practices, methods, and acts of competition, deception, fraud, false pretense, false promise, misrepresentation, and the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate are unlawful."

367.     Pursuant to N.J.S.A. 56:8-19, any person who has suffered a loss because of a violation of the NJ CFA may bring an action to obtain a declaratory judgment that an act or practice violates the NJ CFA and to enjoin such person who has violated, is violating, or is otherwise likely to violate the NJ CFA.

368.    Pursuant to N.J.S.A. 56:8-19, any person who has suffered a loss because of a violation of the NJ CFA may bring an action for actual damages, treble damages, attorney's fees, and court costs.

369.    Defendant Vision Solar, through its conduct as described above, engaged in unlawful practices, methods, and acts of competition, deception, fraud, false pretense, false promise, misrepresentation, and the knowing concealment, suppression, or omission of material and foundational aspects of the sales and financing agreements in the conduct of its trade and commerce, including, but not limited to:

    a.    Systematically misrepresenting the benefits of Solar Panel Systems, eligibility for tax credits, and the financial terms of the loans and leasing transactions;

    b.    Training and allowing salespeople to use fraudulent, deceptive, unfair, and misleading tactics to induce homeowners to enter into financing agreements;

    c.    Targeting vulnerable individuals and employing tactics such as unauthorized credit checks and forging signatures on contracts;

    d.    Failing to ensure proper installation, permits, and functionality of the Solar Panel Systems;

    e.    Providing false promises and using deceptive tactics to retain customers and prevent cancellations;

    f.    Causing collection of financing payments from homeowners before their Solar Panel Systems are connected to the power grid; and

g. Ignoring homeowner complaints and continuing to undertake, finance, and support Vision Solar's fraudulent practices.

370. Vision Solar's unlawful practices, methods, and acts as described above have caused Plaintiffs Buskey, Henderson, and McClelland and other similarly situated New Jersey homeowners to suffer losses of money and property, including, but not limited to, payments made for non-functioning Solar Panel Systems, loss of eligibility for tax credits, and diminished property value due to improperly installed Solar Panel Systems and non-functioning Solar Panel Systems.

371. As a direct and proximate result of Vision Solar's unlawful practices, methods, and acts, Plaintiffs Buskey, Henderson, and McClelland and other similarly situated New Jersey homeowners have suffered damages and are entitled to relief under the NJ CFA, including, but not limited to, actual damages, treble damages, attorney's fees, and costs.

372. Plaintiff Buskey, Plaintiff Henderson, and Plaintiff McClelland, individually and on behalf of all others similarly situated, thus seek (a) a declaration that Vision Solar's acts and practices as described above violate the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*; (b) an award of actual damages; (c) an award of treble damages; (d) an award of attorney's fees and costs pursuant to N.J.S.A. 56:8-19; (e) an order for the recission of the sales and financing agreements as well as compensatory damages; and (f) any further relief the Court deems just and proper.

**COUNT VIII**
**VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**73 Pa. Cons. Stat. Ann. §§ 201-1, *et seq.***
**(On behalf of Plaintiff Fahey, Plaintiff Pagano, and all similarly situated Pennsylvania Subclass Members)**

373.   Plaintiff Fahey and Plaintiff Pagano incorporate by reference all preceding paragraphs as though fully set forth herein.

374.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, *et seq.*, declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

375.   Pursuant to 73 P.S. § 201-9.2(a), any person who has suffered a loss as a result of a violation of UTPCPL may bring an action to obtain a declaratory judgment that an act or practice violates UTPCPL and to enjoin such person who has violated, is violating, or is otherwise likely to violate UTPCPL.

376.   Pursuant to 73 P.S. § 201-9.2(a), any person who has suffered a loss as a result of a violation of UTPCPL may bring an action for actual damages, attorney's fees, and court costs.

377.   Defendant Vision Solar, through its conduct as described above, engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce, including, but not limited to:

    a.   Systematically misrepresenting the benefits of Solar Panel Systems, eligibility for tax credits, and the financial terms of the loans and leasing transactions;

    b.   Training and allowing salespeople to use fraudulent, deceptive, unfair, and misleading tactics to induce homeowners to enter into financing agreements;

    c.   Targeting vulnerable individuals and employing tactics such as unauthorized credit checks and forging signatures on contracts;

    d.    Failing to ensure proper installation, permits, and functionality of the Solar Panel Systems;

    e.    Providing false promises and using deceptive tactics to retain customers and prevent cancellations;

    f.    Causing collection of financing payments from homeowners before their Solar Panel Systems are connected to the power grid; and

    g.    Ignoring homeowner complaints and continuing to undertake, finance, and support Vision Solar's fraudulent practices.

378.    Vision Solar's unfair and deceptive acts and practices as described above have caused Plaintiffs Fahey and Pagano and other similarly situated Pennsylvania homeowners to suffer losses of money and property, including, but not limited to, payments made for non-functioning Solar Panel Systems, and diminished property value due to improperly installed Solar Panel Systems and non-functioning Solar Panel Systems.

379.    As a direct and proximate result of Vision Solar's unfair and deceptive acts and practices, Plaintiffs Fahey and Pagano and other similarly situated Pennsylvania homeowners have suffered damages and are entitled to relief under UTPCPL, including, but not limited to, actual damages, attorney's fees, and costs.

380.    Plaintiff Fahey and Plaintiff Pagano, individually and on behalf of all others similarly situated, thus seek (a) a declaration that Vision Solar's acts and practices as described above violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*; (b) an award of actual damages; (c) an award of attorney's fees and costs pursuant to 73 P.S. § 201-9.2(a); (d) an order enjoining Vision Solar from continuing to engage in the unfair and deceptive acts and practices described above; (e) restitution; (f) recission of the sales

and financing agreements as well as compensatory damages; and (g) any further relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as to each and every count, including:

A. An order certifying this action and the Classes requested herein as a class action, designating Plaintiffs as the representatives of the Classes, and appointing Plaintiffs' counsel as counsel to the Classes;

B. An order declaring (i) that Defendant's actions constitute fraudulent inducement; (ii) that Defendant's actions constitute unfair and deceptive business practices in violation of the consumer protection statutes of Arizona, Connecticut, Florida, Massachusetts, New Jersey, and Pennsylvania; (iii) that all agreements between Plaintiffs and members of the Classes and Defendant are null and void; (iv) that Defendant was unjustly enriched as a result of its wrongful conduct at the expense of Plaintiffs and members of the Classes; and (v) that Defendant is liable to Plaintiffs and members of the Classes as described herein, for damages arising therefrom;

C. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including declaring all contracts between Plaintiffs and Defendant null and void, enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

D. A judgment awarding Plaintiffs and members of the Classes all appropriate damages, in an amount to be determined at trial;

E.  A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

F.  A judgment awarding Plaintiffs and members of the Classes prejudgment and post-judgment interest, as permitted by law;

G.  A judgment awarding Plaintiffs and members of the Classes costs and fees, including attorneys' fees, as permitted by law; and

H.  Other legal, equitable or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

DATED:          April 10, 2023                    Respectfully submitted,

*/s/ Zachary A. Rynar*
Zachary A. Rynar
Ian W. Sloss (*pro hac vice* forthcoming)
Steven L. Bloch (*pro hac vice* forthcoming)
Krystyna D. Gancoss (*pro hac vice* forthcoming)
Brett Burgs (*pro hac vice* forthcoming)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
zrynar@sgtlaw.com
isloss@sgtlaw.com
sbloch@sgtlaw.com
kgancoss@sgtlaw.com
bburgs@sgtlaw.com

Jeffrey Gentes (*pro hac vice forthcoming*)
**CONNECTICUT FAIR HOUSING CENTER**
60 Popieluszko Court
Hartford, Connecticut 06106
(860) 263-0741
(860) 247-4236 (fax)
jgentes@ctfairhousing.org