**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TOM BASCETTA et al., and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br>  v.<br><br>VISION SOLAR, LLC,<br><br>     Defendant. | CIVIL ACTION<br><br>Case No.: 1:23-cv-2010-KMW-AMD<br><br>**MOTION DAY: JULY 3, 2023** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**VISION SOLAR, LLC'S  MOTION TO COMPEL INDIVIDUAL ARBITRATION AND**
**DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE,**
**STAY PENDING INDIVIDUAL ARBITRATION**

**FOX ROTHSCHILD LLP**
Brett A. Berman
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone: (215) 299-2842
Fax: (215) 299-2150
bberman@foxrothschild.com

Colin D. Dougherty
Samuel A. Haaz
980 Jolly Road, Suite 110
Blue Bell, PA 19422
Telephone: (610) 397-6500
Fax: (610) 397-0450
cdougherty@foxrothschild.com
shaaz@foxrothschild.com

*Attorneys for Defendants Vision Solar, LLC*

146409039.3

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   RELEVANT FACTS ......................................................................................... 2

III.  STANDARD OF REVIEW ............................................................................... 5

IV.   LEGAL ARGUMENT....................................................................................... 7

    A.   This Court Must Compel Individual Arbitration Under the FAA. ........................ 7

        1.   The Parties Agreed to Arbitrate. ................................................................. 9

        2.   The Arbitration Provision Encompasses Plaintiffs Claims...................... 11

        3.   The Law Requires Individual and Not Class Arbitration of Plaintiff's Claims. ..................................................................................... 13

    B.   Plaintiffs Have Failed to State A Cause of Action for Fraudulent Inducement................................................................................................ 14

        1.   Plaintiffs' Fraudulent Inducement Claims are Barred by the Economic Loss Doctrine........................................................................... 14

        2.   Plaintiffs' Fraudulent Inducement Claims are Barred by the Parol Evidence Rule. ......................................................................................... 16

        3.   Plaintiffs' Fraudulent Inducement Claim Should Be Dismissed Because Plaintiff Failed to Plead Reasonable Reliance............................ 17

    C.   Plaintiffs Unjust Enrichment Claim Should Be Dismissed. ................................ 18

    D.   This Court Should Dismiss Plaintiffs' State Law Consumer Protection Claims. .................................................................................................... 19

    E.   In the Alternative, This Court Should Stay This Action Until Arbitration is Complete. ................................................................................................. 22

V.    CONCLUSION................................................................................................. 23

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Hameen*,
  758 F. Supp. 1049 (E.D. Pa. 1990) ....................................................................6

*American Express Co. v. Italian Colors Restaurant*,
  570 U.S. 228 (2013).........................................................................................13

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009) ..................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................5

*Ass'n of N.J. Chiropractors v. Aetna, Inc.*,
  CIV.A. No. 09-3761 JAP, 2011 WL 2489954 (D.N.J. June 20, 2011) ...................11

*AT & T Techs. v. Communications Workers of America*,
  475 U.S. 643 (1986)....................................................................................12, 13

*Atlas Acquisitions, LLC v. Porania, LLC*,
  No. 18-CV-17524, 2019 WL 6130774 (D.N.J. Nov. 19, 2019) .....................14, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................5

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*,
  2012 PA Super 60, 40 A.3d 145 (2012) ............................................................20

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006).........................................................................................10

*CardioNet, Inc. v. Cigna Health Corp.*,
  751 F.3d 165 (3d Cir. 2014)................................................................................9

*Castle v. Barrett-Jackson Auction Co., LLC*,
  229 Ariz. 471, 276 P.3d 540 (Ct. App. 2012) ....................................................19

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
  584 F.3d 513 (3d Cir. 2009)....................................................................8, 12, 13

*Chen v. HD Dimension, Corp.*,
  No. CIV.A. 10-863 FLW, 2010 WL 4721514 (D.N.J. Nov. 15, 2010)..................14

*Cheron Holdings LLC v. Fernandes*,
No. A-2957-12T3, 2014 WL 1464556 (N.J. Super. Ct. App. Div. Apr. 16,
2014) ......................................................................................................................17

*City of Beverly v. Bass River Golf Mgmt., Inc.*,
92 Mass. App. Ct. 595, 93 N.E.3d 852 (2018) .....................................................21

*Davies v. Ecogen Inc.*,
No. CIV. A. 98-288, 1998 WL 229780 (E.D. Pa. Apr. 16, 1998) ..........................22

*Duffy v. Charles Schwab & Co.*,
123 F. Supp. 2d 802 (D.N.J. 2000) ......................................................................18

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)...............................................................................................9

*Gray v. Bayer Corp.*,
No. 08-4716, 2009 WL 1617930 (D.N.J. June 9, 2009)........................................20

*Greenwald Caterers Inc. v. Lancaster Host, LLC*,
599 F. Supp. 3d 235 (E.D. Pa. 2022) ...................................................................18

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 776 (3d Cir.2013).....................................................................................6

*H1 Lincoln, Inc. v. S. Washington St., LLC*,
489 Mass. 1, 179 N.E.3d 545 (2022) ....................................................................19

*Halide Grp., Inc. v. Hyosung Corp.*,
No. CIV.A. 10-02392, 2010 WL 4456928 (E.D. Pa. Nov. 8, 2010) ........................6

*Hassler v. Sovereign Bank*,
644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd*, 374 Fed. Appx. 341 (3d Cir. 2010) ......18

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*,
929 A.2d 1076 (N.J. 2007).....................................................................................19

*John Hancock Mut. Life Ins. Co. v. Olick*,
151 F.3d 132 (3d Cir.1998)................................................................................8, 11

*Kia Motors Am. Corp. v. Butler*,
985 So.2d 1133 (Fla. 3d DCA 2008) .....................................................................19

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019)...........................................................................................13

146409039.3

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys. Inc.*,
   247 F.3d 44 (3d Cir. 2001)................................................................................11

*Metex Mfg. Corp. v. Manson*,
   2008 WL 877870 (D.N.J. Mar. 28, 2008)..........................................................14

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).................................................................................................8

*MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*,
   974 F.3d 386 (3d Cir. 2020)..........................................................................10, 11

*Namerow v. PediatriCare Assocs., LLC*,
   461 N.J. Super. 133 (Ch. Div. 2018) ..................................................................9

*Nationwide Ins. Co. of Columbus, Ohio v. Patterson*,
   953 F.2d 44 (3d Cir. 1991)...................................................................................6

*Pellet v. Keller Williams Realty Corp.*,
   177 Conn. App. 42, 172 A.3d 283 (2017) ..........................................................19

*Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*,
   710 F. Supp. 2d 458 2010 WL 1816234 (USDC DE 2010) .................................20

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)..................................................................................10, 11, 12

*RNC Sys., Inc. v. Modern Tech. Grp., Inc.*,
   861 F. Supp. 2d 436 (D.N.J. 2012) ....................................................................14

*S. Broward Hosp. Dist. v. MedQuist Inc.*,
   516 F. Supp. 2d 370 (D.N.J. 2007), *aff'd in part*, 258 F. App'x 466 (3d Cir.
   2007) ..................................................................................................................15

*Seus v. John Nuveen Co., Inc.*,
   146 F.3d 175 (3rd Cir.1998) ...............................................................................13

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
   742 F.2d 786 (3d Cir.1984)...................................................................................7

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984)................................................................................................10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010).............................................................................................13

iv

*Torres v. CleanNet, U.S.A., Inc.*,
    90 F. Supp. 3d 369 (E.D. Pa. 2015) ................................................................................6

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476 (E.D. Pa. 2016) ..............................................................................18

*Winoka Village, Inc. v. Tate*,
    16 N.J. Super. 330 (App. Div. 1960) ........................................................................16, 17

**Statutes**

73 P.S. § 201–9.2(a) .............................................................................................................20

9 U.S.C.A. § 3 .......................................................................................................................22

9 U.S.C. § 2 .............................................................................................................................8

9 U.S.C. § 3 .............................................................................................................................8

9 U.S.C. § 4 .............................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................................6, 7, 20

Fed. R. Civ. P. 12 (b)(6) ....................................................................................................5, 6

Defendant Vision Solar, LLC ("Vision Solar" or "Defendant"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Compel Individual Arbitration and Dismiss the Complaint filed by twenty-two named Plaintiffs; Tom Bascetta, Ar-Rahman Buskey, Sandra Cuenca, Xiroyma Disla, Deborah Donahue, Brian Fahey, Shawn Froment, Carlyn Hastraiter, Lyndsey Henderson, Stephanie Lupien, Dennis Lupien, Matthew McClelland, Nicola Noralus, Darlene Pagano, Evelyn Perez, Jorge Perez, Karen Quantz, Gregg Rorris, Janice Schmidt, Joe Schmidt, Danielle Stevens, and Chris Underwood, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs").

## I.      **<u>INTRODUCTION</u>**

Plaintiffs' lawsuit is nothing more than a breach of contract dispute that must be adjudicated by arbitration on an individual and not class basis.  Plaintiffs' entire case is based upon Vision Solar's purported fraudulent misrepresentations that supposedly induced Plaintiffs to enter into individual contracts for the purchase and installation of home solar energy systems.  The contracts at issue, consisting of a Residential Sales Agreement and Addendum, which Plaintiffs failed to attach to their Complaint, included several critical provisions that Plaintiffs conspicuously ignore.  One of the provisions contained in the Addendum to the Sales Agreement is an express agreement to arbitrate that is clear, unambiguous, and enforceable under the Federal Arbitration Act.  Plaintiffs may argue that the arbitration provision is not enforceable because the contract was void *ab initio*.  However, such arguments fail under the severability doctrine because arbitration provisions are severable and independently enforceable.  Any determination as to the contract being voided due to fraud must be made by an arbitrator, and arbitration must be compelled in this case.

1

Further, once the Court considers the terms of the Sales Agreement and Addendum, Plaintiffs claims for fraudulent inducement, unjust enrichment, and violations of consumer protection laws fail.  In essence, Plaintiffs claim they were led to believe they would save more money on energy costs and receive a larger tax deduction than they actually did, because Vision Solar spent an unreasonable amount of time to connect the solar systems to the energy grid.  In doing so, Plaintiffs seek to enforce specific terms of the legitimate contract entered into by the Parties, yet at the same time ignore those portions of the agreement which belie their allegations.  Indeed, Plaintiffs were told in the contract itself that Vision Solar estimations as to potential tax and energy savings should not be relied upon, and they should consult with a tax or accounting professional.  Further, Plaintiffs warranted that they did not rely upon any statements or representations made by Vision Solar when entering into the Sales Agreement and Addendum.  As such, Plaintiffs have not established claims that necessarily depend upon fraudulent misrepresentations and their claims must be dismissed.

## II.   **RELEVANT FACTS**

Plaintiffs are homeowners in the States of Arizona, Connecticut, Florida, Massachusetts, New Jersey, and Pennsylvania.  *See* ECF No. 1, ¶1.  Each Plaintiff entered into a contract with Defendant Vision Solar to purchase residential solar panel systems ("Solar Panel System").  *Id.*  Plaintiffs allege that, for each of them, Vision Solar engaged in similar sales pitches, which they allege constituted fraud.

Plaintiff Thomas Bascetta purchased a Solar Panel System from Vision Solar in February 2022.  *Id.,* at ¶10.  Vision Solar allegedly represented to Bascetta that it would obtain all required permits prior to installation, that Bascetta would receive a tax credit of up to $24,000, and that the Solar Panel System would pay for itself over time by lowering Bascetta's energy bill.  *Id.,* at ¶11.

2

Plaintiffs further allege that Vision Solar sales representatives employed "high pressure" tactics like staying longer at Mr. Bascetta's home than requested, requesting that he sign up for installation of the Solar Panel System the same day as the in-home inspection, and supposedly pressuring him not to consult with an attorney before entering into a contract with Vision Solar. *Id.,* at ¶12.

Plaintiffs allege that Vision Solar installed the Solar Panel System at Mr. Bascetta's home "days after" he signed the agreement. *Id.,* at ¶13. Vision Solar allegedly installed and "turned on" the Solar Panel System before obtaining the "Permission to Operate" permit which is necessary to connect the solar panel system to the power grid. *Id.* This resulted in an increase in Mr. Bascetta's energy bill of, on average, $12 per month which he has been paying for the 14 months his system has remained off the power grid (totaling $168). *Id.,* at ¶¶14, 15. Plaintiffs allege that Mr. Bascetta did not receive a tax credit on his Solar Panel System. *Id.,* at ¶17. The complaint is silent as to what efforts, if any, Mr. Bascetta took to obtain a tax credit.

Plaintiffs re-assert and re-allege similar supposed misrepresentations and outcomes for the other twenty-one named Plaintiffs.[1] Plaintiffs summarize the three core misrepresentations allegedly committed by Vision Solar as follows. First, they allege that Vision Solar misrepresented the solar panel system performance. *Id.,* at ¶256. Vision Solar allegedly did so by "systematically misrepresent[ing] the output the Solar Panel Systems are capable of." *Id.,* at ¶258. Second, Plaintiffs allege that Vision Solar "misrepresented homeowners' eligibility for federal and state tax credits…" because, according to Plaintiffs, "most Vision Solar customers…do not have the requisite income to receive a tax credit equal to 26% of the price of the Solar Panel System." *Id.,*

---

[1] Though Mr. Bascetta's allegations are emblematic of those pled by other Plaintiffs, Defendants do not concede, but rather object to class treatment, including on the grounds of typicality and commonality among putative class members.

3

at ¶¶263, 264.  Third, Plaintiffs allege that Vision Solar misrepresented that it would not install the Solar Panel System until after Vision Solar received the required permits.  *Id.,* at ¶273.  Plaintiffs allege that, for each Plaintiff, these supposed misrepresentations induced Plaintiffs to purchase the Solar Panel Systems and, as a result, Plaintiffs were harmed.

Plaintiffs declined to attach to their Complaint the Residential Sales Agreement ("Sales Agreement") and Addendum that each Plaintiff signed.  Plaintiffs' Complaint acknowledges that each Plaintiff purchased the home solar products and/or services through a sales agreement with Vision Solar.  *See e.g.* ECF No. 1, ¶¶ 11.[2]  Continuing to use Mr. Bascetta as a representative example, Mr. Bascetta signed Vision Solar's standard Sales Agreement and Addendum on February 15, 2022.  Defendants attach those documents to this Motion to dismiss.  *See* Exhibit 1.

The Sales Agreement and Addendum provide language that directly contradict Plaintiffs' allegations.  For example, in Paragraph 3.6 of the Sales Agreement, Vision Solar advised purchasers that it does not provide tax, legal, or accounting advice and any information provided regarding "potential/ possible tax benefits" should not be relied upon as tax advice.  *See* Ex. 1.  Purchasers were encouraged, not discouraged, from seeking their own financial or tax representative.  *See id.*  Paragraph 19 of the Addendum provides that: "The Parties have not relied on any statement, representation, warranty, or agreement of the other Party or of any other person

_____

[2] *See also* ECF No. 1, ¶¶ 24, 32, 43, 54, 66, 77, 89, 99, 109, 122, 133, 144, 155, 168, 180, 193, 205 and 217.  Vision Solar currently has located signed Sales Agreements for each Plaintiff with the following exceptions: Shawn Froment, Evelyn Perez, Ar-Rahman Buskey, Lyndsey Henderson and Karen Quantz.  In the Complaint filed by Plaintiffs, each of these Plaintiffs have pled that they, like the other Plaintiffs, all entered into a Sales Agreement with Vision Solar.  Vision Solar will continue to attempt to locate the executed Sales Agreements for those five named Plaintiffs.  As for the signed Sales Agreements for the other seventeen Plaintiffs, each Sales Agreement and Addendum contains the identical arbitration provision from Paragraph 18 of the Addendum to Mr. Bascetta's Sales Agreement which is attached.

4

146409039.3

on such Party's behalf, including any representations, warranties, or agreements arising from statute or otherwise in law, except for the representations, warranties, or agreements expressly contained in this Addendum." *See* Ex. 1, Addendum ¶19.  The Sales Agreement and Addendum also provided each Plaintiff with their rights to terminate the contract should Vision Solar commit a breach. *Id.,* at ¶16.

Most critically, the Sales Agreement and Addendum includes a mandatory arbitration provision which all Plaintiffs agreed to. *See* Ex. 1, Addendum ¶18.  The arbitration provision provides that "Any controversy or claim arising out of or related to this Addendum, or the breach thereof, shall be resolved exclusively by arbitration in accordance with the rules of the American Arbitration Association…The Seller and Purchaser hereby waive the right to trial by judge or jury with regard to any controversy or claim arising out of or related to this Addendum. *Id.*  Mr. Bascetta signed the Sales Agreement and Addendum containing the mandatory arbitration provision on February 15, 2022.  *See* Ex. 1.

III.   <u>**STANDARD OF REVIEW**</u>

<u>**Fed. R. Civ. P. 12 (b)(6)**</u>

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The *Iqbal* Court explained that a court must accept as true all of the factual allegations contained in a complaint, but that requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 684.  To survive a Rule 12(b)(6) motion, a complaint must contain "factual allegations" that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

5

## Motion to Compel Arbitration Standard

"[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 776 (3d Cir.2013). (internal quotation marks omitted). As such, Vision Solar's motions to dismiss or stay proceedings in favor of arbitration should be decided under the motion to dismiss standard because Plaintiffs' claims are based upon the Residential Sales Agreement and Addendum each of them signed. *See Torres v. CleanNet, U.S.A., Inc.,* 90 F. Supp.3d 369, 375 (E.D. Pa. 2015) (granting motion to stay without discovery where plaintiff's claims were subject to arbitration and court made that determination "solely based on the Complaint and the Franchise Agreement relied upon in the Complaint.")

Claims that are subject to an agreement to arbitrate may also be dismissed pursuant to Rule 12(b)(6). *Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 (3d Cir. 1991) (*citing Aetna Cas. & Sur. Co. v. Hameen*, 758 F. Supp. 1049 (E.D. Pa. 1990) (granting motion to dismiss claim that was covered by arbitration provision)); *Halide Grp., Inc. v. Hyosung Corp.*, No. CIV.A. 10-02392, 2010 WL 4456928, at *3 n.4 (E.D. Pa. Nov. 8, 2010) ("The Court of Appeals has held that where all of the issues raised in a suit are subject to binding arbitration the court may dismiss rather than stay the action.").

## Fed. R. Civ. P. 9(b)

Fed.R.Civ.P. 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Under Rule 9(b), intent or other conditions of a person's mind may be alleged generally, however, "the pleadings must 'allege sufficient underlying facts from which a court may reasonably infer that a party acted with the

6

requisite state of mind.'" *Simonian*, 2010 WL 2523211, at *3. In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

## IV.    LEGAL ARGUMENT

### A.    This Court Must Compel Individual Arbitration Under the FAA.

This Court need not look beyond the Complaint and the Sales Agreement and Addendum attached to this Motion, in order to determine that Plaintiffs' claims are subject to mandatory arbitration under the FAA.  Plaintiffs' Complaint acknowledges that each Plaintiff purchased the home solar products and/or services through a sales agreement with Vision Solar. *See e.g.* ECF No. 1, ¶¶ 11.[3]  For each Named Plaintiff, the Complaint includes a nearly identical paragraph which states that "Vision Solar induced Plaintiff [ ] to purchase and finance a Solar Panel System by systematically misrepresenting several material and foundational aspects *of the sales and financing agreements.*"  *See id.* (emphasis added).  Notably, Plaintiffs fail to attach any Sales Agreement to their Complaint.

Each Sales Agreement included an Addendum with terms and conditions that covered the obligations and rights of each Party.  *See* Ex. 1. Paragraph 18 of the Addendum to the Sales Agreement states as follows:

---

[3] *See also* ECF No. 1, ¶¶ 24, 32, 43, 54, 66, 77, 89, 99, 109, 122, 133, 144, 155, 168, 180, 193, 205 and 217.

146409039.3

18.     ARBITRATION PROVISION

> 18.1. Any controversy or claim arising out of or related to this Addendum, or the breach thereof, shall be resolved exclusively by arbitration in accordance with the rules of the American Arbitration Association. Such arbitration shall be held in Camden County, New Jersey and judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction. The Seller and Purchaser hereby waive the right the right to trial by judge or jury with regard to any controversy or claim arising out of or related to this Addendum.

*See* Ex. 1.  Thus, each Plaintiff that signed the standard Vision Solar Sales Agreement and Addend that Mr. Bascetta signed agreed to arbitrate disputes, such as this, exclusively by arbitration.

The FAA dictates that any agreement to settle a dispute by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts..." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 522 (3d Cir. 2009).  The FAA establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.,* at 24-25. The FAA permits a district court to compel, or enjoin, arbitration as circumstances may require. 9 U.S.C. §§ 3, 4; *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir.1998).

In addressing a motion to compel arbitration, a court must determine two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall with the language of the arbitration agreement." *CardioNet, Inc. v. Cigna Health Corp.,* 751 F.3d 165, 172 (3d Cir. 2014).  If there is

a valid arbitration agreement and the dispute falls within it, the FAA requires this Court compel arbitration.

### 1.       The Parties Agreed to Arbitrate.

First, there can be no doubt that the Parties agreed to arbitrate as each Plaintiff and Defendant signed a Sales Agreement in which arbitration was the exclusive remedy to resolve all disputes.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally…should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, (1995).  The Sales Agreement includes choice of law provision which identifies the law of the State of New Jersey as controlling.  *See* Ex. 1, Addendum ¶20.[4]  "Under New Jersey law, where the terms of a contract are clear and unambiguous, there is no room for interpretation or construction and the courts must enforce those terms as written."  *See Namerow v. PediatriCare Assocs., LLC,* 461 N.J. Super. 133, 140 (Ch. Div. 2018).   When presented with an unambiguous contract, the court should not look outside the "four corners" of the contract to determine the parties' intent, and parol evidence should not be used to alter the plain meaning of the contract.  *Id.*  There can be no doubt that based upon the unambiguous terms of the Sales Agreement and Addendum, the Parties intended to resolve all disputes that relate to the Sales Agreement and Addendum by arbitration.

Plaintiffs may argue that the Sales Agreement and Addendum, and all provision contained therein, are void.  Indeed, Plaintiffs assert in their Complaint that "Vision Solar's lies and deception regarding material and foundational aspects of the sales and financing agreements for the Solar

---

[4] The Choice of law provision provides that "This Agreement shall in all respects be governed and construed in accordance with the laws of the State of New Jersey, County of Camden."  *See* Ex. 1, Addendum ¶20.

Panel Systems render each and every agreement void *ab initio*."  *See* ECF No. 1, at ¶6.  Notably, Plaintiffs do not allege Vision Solar ever made any misrepresentations with respect to the arbitration provision itself.

"A challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 440 (2006); *citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967), and *Southland Corp. v. Keating*, 465 U.S. 1 (1984).  This is because, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. *See Cardegna,* 546 U.S. at 440, *citing Prima Paint*, 388 U.S., at 400. As such, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *See id.*

Under the "severability doctrine" an arbitration clause is "severable and independently enforceable from the rest of the contract in which it is contained."  *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020).  Here, Plaintiffs "cannot avoid arbitration by attacking the contract containing the arbitration clause as a whole, [r]ather, the party opposing arbitration must challenge the arbitration clause itself." *Id.* (internal quotations omitted). In *MZM Construction,* the Court of Appeals for the Third Circuit explained the severability doctrine in the context of fraudulent inducement claims by summarizing the Supreme Court of United States' holding in *Prima Paint*[5]:

> a claim of fraud in the inducement *of the arbitration clause* is for the court to decide, but a claim of fraud in the inducement *of the container contract* is for the arbitrator. Because the party opposing arbitration had only alleged fraud in the inducement of the container contract, the *Prima Paint* Court referred that issue to the arbitrators

---

[5] *See Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395 (1967).

in accordance with the arbitration clause. Thus, under *Prima Paint*, absent a specific challenge to the validity of the arbitration clause specifically, the court must treat it as a valid and enforceable agreement and refer any challenges to the container contract to arbitration.

*See MZM Construction* 974 F.3d at 397 (3d Cir. 2020) (emphasis original).  Plaintiffs do not assert a claim for fraudulent inducement *of the arbitration provision* itself.  Indeed, the word "arbitration" appears nowhere in Plaintiffs' 380 paragraph Complaint.  Because Plaintiffs' claims are for alleged fraud in the inducement of the Sales Agreement, the Court must treat the arbitration provision as a valid and enforceable and compel Plaintiffs to arbitrate their claims.

### 2.    The Arbitration Provision Encompasses Plaintiffs Claims.

The scope of the arbitration clause within the Sales Agreement and Addendum encompasses Plaintiffs' fraudulent inducement claim, unjust enrichment claim, and their claims brought under consumer protections laws of various states.  When determining whether a dispute is within the scope of an arbitration provision, "the court must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of arbitration." *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 137 (3d Cir. 1998).  The Court "must determine whether ... the specific dispute falls within the substantive scope of that agreement[.]" *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys*., Inc., 247 F.3d 44, 54-55 (3d Cir. 2001). The proper focus is "on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Ass'n of N.J. Chiropractors v. Aetna, Inc.*, CIV.A. No. 09-3761 JAP, 2011 WL 2489954, at "15 (D.N.J. June 20, 2011) *(citing Medtronic*, 247 F.3d 44).

The arbitration clause at issue is extremely broad and applies to any claims that "relate to" the Sales Agreement and Addendum.  *See* Ex. 1, Addendum ¶18.[6]  When the scope of the arbitration clause is broad, there is a presumption of arbitrability.  *AT & T Techs.,* 475 U.S. at 650, ("[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute." (internal quotation marks and citations omitted) (alteration in original).  Broadly worded arbitration provisions are interpreted expansively.  *Id.*  A broadly crafted arbitration clause that does not exclude any claims from arbitration, like the one at issue here, supports the presumption of arbitrability.  *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London,* 584 F.3d 513, 556 (3d Cir. 2009) ("Rather than excluding various disputes from arbitration, this arbitration clause's scope is broad, and the presumption of arbitrability applies to it.").  *AT & T Techs.,* 475 U.S. at 650.  Conversely, where the arbitration provision is narrowly crafted, a court cannot assume the parties intended all disputes to be arbitrated.  *See Local 827, Int'l Bhd.*, 458 F.3d at 310.

Plaintiffs' claims fall within the arbitration clause in this case.  Plaintiffs' fraudulent inducement, unjust enrichments, and state-law consumer protection causes of action are all based upon the same factual underpinnings.  Plaintiffs' lawsuit alleges that each Plaintiff entered into the Sales Agreements based upon false promises from Vision Solar and Plaintiffs suffered damages as a result.  Those claims unquestionably "relate to" the Sales Agreement and Addendum.  The arbitration clause at issue is susceptible of an interpretation that covers the dispute in this case.

---

[6] The arbitration clause applies to "[a]ny controversy or claim arising out of or related to this Addendum, or the breach thereof."  *See id.*  A review of the Addendum to the Residential Sales Agreement indicates that it covers, *inter alia,* the sale and installation of the home solar system, the purchase price of the system, the payment terms, and the Purchaser's and Seller's obligations and termination rights of the sales agreement.  *See* Ex. 1.

146409039.3

*See AT & T Techs.,* 475 U.S. at 650.  Indeed, it seems clear that the arbitration provision was written to cover disputes exactly like the one between the parties here.  *See Century Indemnification Co*. 584 F.3d at 556 (3d Cir. 2009).

Because there is a valid arbitration agreement and the dispute falls within it, the FAA requires this Court enter an order compelling arbitration and dismissing this lawsuit.  *See Seus v. John Nuveen Co., Inc*., 146 F.3d 175, 179 (3rd Cir.1998) (where all of the issues raised in a suit are subject to binding arbitration the court may dismiss rather than stay the action.)

### 3.    The Law Requires Individual and Not Class Arbitration of Plaintiff's Claims.

The Parties did not consent to arbitration on a classwide basis.  *See* Ex. 1, Addendum ¶18. Indeed, the arbitration provision is silent as classwide arbitration.  *Id.*  In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, (2010), the Supreme Court held "that a court may not compel arbitration on a classwide basis when an agreement is 'silent' on the availability of such arbitration."  *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (Roberts, J.).  In *Lamps Plus,* the Supreme Court extended that rule even further by holding that "[c]ourts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis."  *Id.* at 1419.  The Court reasoned that "like silence, ambiguity does not provide a sufficient basis to conclude that the parties to an arbitration agreement agreed to [classwide arbitration]." *Id.* at 1416.

For classwide arbitration to occur, parties must expressly and unambiguously agree to it. This is because "shifting from individual to class arbitration is a 'fundamental' change, that 'sacrifices the principal advantage of arbitration' and 'greatly increases risks to defendants.'" *Id.,* at 1414. (citations omitted). The FAA requires courts to "enforce arbitration agreements according to their terms." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233, (2013).

Because the arbitration agreement at issue does not include an agreement to classwide arbitration, the Court must compel Plaintiffs to arbitrate their claims on an individual, and not a classwide basis.

**B.      Plaintiffs Have Failed to State A Cause of Action for Fraudulent Inducement.**

Alternative grounds exist for this Court to dismiss Plaintiffs' Complaint beyond the fact that the FAA requires Plaintiffs to individually arbitrate their claims.  Plaintiffs have also failed to adequately plead a fraudulent inducement claim.

To establish a claim for fraudulent inducement, a party must show the following: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech. Grp., Inc*., 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (*citing Metex Mfg. Corp. v. Manson*, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)).

Plaintiffs' fraudulent inducement claim fails because: (1) it is barred by the economic loss doctrine; (2) it is barred by the parol evidence rule; and (3) Plaintiffs have failed to plead reasonable reliance.

**1.      Plaintiffs' Fraudulent Inducement Claims are Barred by the Economic Loss Doctrine.**

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract." *Chen v. HD Dimension, Corp.*, No. CIV.A. 10-863 FLW, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010).  The threshold question regarding the economic loss doctrine's applicability is "whether the allegedly tortuous conduct is extraneous to the contract." *Atlas Acquisitions, LLC v. Porania, LLC*, No. 18-CV-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019).  Here, the alleged misrepresentations are not extraneous to the Sales

14

Agreement, but rather, related to the terms of the Agreement and Addendum that each Plaintiff read, accepted and signed.

Plaintiffs repeat and re-allege nearly identical alleged misrepresentations purportedly made by Vision Solar for each Plaintiff.  Supposedly, Vision Solar agents stated to Plaintiffs that: (1) each Plaintiff would be eligible for a tax credit by purchasing solar panels; (2) that home solar panels would reduce each Plaintiff's energy bill once installed; and (3) that Vision Solar would obtain all required permits and licenses prior to installing the solar panels.  Each of these purported "misrepresentations" are explained in greater detail within the Sales Agreement.[7]  The Sales Agreement specifically addresses the accuracy and reliability of the estimated tax savings and energy bill reduction based upon the operation of solar panels.[8]  In Paragraph 3.6 of the Sales Agreement, Vision Solar expressly advised that it "provided [Purchasers] with information as to *the potential/ possible tax benefits* associated with owning [their] PV Solar System … for information purposes only."  *See* Ex. 1., ¶3.6 (emphasis added). To the extent that Vision Solar

---

[7] For example, ¶3.3 of the Agreement provides that "Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein." *See* Ex. 1.  ¶3.6 of the Agreement provides that "Vision Solar and its affiliates do not provide tax, legal, or accounting advice. Vision Solar has provided you with information as to the potential/ possible tax benefits associated with owning your PV Solar System. This information is provided for information purposes only and Purchaser should consult with his/her duly authorize financial and/or tax representative(s). Information provided by Vision Solar is not intended provide, and should not be relied on for, tax, legal, or accounting advice. Purchaser should consult with an authorized advisor as to these matters.  *Id.*

[8] New Jersey law states that "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *S. Broward Hosp. Dist. v. MedQuist Inc*., 516 F. Supp. 2d 370, 396 (D.N.J. 2007), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007) (internal citation omitted). "[I]f there is no duty owed to a plaintiff independent of what the defendant owes plaintiff under a contract, a plaintiff may not maintain a tort claim (as a necessary element of the tort claim is absent)."  *Id.*  Here, Vision Solar owed no duty to each Plaintiff beyond those which were expressly stated in the Sales Agreement and Addendum.

did not pull permits quickly enough (due to unforeseen issues or events), each Plaintiff had the right to terminate the Agreement.  *Id.,* at Addendum ¶16.1.3. (allowing for cancellation of Agreement where "Seller has not corrected such failure within a reasonable period of time …").

Where the terms of the contract explicitly address the accuracy and completeness of the supposed misrepresentations relied upon, the statements are not extraneous to the contract.  *See Atlas Acquisitions* 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019) (Martini, J.).  In *Atlas Acquisitions,* the plaintiff, a purchaser of defaulted consumer debt, sued the defendant under a fraudulent inducement theory that defendant made knowingly false misrepresentations about the quality of the debt before the sale. *Id.,* at 5.  The court dismissed the fraudulent inducement claims because the contract explicitly addressed the seller's representations with the following language: "Buyer acknowledges that Seller…does not represent, warrant or insure the accuracy or completeness of any information provided to Buyer or in any of the Account files." *Id.* at 3.  Like the contract in *Atlas,* the Plaintiffs were notified by the terms of the Sales Agreement and Addendum that any statements as to their potential tax savings or energy bill savings were for information purposes and should not be relied upon as financial or tax advice. *See* Ex. 1., at ¶3.6. Because the Parties' Agreement covers the supposed misrepresentations relied upon by Plaintiffs, the alleged misrepresentations are not extraneous to the contract and the Plaintiffs' fraudulent inducement is barred by the economic loss doctrine.

> **2.     Plaintiffs' Fraudulent Inducement Claims are Barred by the Parol Evidence Rule.**

Under New Jersey law, parties "are usually bound by the import of documents signed by them and which they had the ability and opportunity to read."  *Winoka Village, Inc. v. Tate*, 16 N.J. Super. 330, 333 (App. Div. 1960). It is axiomatic that "a specific undertaking in a written

16

agreement is not to be varied or contradicted by parol." *Id.*  Though fraud is an exception to the

parol evidence rule, that exception is not without its limits. *Filmlife, Inc.*, 251 N.J. Super. 570, 574;

*see also Winoka Village, Inc.*, 16 N.J. Super. at 333.  "There is a distinction between fraud

regarding matters expressly addressed in the integrated writing and fraud regarding matters wholly

extraneous to the writing." As explained by the New Jersey courts, "alleged oral

misrepresentations are insufficient as a matter of law to avoid a written contract that they directly

contradict." *Cheron Holdings LLC v. Fernandes*, No. A-2957-12T3, 2014 WL 1464556, at *8

(N.J. Super. Ct. App. Div. Apr. 16, 2014).

Here, Plaintiffs rely upon extrinsic evidence in the form of statements allegedly made by

the Defendant which are specifically considered by the terms of the Sales Agreement. Each of the

alleged misrepresentations at issue in this matter are directly contradicted by the terms of the  Sale

Agreement. Thus, Plaintiff's claim for fraudulent inducement rely upon parol evidence and must

fail.

### 3.    Plaintiffs' Fraudulent Inducement Claim Should Be Dismissed Because Plaintiff Failed to Plead Reasonable Reliance.

Plaintiffs have also failed to adequately plead reasonable reliance to sustain their cause of

action for fraudulent inducement. "A party reasonably relies on a misrepresentation where the facts

to the contrary were not obvious or where the relying party did not reasonably pursue further

investigation that would have revealed the falsity of the representation." *Arcand v. Brother Int'l*

*Corp*., 673 F. Supp. 2d 282, 305 (D.N.J. 2009).

Plaintiffs expressly acknowledged any alleged guarantees or promises as to a specific

dollar amount of tax savings or energy bill reduction were estimates of *potential* savings and

should not be relied upon.  If this were not enough, each Plaintiff specifically acknowledged in the

Sales Agreement that they did not rely upon *any* statements made outside the terms of the Agreement itself.  Paragraph 19 of the Addendum provides that: "The Parties have not relied on any statement, representation, warranty, or agreement of the other Party or of any other person on such Party's behalf, including any representations, warranties, or agreements arising from statute or otherwise in law, except for the representations, warranties, or agreements expressly contained in this Addendum."  *See* Ex. 1, Addendum ¶19.  Thus, Plaintiffs admitted, by entering into the Sales Agreement, that they did not rely upon any alleged misrepresentation.  Thus, Plaintiffs have failed to plead the essential elements of reasonable reliance and their fraudulent inducement claim should be dismissed.

### C.  Plaintiffs Unjust Enrichment Claim Should Be Dismissed.

To state a claim for unjust enrichment, a party must allege "'(1) that the [opposing party] has received a benefit from the [party], and (2) that the retention of the benefit by the [opposing party] is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 Fed. Appx. 341 (3d Cir. 2010). "Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties." *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000). Unjust enrichment claims typically fall under one of two theories, "(1) a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a theory based on unlawful or improper conduct established by an underlying claim, such as fraud ...." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016) (citations omitted).  "[A] claim under the second theory rises and falls with the underlying claim." *Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 262–63 (E.D. Pa. 2022).

Here, Plaintiffs acknowledge that each of them entered into a contract with Vision Solar which was not rescinded.[9]   Therefore, quasi-contract liability is unavailable as a matter of law. Plaintiffs assert that the unrescinded contracts at issue were void *ab initio* due to "lies and deception" by Vision Solar.  *See* ECF No. 1, ¶6.  As such, Plaintiffs' unjust enrichment claims rise and fall with their fraudulent inducement claim, and both should be dismissed.

### D.   This Court Should Dismiss Plaintiffs' State Law Consumer Protection Claims.

Plaintiffs assert claims under various States consumer protection laws including those in Arizona (Count III), Connecticut (Count IV), Florida (Count V), Massachusetts (Count VI), New Jersey (Count VII) and Pennsylvania (Count VIII).  *See* ECF No. 1.  Each consumer protection law requires that a plaintiff plead essentially the same elements which consist of: (1) some unlawful deceptive conduct; (2) an ascertainable loss; and (3) some causal relationship between the unlawful conduct and the ascertainable loss.[10]   Where fraud is alleged, as in Plaintiffs'

---

[9]  *See* ECF No. 1, ¶¶ 11, 24, 32, 43, 54, 66, 77, 89, 99, 109, 122, 133, 144, 155, 168, 180, 193, 205 and 217.

[10]  **New Jersey:  "**To state a claim under the NJCFA, Plaintiff must allege: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *See, e.g., Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co*., 929 A.2d 1076, 1086 (N.J. 2007). **Arizona:** "The elements of a private cause of action under the [Consumer Fraud Act] are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *See Castle v. Barrett-Jackson Auction Co., LLC*, 229 Ariz. 471, 473, 276 P.3d 540, 542 (Ct. App. 2012). **Connecticut: "**The essential elements to pleading a cause of action under CUTPA are: (1) the defendant committed an unfair or deceptive act or practice; (2) the act complained of was performed in the conduct of trade or commerce; and (3) the prohibited act was the proximate cause of harm to the plaintiff." *See Pellet v. Keller Williams Realty Corp*., 177 Conn. App. 42, 62, 172 A.3d 283, 298 (2017). **Florida: "**In order to assert a claim for damages under FDUTPA, the plaintiff must establish: '(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *Kia Motors Am. Corp. v. Butler*, 985 So.2d 1133, 1140 (Fla. 3d DCA 2008). **Massachusett**s: "General Laws c. 93A, § 2, makes unlawful 'unfair or deceptive acts or practices' in the conduct of 'any trade or commerce,' while § 11 applies these prohibitions to dealings between those 'engaged in trade or commerce…'" *See H1 Lincoln, Inc. v. S. Washington St., LLC*,

146409039.3

consumer protection claims, Plaintiffs must satisfy Rule 9(b) by pleading the particular factual circumstances behind each element of [that consumer fraud] claim with particularity, including causation and ascertainable loss. *See, e.g., Warma Witter Kreisler, Inc.*, 2009 WL 4730187, at *5; *Gray v. Bayer Corp.*, No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009); *see also Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*, 2010 WL 1816234, at *14 ("Courts apply Rule 9(b) to every element of a fraud claim, including reliance, causation, and injury").

Plaintiffs' consumer fraud claims must be dismissed because they have failed to plead unlawful deceptive conduct.   Plaintiffs allege Vision Solar committed three essential misrepresentations. *See* ECF No. 1, at pp. 67, 68, and 70.   First, Plaintiffs claim Vision Solar misrepresented the performance of the solar panel system. *Id.,* at 67.   Plaintiffs argue that Vision Solar sales representatives "systematically misrepresent the output the Solar Panel Systems are capable of." *Id.,* ¶258.   According to Plaintiffs, this led to their belief the solar systems would "pay for themselves." *Id.,* ¶259.   Yet, there is no allegation that any solar panels installed possessed less storage capacity than that for which each of them specifically contracted.   For example, the Thomas Bascetta Sales Agreement indicates that the size of the solar panel system as 7.20kW. *See* Ex. 1.   There is no allegation that Vision Solar delivered to Bascetta a solar panel system with any less capacity or output than that which he contracted for.   To the extent that the energy these systems generated was less than expected, these issues are out of Vision Solar's control and would naturally fluctuate based upon weather, sun exposure, energy prices, and other factors.   This is

---

489 Mass. 1, 14, 179 N.E.3d 545, 557 (2022).  **Pennsylvania: "**The UTPCPL provides a private right of action for anyone who 'suffers any ascertainable loss of money or property' as a result of an unlawful method, act or practice." *See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 2012 PA Super 60, 40 A.3d 145, 151 (2012) (*citing* 73 P.S. § 201–9.2(a)).

146409039.3

precisely why the Sales Agreement and Addendum expressly indicated that "[t]he Parties have not relied on any statement, representation, warranty, or agreement of the other Party."  *See* Ex. 1, Addendum ¶19.

Second, Plaintiffs claim that that Vision Solar misrepresented homeowners' eligibility for tax credits.  *Id.,* at 68.  Any statements by Vision Solar regarding a Plaintiff's ***potential*** eligibility for a tax credit, or the amount of ***potential*** tax credit they could receive does not constitute a misrepresentation, as this is expressly addressed in the contract which Plaintiffs' reviewed and signed before agreeing to purchase home solar products.  Paragraph 3.6 of the Agreement specifies that, "Vision Solar is not intended provide, and should not be relied on for, tax, legal, or accounting advice."  *Id.,* at Agreement ¶3.6.

Finally, Plaintiffs allege that Vision Solar misrepresented the status of permits.  *Id.,* at 70. The Sales Agreement requires Vision Solar to obtain the necessary permits to enable for the operation of Purchaser's solar panel system.  *See* Ex. 1, Agreement ¶3.3.  To the extent that Vision Solar was unable to obtain said permits and connect the solar systems to the energy grid within a reasonable time, Plaintiffs were able to terminate the contract.  *See* Ex. 1, Addendum ¶16.  Indeed, Vision Solar provided the termination notice along with the contract.  *See* Ex. 1.  If Plaintiffs believed Vision Solar breeched the Sales Agreement and Addendum, they could have asserted breach of contract claims.  However, a mere breach of contract, without more, does not amount to a violation of a state consumer protection law.  *See City of Beverly v. Bass River Golf Mgmt., Inc.,* 92 Mass. App. Ct. 595, 605–06, 93 N.E.3d 852, 863 (2018).  Because Plaintiffs failed to plead any unlawful or deceptive conduct by Vision Solar, Plaintiffs' consumer fraud claims must be dismissed.

21

**E.**     **In the Alternative, This Court Should Stay This Action Until Arbitration is Complete.**

As noted above, all of Plaintiffs' claims, to the extent they are otherwise sufficient to state a claim, should be dismissed because Plaintiffs are obligated to arbitrate their dispute with Vision Solar. If, however, the Court determines that some of Plaintiffs' claims should not be dismissed, and that they are not within the scope of the arbitration provision of the Sales Agreement and Addendum, it is appropriate to stay those claims pending the outcome of arbitration. As provided by the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3. Issuing a stay is also appropriate when a suit involves both arbitrable and non-arbitrable claims. *Davies v. Ecogen Inc.*, No. CIV. A. 98-288, 1998 WL 229780, at *1 (E.D. Pa. Apr. 16, 1998) ("In applying [section 3] of the FAA, courts have typically granted stays when there are both arbitrable and non-arbitrable claims in the same action and significant overlap exists between parties and issues.") (citing cases)).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants Vision Solar, LLC request that this Court enter an order compelling Plaintiffs to arbitrate their claims individually and to dismiss Plaintiffs' Complaint.


Dated: June 5, 2023                      Respectfully submitted:

                                         **FOX ROTHSCHILD LLP**

                                         By: <u>/s/ *Brett A. Berman*</u>
                                               Brett A. Berman
                                               2000 Market Street
                                               20th Floor
                                               Philadelphia, PA 19103-3222
                                               Telephone: (215) 299-2842
                                               Fax: (215) 299-2150
                                               bberman@foxrothschild.com

                                               Colin D. Dougherty
                                               Samuel A. Haaz
                                               980 Jolly Road, Suite 110
                                               Blue Bell, PA 19422
                                               Telephone: (610) 397-6500
                                               Fax: (610) 397-0450
                                               cdougherty@foxrothschild.com
                                               shaaz@foxrothschild.com

                                               *Attorneys for Defendant Vision Solar, LLC*

146409039.3

## <u>CERTIFICATE OF SERVICE</u>

I, Brett A. Berman, hereby certify that, on this date, I caused the foregoing document to be

filed electronically with this Court, where it is available for viewing and downloading from the

Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic

Filing constituting service of the filed document, upon the following:

Zachary A. Rynar
Ian W. Sloss
Steven L. Bloch
Krystyna D. Gancoss
Brett Burgs
SILVER GOLUB & TEITELL LLP
One Landmark Square, Floor 15
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
zrynar@sgtlaw.com
isloss@sgtlaw.com
sbloch@sgtlaw.com
kgancoss@sgtlaw.com
bburgs@sgtlaw.com


CONNECTICUT FAIR HOUSING CENTER
60 Popieluszko Court
Hartford, Connecticut 06106
(860) 263-0741
(860) 247-4236 (fax)
jgentes@ctfairhousing.org
*Attorney for Plaintiff*

By: /s/ Brett A. Berman
        Brett A. Berman

Dated: June 5, 2023

146409039.3