**EXHIBIT "A"**



Connecticut HIC License No. HIC.0660535

# CONNECTICUT RESIDENTIAL SALES AGREEMENT

| | |
|---|---|
| Customer Name | : Thomas Bascetta |
| Project No. | : 20220215-518 |
| Proposal Date | : Tuesday, February 15, 2022 |
| Salesperson | : Wayne Mohrlein |
| Salesperson HIS No. | : |

Vision Solar, LLC ("Vision Solar") is pleased to present the following Residential Sales Agreement ("Agreement") to provide the equipment and services as described on the following pages and drawings.

| DESCRIPTION / SPECIFICATIONS: | |
|---|---|
| System Size | 7.20 kW |
| Installation Location | 201 Two Brook Road Wethersfield, Connecticut, 06109 |
| Projected Start Date | 3/15/2022 |
| Projected Work Completion Date | 5/15/2022 |
| Estimated Annual Energy Output | 7,037 kWh |

*Please note: the "Projected Start Date" and "Projected Work Completion Date" represent our best estimation of such dates based on various market and logistic factors outside the control of Vision Solar and are thus, subject to change. Please see Addendum A hereto containing our detailed Terms and Conditions incorporated by reference hereto.*

The services to be provided by Vision Solar shall include the following:

1. Complete photovoltaic ("PV") design (Signed/Sealed Drawings).
2. Complete electrical power distribution and interconnection design (Signed/Sealed Drawings)
3. Complete structural analysis and design (Signed/Sealed Drawings).
4. All necessary construction liability insurances explicitly pertaining to our scope of work by Vision Solar.
5. A full-time dedicated Vision Solar project engineer is included.
6. A full-time dedicated Vision Solar on site project manager is included.
7. All necessary permitting filings, Uniform Commercial Code filings, Utility Interconnection agreements, and New Jersey Clean Energy Program filings or related filings.
8. All necessary solar components as listed in this Agreement including supply and installation.
9. All work performed by Vision Solar will be done in accordance with local, state, and national electrical codes.

| Main PV System Equipment List | | | | | | |
|---|---|---|---|---|---|---|
| Quantity | Manufacturer | Model | Description | Size | Manufacturer Warranty | Customer Initials |
| 20 | ZNShine Solar | ZXM6-NH120-360/M (Or Similar Product) | PV Modules | 7.20 kW | 25 Years | T.B. |
| 1 | ECOFASTEN | ROCK IT | Racking System | 7.20 kW | 25 Years | T.B. |
| 1 | SolarEdge | SE6000H-US | DC/AC Inverter | 7.20 kW | 25 Years | T.B. |

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Residential Sales Agreement Page 1 of 4

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX                                           Page 1 of 16

Connecticut HIC License No. HIC.0660535



Please Note: If the system as installed differs from the "Main PV System Expected Equipment List" as set forth above but includes substantially equivalent or better equipment with equal to or greater output, you will not have the right to terminate this Agreement.

I. **MOUNTING HARDWARE DESCRIPTION**
- Eco X mounting system with Eco foot L- Bracket installed into a new roof flashing.
- Neoprene washer filled with roofing sealant prior to set screw installation.

II. **SYSTEM**
The services and hardware to be supplied by Vision Solar (hereinafter referred to as "the System") in connection with this Agreement are as follows:

1. SYSTEM DESIGN RESPONSIBILITY
   1.1. System location, drawings showing all controls, panels, operation stations, and other devices.
   1.2. Description of operation.
   1.3. Commission/ start-up.
   1.4. Providing of all maintenance documents.

2. INSTALLATION
   2.1. Mechanical Installation
      2.1.1. The mechanical installation of your System will be performed in a professional manner and will exhibit good workmanship. Through a coordinated schedule and pre-established work scenario, Vision Solar will predict and prepare for the necessary manpower requirements and arrange on-site job activities accordingly.
      2.1.2. The on-site job activities will include, but will not necessarily be limited to, surveying the necessary area with precision equipment and marking floor and/or ceiling centerline and related necessary tasks.
      2.1.3. During certain critical phases of the installation process, Vision Solar may request Purchaser and/or their representative to observe certain installation procedures in order that they may become familiar with certain installation conditions and maintenance procedures.
      2.1.4. The installation is based on the use of skilled labor. The installation work will occur on a straight time, eight (8) hour per day, five (5) days per week basis during traditional working hours.
      2.1.5. Mechanical Installation Notes
         2.1.5.1. The installation includes all mechanical equipment outlined in this Agreement.
         2.1.5.2. Floor supports and/or ceiling hangers will be provided by Vision Solar to support the equipment referenced herein as required.
         2.1.5.3. Relocation or installation of any existing equipment or other equipment not referenced in this Agreement is not included.
         2.1.5.4. All fastening used in the erection of the System shall be of the mechanical type wherever possible for ease of future adjustment and/or alteration. Welding will only be used where necessary/ required at Vision Solar's sole discretion.
         2.1.5.5. Fastening to building, steel, floor, and/or walls will be accomplished with as minimal defacing as possible.
         2.1.5.6. Purchaser is required to provide for on-site storage and setup where/ when necessary.
   2.2. Electrical Installation
      2.2.1. The electrical installation will be performed in a professional manner and will exhibit good craftsmanship. All wiring materials shall be new and have the highest quality for this type work. All conduits will be plumb and parallel and installed in a professional manner.

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Residential Sales Agreement Page 2 of 4

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX   Page 2 of 16

Connecticut HIC License No. HIC.0660535

- 2.2.2. No conduit less than 1" diameter will be used unless otherwise indicated. Conduit shall be installed exposed on walls, ceilings, beams, and columns. Locations of exposed conduit will be selected to minimize and/or prevent damage from moving vehicles or equipment and to allow ease of maintenance. Conduit will be electric metallic tube and/or wireway.
- 2.2.3. All wire will have sufficient current carrying capacity for the intended use.
- 2.2.4. Wires will run continuously from one apparatus to another without splices in conduit.
- 2.2.5. Control wiring will be spliced in junction boxes in those instances where it is required.
- 2.2.6. No splices will be permitted in motor wiring.
- 2.2.7. All electrical wire and cable will be color coded and numbered on both ends of each wire.
- 2.2.8. The installation work is to occur on straight time, eight (8) hours per day five (5) days per week basis during normal working hours.
- 2.2.9. Electrical Installation Notes
  - 2.2.9.1. The installation includes all electrical equipment offered in this Agreement and as required for System installation described herein.
  - 2.2.9.2. The electrical wiring shall be installed in accordance with accepted industry standards.
  - 2.2.9.3. Power feeders to any/all solar panels are to be furnished and installed by Vision Solar.
- 2.3. Purchaser's Responsibilities
  - 2.3.1. Purchaser will provide any/all necessary access, right of way, or the like to permit Vision Solar to access the necessary areas to complete installation.
  - 2.3.2. Purchaser will provide for a clear path to and from the installation site to permit Vision Solar personnel to access the installation site in a safe and productive manner.
  - 2.3.3. Purchaser may be required, at Vision Solar's sole discretion, to provide for interior storage of certain equipment to be held in bailment by Purchaser with Purchaser to exercise reasonable care in storing said items. Commercial Purchasers are to provide interior, climate-controlled, storage within 200'-0" distance from both unloading site and site of installation.
  - 2.3.4. Purchaser to furnish/ make available any/ all obtained/ acquired permits to Vision Solar.
  - 2.3.5. Unless otherwise set forth in this Agreement, Purchaser warrants their ceiling and roof are complete and floors are sealed.
  - 2.3.6. Purchaser will ensure worksite/ site of installation is free of debris that would prohibit or unreasonably delay installation.
  - 2.3.7. Purchaser hereby warrants their roof to sufficiently strong to withstand imposed loading of the necessary equipment, materials, and the like consistent with any/all applicable Federal, State, and local laws, codes, and regulations.
  - 2.3.8. Purchaser is obligated to cooperate, assist, and otherwise work in coordination with Vision Solar as Vision Solar applies for and obtains any/ all necessary Federal, state, and/or local permits on behalf of Vision Solar and/or Purchaser.
  - 2.3.9. Purchaser hereby warrants that voltage supplies to Purchaser's home do not vary more than plus or minus eight percent (+/- 8%) during installation and will not vary plus or minus five percent (+/- 5%) at all times thereafter.
  - 2.3.10. Purchaser hereby warrants that there are no static electricity issues in the in the area of installation that would, in any manner, interfere with the electrical operation of the System to be installed by Vision Solar.
  - 2.3.11. Purchaser shall provide adequate and suitable lavatory and parking facilities for Vision Solar installation personnel while performing their work.
- 3. Additional Items, Exceptions, and Clarifications
  - 3.1. With respect to delivery of necessary equipment, the shipping schedule will be established

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Residential Sales Agreement Page 3 of 4

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX    Page 3 of 16

Connecticut HIC License No. HIC.0660535



    after receipt of order and finalization of all specifications and information necessary for engineering.

3.2. When a delay in shipment arises due to Purchaser's action and/or inaction and storage is available at Vision Solar's facilities, Vision Solar will advise Purchaser of storage costs and rates to be born at Purchaser's expense. If space is not available at Vision Solar's facilities, Vision Solar will arrange for third-party storage at Purchaser's expense.

3.3. Vision Solar is responsible for obtaining any/all necessary Federal, State, and/or local permits and/or licenses (and any fees associated therewith) for the operation of Purchaser's PV System as described herein.

3.4. Vision Solar expects Purchaser to exercise reasonable care in protecting the equipment stored for installation while on site at Purchaser's property.

3.5. Only those items specifically identified in this Agreement herein are included.

3.6. Vision Solar and its affiliates do not provide tax, legal, or accounting advice. Vision Solar has provided you with information as to the potential/ possible tax benefits associated with owning your PV Solar System. This information is provided for information purposes only and Purchaser should consult with his/her duly authorize financial and/or tax representative(s). Information provided by Vision Solar is not intended provide, and should not be relied on for, tax, legal, or accounting advice. Purchaser should consult with an authorized advisor as to these matters.

### III. INVESTMENT AND DELIVERY INFORMATION

| | |
|---|---|
| Total Equipment Costs, Less Permit Costs, and Applicable Taxes | $28,236.00 |
| Added Costs – Electrical Work | $0.00 |
| Added Costs – Roofing | $0.00 |
| Added Costs – Tree/ Tree Removal | $0.00 |
| **TOTAL COST** | **$28,236.00** |

***This Total Cost is subject to the Terms & Conditions attached hereto as Addendum A, and any exhibits hereto, which are incorporated by reference as part of this Agreement. This proposed cost is valid for sixty (60) days. Orders placed thereafter may require adjustments. Furthermore, Purchaser agrees to Addendum B, 'Connecticut Green Bank RSIP and RSIP-E Terms and Conditions Agreement' attached and found below as Addendum B.***

Shipping is approximately ninety (90) days. Actual shipping schedule(s) to be finalized upon approval of system drawings by utility provider.

**For Vision Solar:**

*/s/ Jon D. Seibert*
Jon D. Seibert
CEO
Date:   February 15, 2022

*Jon Seibert* (signature)

**For Purchaser:**
This proposal accepted by

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Residential Sales Agreement Page 4 of 4

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX      Page 4 of 16

Connecticut HIC License No. HIC.0660535



| | | |
|---|---|---|
| Signature | : | *Thomas Bascetta* |
| Full Name | : | Thomas Bascetta |
| Date | : | 2022-02-15 |
| Email | : | Tomterrapin@icloud.com |
| Phone No. | : | 8602506780 |

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Residential Sales Agreement Page 5 of 4

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX                                                                                       Page 5 of 16

**NOTICE TO CONSUMER**

**YOU MAY CANCEL THIS CONTRACT AT ANY TIME BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER RECEIVING A COPY OF THIS CONTRACT. IF YOU WISH TO CANCEL THIS CONTRACT, YOU MUST EITHER:**

**1.    SEND A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED; OR**

**2.    PERSONALLY DELIVER A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION TO:**

**Vision Solar, LLC
511 Route 168
Turnersville, NJ 08012**

**If you cancel this contract more than three (3) business days after receiving a copy of this Contract, then the terms of the Cancellation Agreement will govern. The Cancellation Agreement is attached hereto as Exhibit "A" and incorporated into this Contract by this reference. You will be responsible for costs and damages incurred as a result of cancelling this Contract, as more fully set forth in the attached Cancellation Agreement.**

If you cancel this contract within the applicable three-day period as described herein, you are entitled to a full refund of your money.

You may send this document to Vision Solar, LLC in accordance with the terms above if you wish to terminate this Contract.

I, _____, hereby wish to exercise my right to terminate this Contract.

_____
(signature)

Date: _____

**NOTICE TO CONSUMER**

**YOU MAY CANCEL THIS CONTRACT AT ANY TIME BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER RECEIVING A COPY OF THIS CONTRACT. IF YOU WISH TO CANCEL THIS CONTRACT, YOU MUST EITHER:**

**1.    SEND A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED; OR**

**2.    PERSONALLY DELIVER A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION TO:**

**Vision Solar, LLC
511 Route 168
Turnersville, NJ 08012**

**If you cancel this contract more than three (3) business days after receiving a copy of this Contract, then the terms of the Cancellation Agreement will govern. The Cancellation Agreement is attached hereto as Exhibit "A" and incorporated into this Contract by this reference. You will be responsible for costs and damages incurred as a result of cancelling this Contract, as more fully set forth in the attached Cancellation Agreement.**

If you cancel this contract within the applicable three-day period as described herein, you are entitled to a full refund of your money.

You may send this document to Vision Solar, LLC in accordance with the terms above if you wish to terminate this Contract.

I, _____, hereby wish to exercise my right to terminate this Contract.

_____
(signature)

Date: _____



**ADDENDUM A
TERMS AND CONDITIONS**

This addendum ("Addendum") to that certain Residential Sales Agreement dated of even date herewith ("Agreement") is made between Vision Solar, LLC, with an address of 511 Route 168 Turnersville, NJ 08012 ("Seller") and Customer Name as stated on Page One (1) of ("Purchaser"). At times herein, Seller and Purchaser are referred to individually as a "Party" and jointly as the "Parties."

1. PURCHASE OF SYSTEM
    1.1. Seller hereby agrees to sell and install on Purchaser's premises and Purchaser hereby agrees to purchase the equipment and services described herein.
    1.2. This Addendum, including the drawings, specifications, and terms and conditions stated, constitutes an offer by Seller that may only be accepted on the exact terms set forth. This offering supersedes all prior proposals made by Seller with respect to this subject matter. No reference herein to Purchaser's inquiry or specifications shall in any way modify the terms and conditions as defined in this Addendum. If, in lieu of acknowledging acceptance hereon, Purchaser shall issue its written order for the equipment and services described herein, such act shall constitute Purchaser's unqualified acceptance hereof, and unless specifically agreed upon in writing by Seller, no different or additional terms and conditions, other than as set forth herein, shall in any way become part of the resulting contract.
    1.3. Seller may withdraw this offer at any time prior to Purchaser's acceptance. If accepted by Purchaser subsequent to three (3) days from the date hereof, it shall not bind Seller without Seller's written consent at Seller's sole discretion.
    1.4. Accompanying specifications and drawings are the property of Seller and shall not be used by Purchaser for any purpose other than to evaluate this proposal. All copies shall be returned if this offer is not accepted.
2. PURCHASE PRICE
    2.1. The price stated in this proposal assumes that Seller will be able to proceed on a continuous program of engineering, purchasing, manufacturing, delivery and erection, without interruption. In addition to the price stated herein, Purchaser shall pay to Seller:
        2.1.1. The amount of Seller's additional expense caused by Purchaser or other contractors to Purchaser by reason of changes in the design or construction subsequent to the date of this proposal; the assumption by Seller of any obligations required by Purchaser beyond those stated herein; delays in shipment, and delays or interruptions in the progress of the work. Seller will credit against the stated price any reduced costs that can be established as resulting from such changes.
        2.1.2. The amount of the premiums on any performance or payment bonds that Seller may be required to furnish.
    2.2. The price stated is based upon the field labor force working the standard eight (8) hour day, forty (40) hour week, Monday through Friday, (or such shorter standard work week as may prevail in the area where the work is to be performed), except Holidays and except casual overtime, and does not include premium pay for overtime.
    2.3. Payment of any tax now or hereafter imposed by a federal, state, municipal or other government or agency thereof, based on the sale or use of the equipment and services offered in this proposal shall be the responsibility of the Purchaser.
    2.4. Prices herein quoted have been protected for a period of 30 days. Should Seller experience any escalations in material costs at time of delivery, the purchaser, given proper documentation, will recognize said escalations, which shall be considered a contractual extra.
3. RETENTION OF TITLE
    3.1. Title to the material and equipment installed by Seller shall remain in Seller and shall vest in Purchaser only upon the payment in full to Seller of the purchase price herein specified and the performance by Purchaser of all other terms on its part to be performed.
    3.2. Until the purchase price herein specified is paid in full, Purchaser shall at all times keep the material and equipment on its premises and shall not remove it without the written consent of Seller. Materials and equipment shall not be transferred, mortgaged, pledged, or disposed of by Purchaser or any lien permitted to be put thereon.
4. TERMS OF PAYMENT
    4.1. Invoices shall be submitted to Purchaser at the following schedule:

| 30% | Upon acceptance of this proposal |
|---|---|

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Addendum "A" Terms & Conditions Page 1 of 6

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX                                                                                           Page 8 of 16



| 60% | Upon installation |
|---|---|
| 10% | Upon inspection completion |

    4.2. Invoices not paid within thirty (30) days from the date of invoice shall bear monthly interest of five (5) percent from date thereof until paid in full, which interest Purchaser shall pay in addition to the contract price.

5. **INSURANCE**
    5.1. Seller agrees to carry the following coverage and minimum limits of liability and to furnish evidence of such coverage whenever required:
- Workmen's compensation insurance, including employer's liability insurance for its employees.
- Comprehensive general liability insurance, including contractor's protective and completed operations, covering bodily injury and property damage with a combined single limit of $1,000,000.
- Comprehensive automobile personal injury and property damage liability insurance covering owned and non-owned vehicles with a combined single limit of $1,000,000.

    5.2. Purchaser assumes the risk of loss or damage to the system, or any part thereof, upon delivery of the material and equipment to Purchaser's premises. Purchaser shall maintain, at its own expense, sufficient insurance to enable it to pay the proceeds of said insurance to Seller in payment of the purchase price for the aforesaid materials and equipment in the event of their damage or loss by theft, fire, or other casualties.

    5.3. No Party shall be liable or responsible to the other party, nor be deemed to have defaulted under or breached this Addendum, for any failure or delay in fulfilling or performing any term of this Addendum (except for any obligations to make payments to the other Party hereunder), when and to the extent such failure or delay is caused by or results from acts beyond the impacted party's ("Impacted Party") reasonable control, including, without limitation, the following force majeure events ("Force Majeure Event(s)"): (a) acts of God; (b) flood, fire, earthquake, OTHER POTENTIAL DISASTER(S) OR CATASTROPHE(S), SUCH AS EPIDEMICS, PANDEMICS or explosions; (c) war, invasion, hostilities (whether war is declared or not), terrorist threats or acts, riot or other civil unrest; (d) government order, law, or actions; (e) embargoes or blockades in effect on or after the date of this Addendum.

    5.4. Purchaser will remain liable to Seller for worked performed and costs incurred to date prior to onset of the Force Majeure event giving rise to such claim as described in Section 5.3.

    5.5. Purchaser represents that their homeowners insurance policy is sufficient to cover such an occurrence. If such an event should occur Vision Solar will be paid in full for work in place, the homeowner will seek reimbursement from their insurance carrier.

6. **SELLER'S LIMITED WARRANTIES**
    6.1. Seller warrants that the proposed equipment will conform to the specifications that are a part of this proposal if:
        6.1.1. Equipment is properly operated and maintained;
        6.1.2. The materials to be handled are of the type, size, shape, weight, and other such characteristics as described in the specifications and in conditions to be handled;
        6.1.3. Operating conditions are as contemplated by the specifications. Upon Purchaser's acceptance pursuant to Section 13 of this Addendum, the adequacy of the system shall be deemed accepted by Purchaser and Seller's sole recourse will be those warranties set forth in Section 6.2.

    6.2. Your System and installation work are covered by the following limited warranties. These are the only express warranties made in connection with the system and installation work. Any other warranties, remedies and conditions, whether oral, written, statutory, express or implied (including any warranties of system performance or merchantability and fitness for purpose, and any warranties against latent or hidden defects) are expressly disclaimed. If such warranties cannot be disclaimed, Seller limits the duration of and remedies for such warranties to the durations and remedies described below.

| System & Workmanship | Under normal use and service conditions, the System will be free from defects in workmanship or defects in, or breakdown of, materials or components for a period of five (5) years from the date of installation. Warranties offered by the manufacturer, and the remedies provided thereunder, with respect to those items identified on the PV Equipment List contained on page 1 of the Agreement are limited to those terms and conditions as provided by the product manufacturer. |
|---|---|

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Addendum "A" Terms & Conditions Page 2 of 6

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX      Page 9 of 16



| Roof Penetration(s) | Seller hereby warrants that if installing the system requires penetrations to your home's roof during a system installation and thereby causes damage to areas of the roof that are within a three (3) inch radius of the roof penetrations, then such roof damage will be repaired for your benefit, at any time during the period from which the warranty commences extending for a period of five (5) years from the date of installation. |
|---|---|

- 6.3. Purchaser shall provide written notice of any such defect to Seller within thirty (30) days after discovery thereof, but no later than the end of the warranty period; otherwise such claims shall be deemed waived.
- **6.4. Repairs to, alterations of, or work done on equipment warranted hereunder without Seller's prior written authorization shall void any and all applicable warranties.**
- **6.5. In the event Purchaser requires interaction with the System (e.g., removal and/or reinstall of solar panels) and/or any of its component parts to perform alteration, improvement, or other such work on Purchaser's home, Purchaser must notify Seller and seek Seller's express prior authorization to perform any such interaction or alteration of the System and/or its component parts. Seller will perform (or arrange for a subcontractor chosen at Seller's sole discretion to perform) any such necessary alteration to the System and/or its component parts.**
    - **6.5.1. The time and material associated with any and all work performed in connection with this Section will be set on a lump-sum basis. Seller will advise Purchaser of the cost associated with such work prior to commencement.**
    - **6.5.2. In the event work performed in connection with this Section requires the removal and/or reinstall of solar panels, a flat rate of $200 per panel removed and reinstalled will be charged.**
- 6.6. All parts are to be supplied free on board shipping point with freight the responsibility of the Purchaser.
- 6.7. All labor required to remove and/or replace any defective part(s) is the responsibility of the Purchaser.

7. LIMITATION OF LIABILITY
    - 7.1. Seller is not liable to you for any indirect, special or consequential damages arising out of this Addendum. To the extent permitted by law, Seller's aggregate liability to Purchaser under this Addendum is limited to the fair market value of the System. These limitations apply to any liability arising out of any site survey performed by us or our affiliate or subcontractor in connection with this Addendum.
    - 7.2. The Limited Warranties in Section 6 of this Addendum do not apply to any breach by Seller directly or indirectly caused by or resulting from any of the following: (i) abuse, misuse or negligence, (ii) accidents or other events beyond Seller's (or its affiliates', subcontractors' or representatives') reasonable control, including but not limited to lightning, flood, earthquake, fire, excessive wind and other extreme weather events; (iii) failure to operate or maintain the Solar System in accordance with the instructions provided by Vision Solar; (iv) strikes by balls or other objects, dirt, dust, bird excrement, animals, insects, foliage or algae growth; (v) water entering around a fitting, accessory or other material not supplied by Seller; (vi) any material or equipment not supplied by Seller that the Solar System may be connected to; (vii) someone other than Seller installing, removing, re-installing or repairing the Solar System (including, but not limited to, damaging the Solar System during such work) unless that party does so in compliance with approved product specifications; or (viii) any Solar System failure or lost or diminished performance that results from your actions or omissions that are not in compliance with the Limited Warranties.
    - 7.3. The Limited Warranties in Section 6 of this Addendum do not cover (a) conditions at your Home not caused by our breach, including, but not limited to, unpermitted conditions, improper electrical wiring, defects in the roof structure that cause it to sag over time, chimney or exhaust vent heights that are reduced by your Solar System, cracked or crumbling masonry, or inadequate attic ventilation; (b) normal wear and tear or deterioration, or superficial defects, dents or marks that do not impact the performance or functionality/integrity of your Solar System; (c) damage or deterioration that occurs after the expiration or voiding of all or part of the Limited Warranties; or (d) theft or vandalism of your Solar System or any of its components.

8. INDEMNIFICATION
    - 8.1. To the fullest extent permitted by law, you shall indemnify, defend, protect, save and hold harmless Seller, its employees, officers, directors, agents, successors and assigns from any and all third party claims, actions, costs, expenses (including reasonable attorneys' fees and expenses), damages, liabilities, penalties, losses, obligations, injuries, demands and liens of any kind or nature arising out of, connected with, relating to or resulting from your negligence or willful misconduct; provided, that nothing herein shall

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Addendum "A" Terms & Conditions Page 3 of 6

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX                                                                                                                                          Page 10 of 16



require you to indemnify Seller for its own negligence or willful misconduct. The provisions of this paragraph shall survive termination or expiration of this Addendum.

9. **PURCHASER'S OBLIGATIONS**
    9.1. Purchaser shall provide and pay for the following services and/or facilities:
        9.1.1. Provide suitable working conditions and keep the work of installation reasonably free from any interference by others working on the premises.
        9.1.2. Give reasonably free and unobstructed access to the place where work is to be done and put and keep all surfaces to which the material is to be applied in proper condition so that work can be started promptly and completed without delay.
        9.1.3. Provide and maintain reasonable access to the work site; make ready the site in accordance with the drawings; cut and repair any floor, wall or roof openings in accordance with the drawings; keep the site free from water, debris, and other obstructions and hazards to the safe and expeditious installation of the equipment.
        9.1.4. Provide all electricity, compressed air, water, heat, light, and other services as may be needed for erection work and fire protection of the equipment, all at the required voltage, pressure, or other appropriate unit of measure.
        9.1.5. Pay the cost of changes, delays, and interruptions to the work resulting from acts of Purchaser and/or through incorrect or incomplete information supplied by Purchaser to Seller.
        9.1.6. Provide for truck unloading located within reasonable proximity to the erection site or at a point agreed upon.
        9.1.7. Obtain all necessary consents from owners or mortgagors for such installations and any necessary building or other permits.
        9.1.8. Seller shall be responsible for conforming to all building, labor or fire regulations and for obtaining any permits required by state or municipal law concerning the installation and operation of the subject system. Furthermore, in the event that approval of the system by any governmental agency is required, Seller shall furnish to Purchaser, without additional charge, a completed set of plans and specifications for the system. Seller shall perform any additional services that may be required to enable Purchaser to obtain such approval and Purchaser shall pay the costs of labor and material and other expenses incurred in performing such additional work to Seller.
        9.1.9. Provide and install all piping, wiring, and other services necessary for processing, lighting, and power incident to the operation of the specified equipment.
        9.1.10. Provide suitable sanitary field toilet facilities.

10. **OCCUPATIONAL SAFETY AND HEALTH ACT**
    10.1. In addition to standard industry practice, Vision Solar complies with all current OSHA relevant standards. Seller assumes responsibility for compliance to OSHA regulations only as they relate to the specific equipment and installation proposed herein. Compliance as to existing equipment or system components provided by others remains the responsibility of Purchaser.
    10.2. If changes to OSHA regulations are issued after completion, or if any changes are required by conditions of use in the field, such changes shall be the Purchaser's responsibility. Seller shall be pleased to meet with Purchaser to review any problems Purchaser may identify and shall give priority to any additional equipment or service required by Purchaser which are covered by additional purchase order to Seller.

11. **INSTALLATION**
    11.1. The Purchaser has been provided with estimated work start and work completion dates. These dates may be affected by events and circumstances outside the control of Vision Solar, including but not limited to the events and circumstances set forth in section 11.2 of this Addendum.
    11.2. Seller shall not be liable for any delay in, or inability to complete the performance of the contract by reason of any of the following causes: Acts or failure to act of Purchaser, Purchaser's representatives or other contractors to Purchaser including approval of drawings, and furnishing of necessary information; acts of God; acts of the public enemy; riot; civil commotion; insurrection; government orders; rules, regulations, suspensions, or requisitions of any kind; strikes or other stoppages of labor or shortages in the supply thereof; inability to obtain fuel, material, equipment or parts; fire; casualties or accidents; failure of shipping facilities; or any cause, whether of the same or a different character, beyond Seller's control. In such event, the time for performance shall be extended by a period equal to the time lost because of any such cause, and any increased costs incurred by Seller on account thereof shall be reimbursed by Purchaser.
    11.3. Seller will maintain a competent person at the erection site to superintend and direct the work; and

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Addendum "A" Terms & Conditions Page 4 of 6

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX    Page 11 of 16



unless otherwise stated, will:
- 11.3.1. Provide necessary erection equipment.
- 11.3.2. From time to time during the course of erection, clean up and remove from the immediate an agreed location on Purchaser's premises for further disposal by Purchaser.
- 11.3.3. In the course of performance, hereof, Seller may employ the service of subcontractors who shall be subject to Purchaser's approval, which shall not be unreasonably withheld.
- 11.3.4. Upon completion, Seller shall remove its equipment and surplus material from the erection site.
- 11.3.5. Seller agrees to cooperate and coordinate with the activities of Purchaser's construction prime contractor and subcontractor within the framework of a cooperative spirit as intended by this Addendum.

12. ADDITIONAL WORK
    12.1. Purchaser may order extra work in connection with such installation or make changes therein by alteration, addition or deduction, provided, however, that no such order for extra work or change order shall be effective unless incorporated in a written addendum and signed by both parties.
    12.2. All such extras or changes shall be subject to the terms of this Addendum, the time of the order and set forth in the written addendum.
    12.3. The value of such extra work or change shall be determined by estimate or on a time and material basis, and paid in full at the time he extra work or change is completed.

13. PERFORMANCE TEST ACCEPTANCE
    13.1. Unless deemed accepted by Purchaser pursuant to Section 13.3 or 13.4 of this Addendum, Seller will upon completion of system installation conduct a performance test which shall consist of five (5) business days of system operation under the design and installation specifications provided herein. Any modifications or additions to the system required for completion of this performance test will be furnished by Seller without charge to Purchaser, unless such modifications and/or additions result from an error or failure to act on the part of Purchaser. In such events, such changes and/or additions will be charged to Purchaser.
    13.2. Following satisfactory completion of the performance test, set forth in Section 13.1 above, the system shall be deemed accepted by Purchaser. Absence of minor items of work or material not adversely affecting operation shall not be cause to delay the performance test nor to defer acceptance of the system, but Seller will remain responsible for completing said items.
    13.3. If, for reasons beyond Seller's control, the performance test is not completed within thirty (30) days after Seller's notice of readiness for test, the system shall be deemed accepted by Purchaser.
    13.4. In the event that Purchaser, with Seller's consent, operates the system or a part thereof in commercial operation before Seller's completion of installation, such commercial operation shall constitute Purchaser's acceptance of the system or part thereof. If such partial commercial operation necessitates Seller's completion of installation beyond the normal working hours, Purchaser shall reimburse Seller for the costs of premium time thus incurred.

14. LIENS
    14.1. Seller shall defend and hold Purchaser harmless from any mechanic's or material men's liens asserted against Purchaser's property, which are based upon Seller's nonpayment of its obligations hereunder. In the event that such a lien is filed, Seller shall immediately procure the discharge thereof at its own cost and expense.

15. SELLER'S RIGHT TO TERMINATE CONTRACT
    15.1. If the Purchaser suspends or delays Seller's performance hereunder or if such is suspended by an order of a court or other public authority for a period of two (2) months, of if the Purchaser fails to pay to the Seller any sum when due and such failure continues for a period of seven (7) calendar days after written notice respecting such failure is given by the Seller to the Purchaser, then the Seller may stop work or terminate the contract and recover from Purchaser payment for all work performed and costs incurred plus a reasonable profit thereon, and any other damages it may have suffered. Such remedy shall not be exclusive of any other remedies, legal and/or equitable, which may be available to Seller.
    15.2. Should the services provided for by Seller in this Addendum become financially impractical, at Seller's sole discretion, due to unforeseen expenses arising during the proposal and/or installation phase of the services provided for in this Addendum, Seller reserves the right to terminate this Addendum at any time and return any/all proceeds expended by Purchaser consistent with the payments made pursuant to the payment schedule found in Section 4.1 hereto.

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Addendum "A" Terms & Conditions Page 5 of 6

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX                                    Page 12 of 16



16. PURCHASER'S RIGHT TO TERMINATE CONTRACT
    16.1. Purchaser shall have the right to terminate this Addendum for the following specific reasons:
        16.1.1. If financial closing for the sale of the solar photovoltaic system does not occur, the contract is void.
        16.1.2. Insolvency or bankruptcy of Seller.
        16.1.3. Failure of Seller to comply with material provisions of this Addendum, but only if Purchaser has provided Seller with written notice of such failure and Seller has not corrected such failure within a reasonable period of time after such notice.
        16.1.4. As set forth in greater detail in the Agreement and Exhibit "A" thereto, Purchaser may cancel the Agreement at any time before midnight of the third business day after receiving a copy of the Agreement. If Seller seeks to cancel the Agreement more than three (3) days after receiving a copy of the Agreement, then the terms of the Cancellation Agreement, which is Exhibit "A" to the Agreement, shall govern. Purchaser will be responsible for costs and damages incurred as a result of cancelling the Agreement, as more fully set forth in Exhibit "A" to the Agreement.
17. DRAWINGS
    17.1. All drawings furnished will be for Purchaser's use in operating and maintaining the system. Such drawings shall not be disclosed to third parties without Seller prior written consent nor used in any manner detrimental to Seller's interest.
18. ARBITRATION PROVISION
    18.1. Any controversy or claim arising out of or related to this Addendum, or the breach thereof, shall be resolved exclusively by arbitration in accordance with the rules of the American Arbitration Association. Such arbitration shall be held in Camden County, New Jersey and judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction. The Seller and Purchaser hereby waive the right to trial by judge or jury with regard to any controversy or claim arising out of or related to this Addendum.
19. AGREEMENT
    19.1. The Agreement, together with this Addendum, any other documents incorporated herein by reference including the attached Cancellation Agreement attached hereto as Exhibit "A," and all related exhibits and schedules, constitutes the sole and entire agreement of the Parties with respect to the subject matter of this Addendum, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to the subject matter. The Parties have not relied on any statement, representation, warranty, or agreement of the other Party or of any other person on such Party's behalf, including any representations, warranties, or agreements arising from statute or otherwise in law, except for the representations, warranties, or agreements expressly contained in this Addendum.  Purchaser's breach of this Addendum shall be deemed a breach of the Agreement and Purchaser's breach of the Agreement shall be deemed a breach of this Addendum.
20. CHOICE OF LAW
    20.1. This Agreement shall in all respects be governed and construed in accordance with the laws of the State of New Jersey, County of Camden.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]**

Vision Solar, LLC
511 NJ-168 Turnersville, NJ 08012
856-375-8129
www.VisionSolar.llc
Addendum "A" Terms & Conditions Page 6 of 6

Document Ref: KEMMB-3MOMZ-CCWRV-TBCYX    Page 13 of 16



# EXHIBIT "A"

## CANCELLATION AGREEMENT

This agreement of cancellation terms (the "Cancellation Agreement") is made on _____2/15/2022_____ (the "Effective Date") between Vision Solar, LLC ("Vision Solar") with its principal place of business at 511 Route 168, Blackwood, New Jersey 08012 and _____Thomas Bascetta_____ ("Customer"), with a primary mailing address of _____201 Two Brook Road Wethersfield, Connecticut, 06109_____. Vision Solar and Customer may hereinafter be referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

A. Vision Solar designs, sells, installs, services, operates and maintains solar energy systems along with other equipment used to store, generate, and transfer electricity at residential properties (collectively, the "Services").

B. Customer desired to receive the Services from Vision Solar and entered into a Residential Sales Agreement dated _____ with Vision Solar (the "Sales Agreement").

C. Vision Solar began providing the Services, as set forth in the Sales Agreement.

D. Customer no longer wishes to receive the Services from Vision Solar, as set forth in the Sales Agreement.

NOW THEREFORE, in consideration of the mutual promises set forth below, Customer agrees as follows:

I. Customer hereby acknowledges that Customer was permitted to cancel the Sales Agreement within_____ days after signing the Sales Agreement ("Termination Period").

II. Customer hereby acknowledges the Customer is not terminating the Sales Agreement for specific reasons set forth in Section 15 of the Sales Agreement.

III. Customer hereby acknowledges that Customer did not cancel the Sales Agreement within the Termination Period.

IV. Pursuant to the Sales Agreement, Customer agreed that the amount of loss or damages likely to be incurred by Vision Solar was difficult or impossible to precisely estimate. Customer acknowledges that the sums payable by Customer to Vision Solar pursuant to this Cancellation Agreement give rise to liquidated damages and are not a penalty. Customer acknowledges that the amount of liquidated damages paid by Customer to Vision Solar hereunder are not grossly disproportionate to the probable loss that was likely incurred by Vision Solar due to Customer's termination of the Sales Agreement. As such, Customer agrees to remit to Vision Solar ten (10%) percent of the Total Cost (as defined in the Sales Agreement).

V. This Cancellation Agreement supersedes any and all other agreements, either oral or in writing, between the Parties with respect to the subject matter of this Cancellation Agreement. This Cancellation Agreement contains all of the covenants and agreements between the Parties with respect to the subject of this Cancellation Agreement, and each Party acknowledges that no representations, inducements, promises, or agreements have been made by or on behalf of either Party except the covenants and agreements embodied in this Cancellation Agreement. No agreement, statement, or promise contained in this Cancellation Agreement shall be valid or binding between the Parties with respect to the subject matter of this Cancellation Agreement, except for a subsequent written modification signed by the Party to be charged.

VI. This Cancellation Agreement may be amended or modified at any time with respect to any provision by a written instrument executed by the Parties.

Last Update 10/19/2020



| | |
|---|---|
| VII. | Neither Party may assign or transfer this Cancellation Agreement, in whole or in part, without the prior written consent of the other Party. This Cancellation Agreement shall be binding on, and inure to the benefit of, each Party's heirs, executors, administrators, successors and permitted assigns, respectively. |
| VIII. | If any legal action is commenced to enforce or interpret the provisions of this Cancellation Agreement, then the prevailing Party shall be entitled to recover reasonable attorneys' fees from the other Party. These fees, which may be set by the court in the same action or in a separate action brought for that purpose, are in addition to any other relief to which the prevailing Party may be entitled. |
| IX. | Any notice required or permitted to be given under this Cancellation Agreement shall be written, and may be given by e-mail or overnight mail only. Notice sent via e-mail shall be deemed given only upon receiving written confirmation from the recipient thereof and overnight mail shall be deemed given one Business Day after mailing. For purposes of this Cancellation Agreement, "Business Day" means any day other than a Saturday or Sunday or any other day on which banks in the State of New Jersey are permitted or required to be closed. Mailed notices shall be addressed to each Party in accordance with the addresses set forth in the opening paragraph of this Cancellation Agreement but each Party may change address by written notice to the other Party in accordance with the terms of this paragraph. |
| X. | This Cancellation Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without giving effect to its choice of law rules. The Parties hereby irrevocably submit to the exclusive jurisdiction of all courts in Camden County, New Jersey only.  The Parties agree that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. |
| XI. | Customer hereby agrees to defend, indemnify and hold Vision Solar, its employees, officers, directors, and agents harmless from any claim, suit, action or demand made by Customer and any other person, which in any manner may arise from any action or inaction taken by Vision Solar, in connection with any Services rendered by Vision Solar to Customer. |
| XII. | Customer shall not make disparaging statements in any form about Vision Solar or its officers, directors, agents, employees, products or Services. |
| XIII. | Customer represents, warrants and agrees that Customer has read this Agreement and that Customer understands the terms of this Cancellation Agreement. Customer hereby acknowledges that Customer was given an opportunity to seek independent legal counsel before signing this Cancellation Agreement. |
| XIV. | If any provision of this Cancellation Agreement is declared illegal, unenforceable, ineffective, or void, such invalidity or unenforceability shall not affect any other provision of this Agreement and the remaining provisions shall remain in full force and effect and any court of competent jurisdiction may modify the objectionable provision as to make it valid, reasonable and enforceable. |
| XV. | A waiver by Vision Solar, express or implied, of a breach of any term, covenant, or condition of this Cancellation Agreement shall not be deemed a waiver of that term, covenant or condition, or any subsequent breach of the same. |
| XVI. | This Cancellation Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  For purposes of this Cancellation Agreement and the rights of the Parties to enforce it, a facsimile or electronic transmission of a signature shall have the same force and effect as an original signature and this Cancellation Agreement may be executed electronically by the Parties. |

[**SIGNATURE PAGE FOLLOWS**]



    In Witness Whereof, the Parties executed this Cancellation Agreement as of the day and year first above written.

**VISION SOLAR, LLC**

By: _____

Print Name: _____

Title: _____

**CUSTOMER**

_____
SIGNATURE

_____
PRINT NAME

_____
DATE

Last Update 10/19/2020

# Signature Certificate

Reference number: KEMMB-3MOMZ-CCWRV-TBCYX

| Signer | Timestamp | Signature |
|---|---|---|
| **Thomas Bascetta**<br>Email: tomterrapin@icloud.com | | |
| Sent: | 15 Feb 2022 21:13:24 UTC | *Thomas Bascetta* |
| Viewed: | 15 Feb 2022 21:14:17 UTC | |
| Signed: | 15 Feb 2022 21:16:08 UTC | IP address: 172.56.23.174 |

Document completed by all parties on:
15 Feb 2022 21:16:08 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 30,000+ companies worldwide.

